IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[1] | § | Case No. 16-50557-rbk |
| | § | |
| Debtors. | § | (Joint Administration Pending) |

**DEBTORS' MOTION TO REJECT EXECUTORY SERVICES AGREEMENT
PURSUANT TO 11 U.S.C. § 365 *NUNC PRO TUNC* TO PETITION DATE**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN 21 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

The Debtors, by and through their undersigned counsel, hereby file this motion (the "Motion") for entry of an order pursuant section 365 of the Bankruptcy Code, authorizing the rejection of the agreement for services attached hereto as **Exhibit B** (the "Agreement") with Windstream Communications, LLC ("Windstream"), *nunc pro tunc* to the Petition Date. In support thereof, the Debtors respectfully show the Court as follows:

**I. JURISDICTION AND VENUE**

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O). Venue of these cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); and Fire Mountain Restaurants, LLC (8003). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

{37698558;1}

2. The basis for the relief requested with this Motion is section 365 of the Bankruptcy Code.

## II. BACKGROUND

3. On March 7, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court"), thereby commencing these chapter 11 cases (the "Cases"). The Debtors' motion for joint administration of the Cases is pending. The Debtors continue in possession of their property and they are operating and managing their business as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

4. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

## III. COMPANY HISTORY AND OVERVIEW

5. The Debtors are some of the largest operators of buffet-style restaurants in the United States with approximately 150 stores operating in more than 25 states. The Debtors' concepts include five buffet restaurant chains and a full service steakhouse. The Debtors' buffet restaurants principally operate under the names Old Country Buffet®, Country Buffet®, HomeTown® Buffet, Ryan's® and Fire Mountain®. These locations primarily offer self-service buffets with entrees, sides, and desserts for an all-inclusive price. In addition, the Debtors own and operate a 10-unit full service, casual dining chain under the name Tahoe Joe's Famous Steakhouse®.

6. On August 19, 2015, Alamo Ovation, LLC acquired Buffets Restaurants Holdings, Inc. (the "Merger"). Under the Merger, Alamo Ovation Acquisition, Inc., an

acquisition subsidiary of Alamo Ovation, LLC, merged with and into Buffets Restaurants Holdings, Inc. with Buffets Restaurants Holdings, Inc. remaining as the surviving corporation. As a result of the Merger, Buffets Restaurants Holdings, Inc. became a wholly owned subsidiary of Alamo Ovation, LLC, a Texas limited liability company.

7. Buffets Restaurants Holdings, Inc., is a holding company that wholly owns Buffets Holdings, LLC f/k/a Buffets Holdings, Inc., a Delaware limited liability company, which in turn wholly owns Buffets, LLC f/k/a Buffets, Inc. ("Buffets"), a Minnesota limited liability company, which both operates restaurants directly and is the sole parent of several other restaurant operating companies in the Debtor group.

8. Buffets is the direct parent of the following Debtors: Hometown Buffet, Inc.; OCB Restaurant Company, LLC; OCB Purchasing Co.; and Ryan's Restaurant Group, LLC (collectively, the "Direct Buffets Subsidiaries"), through which various restaurants and restaurant functions are operated. The other Debtors, Tahoe Joe's, Inc. and Fire Mountain Restaurants, LLC, are indirectly owned by Buffets through one of the Direct Buffets Subsidiaries. The Debtors' corporate headquarters are located in Hollywood Park, Texas.

9. Immediately following the Merger, the Debtors operated over 300 restaurants in 35 states which included the five buffet brands: Ryan's®, HomeTown® Buffet, Old Country Buffet®, Country Buffet®, and Fire® Mountain and the one full service, casual dining brand, Tahoe Joe's® Famous Steakhouse.

10. The Debtors' business operations are, and have been, managed by FMP SA Management Group, LLC ("FMP") pursuant to a management agreement. FMP, a privately held company based in Hollywood Park, Texas, is a multi-concept developer and operator of independent restaurant chains. FMP provides operational oversight and all professional and

administrative services for the Debtors. In return for the services provided, FMP receives reimbursement of allocated costs and expenses and a management fee. A separate entity, FMP Ovation Payroll, LLC ("FMP Ovation"), provides employment and wage related services for the Debtors.

11. Since the Merger, certain events have occurred that were the genesis for the filing of these Chapter 11 cases. In October 2015, an $11.37 million judgment against Buffets, LLC (formerly known as Buffets, Inc., which was the named defendant although not the entity actually operating the restaurant where the alleged incident occurred) was awarded to plaintiffs in a 2014 court case for an incident dating back to 2010. No answer to such lawsuit was timely filed by prior management, which apparently overlooked it after initially receiving the service of process and such lawsuit was not disclosed by the previous management and ownership group in the course of 2015 negotiations leading to the recent Merger and change of control. Buffets, LLC is also attempting to overturn such judgment on the basis of the wrong defendant entity having been sued and other grounds.

12. Although at the time of the Merger, Buffets Restaurants Holdings, Inc. represented adequate positive cash flow for the operating entities, the financial results since the Merger have been far less than expected. For example, sales were down twenty-two percent (22%) from the seller's projections. This decline in the Debtors' cash flow performance combined with unanticipated expenses has caused a severe liquidity strain. Despite the Debtors' best efforts, the Debtors have fallen behind on their obligations to creditors.

13. As of the Petition Date, Buffets is the primary obligor on several term notes the approximate principal amounts of which total in the aggregate $46,168,000 (the "Loans"). Buffets pledged all of its assets as collateral to secure the Loans. The Loans are

guaranteed by each of the Debtors as well as the following non-debtors: Alamo Ovation, LLC, Buffet Restaurants Holdings, Inc. and Buffets Holdings, LLC. In addition, the Debtors have unsecured debt in an aggregate amount exceeding $60 million which includes over $18 million in ordinary course trade debt and rent that was unpaid as of the Petition Date.

14. Due to the numerous underperforming restaurants, the Debtors closed and vacated 74 stores several weeks prior to the Petition Date and closed another 92 stores immediately preceding the bankruptcy filing which the Debtors will vacate within the next 7-10 days.

15. As of the Petition Date, the Debtors continue to operate approximately 150 restaurants in over 25 states including Texas, California, Minnesota, Wisconsin, Michigan, Illinois, Colorado, Missouri, New York, New Jersey, Pennsylvania, Maine, Tennessee, Indiana, Washington, Oregon, Delaware, South Carolina, Louisiana, West Virginia, Ohio, Kentucky, North Carolina, Tennessee and Mississippi.

16. The Debtors have diligently evaluated, in consultation with their professionals, a number of options to address the Debtors' current financial issues. These efforts have included retaining a Chief Restructuring Officer, Bill Patterson of Bridgepoint Consulting, LLC, for the Debtors with the goal of consensually restructuring the Debtors' restaurant footprint and balance sheet.

17. The Debtors have commenced these cases in order to fully implement their restructuring efforts and to deal with both legacy costs and those liabilities resulting from the store closures. The Debtors believe that once they shed themselves of the burdens associated with the Wyoming litigation and the unprofitable stores, they can focus their efforts on their successful stores which will provide sufficient cash to fund the Debtors' ordinary course expenses and enable the Debtors to become a profitable enterprise.

18. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of this Chapter 11 Case are set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference as though set forth in full.

### Need to Reject the Agreement with Windstream

19. On or about June 15, 2015, Buffets, LLC d/b/a/ Ovation Brands entered into the Agreement attached hereto as Exhibit B with Windstream, whereby Windsteam agreed to provide certain telecommunications-related services, software, and equipment to the Debtors and the Debtors agreed to pay Windstream for those services pursuant to the terms of the Agreement.

20. Prior to the Petition Date, on or about January 4, 2016, FMP, as successor to Ovation, gave notice of its termination of the Agreement with Windsteam by letter from Peter Donbavand to Windstream (the "Termination Notice").

21. On February 16, 2016, Windstream, through counsel, sent FMP a response to the Termination Notice (the "Windstream Response"), a copy of which is attached hereto and incorporated herein as **Exhibit C**.

22. The Windstream Response suggests Windstream believes certain obligations of the Debtors under the Agreement continue to accrue.

23. The Debtors believe the Agreement was terminated as of January 4, 2016 pursuant to the Termination Notice, however, in an abundance of caution, the Debtors seek authority to reject the Agreement *nunc pro tunc* to the Petition Date.

### IV. RELIEF REQUESTED

24. Through this Motion and pursuant to section 365 of the Bankruptcy Code, the Debtors seek authority to reject the Agreement with Windstream *nunc pro tunc* to the Petition Date.

25. In the Debtors' business judgment, rejection of the Agreement is in the best interests of the Debtors' estates and their creditors and should be authorized by this Court.

### V. BASIS FOR THE RELIEF REQUESTED

26. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease." 11 U.S.C. § 365(a).

27. Courts defer to a debtor's business judgment in rejecting an executory contract or unexpired lease, and, upon finding that a debtor has exercised its sound business judgment, approve the rejection under Section 365(a) of the Bankruptcy Code. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *see also Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul, & Pacific R.R. Co.*, 318 U.S. 523, 550 (1943); *Official Comm. of Unsecured Creditors of Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524 n.5 (5th Cir. 2004) ("The rejection decision under § 365 is generally left to the business judgment of the bankruptcy estate."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

28. Rejection under § 365 is generally intended to enable the debtor to relieve itself and the bankruptcy estate from burdensome and unprofitable contracts in order to preserve and maximize the value of the bankruptcy estate. *Stewart Title Guar. Co. v. Old Republic Nat'l Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[Section 365] allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *In re Mirant Corp.*, 303 B.R. 319, 330-31 (Bankr. N.D. Tex. 2003) ("There is substantial authority for the proposition that section 365 was intended to allow a trustee or debtor in possession to eliminate burdensome, unprofitable contracts and preserve for the estate's benefit valuable agreements.").

29. In addition, many courts have authorized rejection retroactively to a date prior to the entry of the order authorizing such rejection. *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 485 F.3d. 602 (2d Cir. 2007) (affirming the bankruptcy court's equitable authority to authorize the retroactive rejection of a nonresidential lease of real property where advance notice is provided); *In re Thinking Mach. Corp. v. Mellon Fin. Servs.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (approving retroactive orders of rejection where the balance of equities favors such relief).

30. In these cases, the Debtors respectfully request that the Court enter an order rejecting the Agreement attached as Exhibit B effective as of the Petition Date. The services provided under the Agreement are no longer needed for the Debtors' operations and continuing in the Debtors' obligations under the Agreement would only serve to burden the Debtors' estates.

31. Accordingly, in an exercise of their business judgment, the Debtors have determined and respectfully submit that rejecting the Agreement is in the best interests of the Debtors' estates, their creditors and all parties-in-interest in these Bankruptcy Cases. Furthermore, the Debtors submit that their decision to reject the Agreement is a critical component of the reorganization of the Debtors' overall business, represents an exercise of the Debtors' sound business judgment, and is in the best interests of the Debtors' estate and creditors.

32. The Debtors' determination to reject the Agreement is based upon valid business justifications, as the Agreement will not be necessary to the Debtors' operations and will not result in any additional revenue. The Debtors therefore seek to reject the Agreement effective as of the Petition Date. Rejection will minimize rejection damage claims and any administrative claims that may be asserted by the non-Debtor party to the Agreement (Windstream).

33. Pursuant to section 365(g)(1) of the Bankruptcy Code, the rejection of an executory contract or unexpired lease of the Debtors constitutes a breach of such contract, if such

contract has not been assumed, immediately before the filing date. Therefore, any claim by the non-Debtor parties arising from the rejection of the Agreement shall be deemed to constitute a prepetition claim against the Debtors.

## VI. <u>NOTICE</u>

34. Bankruptcy Rules 6006 and 9014 generally require that any proceeding to assume, reject or assign an executory contract or unexpired lease be made only upon motion and on notice to the other party to the contract, the committee appointed under the Code and any other party-in-interest.

35. Notice of this Motion has been given to the Office of the United States Trustee for the Western District of Texas, Windstream, the parties on the Debtors' proposed Master Service List, and other parties-in-interest who have requested notice.

## VII. <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request entry of an order, (i) granting this Motion; (ii) approving the Debtors' rejection of the Agreement *Nunc Pro Tunc* to the Petition Date; and (iii) granting the Debtors such other and further relief as this Court deems just.

Dated: March 7, 2016

Respectfully submitted,

AKERMAN LLP

  */s/ John E. Mitchell*
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

and

Andrea Hartley (*Pro Hac Vice* Pending)
Florida Bar No. 864234
Esther A. McKean (*Pro Hac Vice* Pending)
Florida Bar No. 28124
Amy M. Leitch (*Pro Hac Vice* Pending)
Florida Bar No. 90112
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
andrea.hartley@akerman.com
esther.mckean@akerman.com
amy.leitch@akerman.com

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION