IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[1] | § | Case No. 16-50557-RBK |
| | § | |
| Debtors. | § | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION TO (I) RETAIN AND PAY AUCTIONEER AND (II) SELL CERTAIN PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Buffets, LLC, *et al* (collectively, the "Debtors") debtors and debtors-in-possession in the above-captioned Chapter 11 cases, hereby file this Emergency Motion Pursuant to 11 U.S.C. §§ 327, 328 and 363, Federal Rule of Bankruptcy Procedure 6003, and Local Rule of Bankruptcy Procedure 9014(e) for authority to (i) retain and pay an auctioneer, and (ii) sell certain property of the Debtors' estates by auction, free and clear of all liens, claims, and encumbrances. In support of this Motion, the Debtors would say:

**BASES FOR EMERGENCY CONSIDERATION**

1. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth in this Motion, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

{37741983;1}

harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Specifically, if the Debtors are unable to sell the furniture, fixtures and equipment described herein on an expedited basis, rent will continue to accrue at the related premises, and any benefit to the estate from sales of the FF&E will be substantially diminished, if not completely negated, by the accruing rent. Additionally, the Debtors' advisors were unaware of the pending sales and only discovered this on the morning of the filing of this Motion. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

## JURISDICTION AND PROCEDURAL BACKGROUND

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. On March 7, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court"), thereby commencing these chapter 11 cases (the "Cases"). The Debtors' motion for joint administration of the Cases is pending. The Debtors continue in possession of their property and they are operating and managing their business as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

5. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

## BACKGROUND AND STATEMENT OF FACTS

### Company History and Overview

6. The Debtors are some of the largest operators of buffet-style restaurants in the United States with approximately 150 stores operating in more than 25 states. The Debtors' concepts include five buffet restaurant chains and a full service steakhouse. The Debtors' buffet restaurants principally operate under the names Old Country Buffet®, Country Buffet®, HomeTown® Buffet, Ryan's® and Fire Mountain®. These locations primarily offer self-service buffets with entrees, sides, and desserts for an all-inclusive price. In addition, the Debtors own and operate a 10-unit full service, casual dining chain under the name Tahoe Joe's Famous Steakhouse®.

7. On August 19, 2015, Alamo Ovation, LLC acquired Buffets Restaurants Holdings, Inc. (the "Merger"). Under the Merger, Alamo Ovation Acquisition, Inc., an acquisition subsidiary of Alamo Ovation, LLC, merged with and into Buffets Restaurants Holdings, Inc. with Buffets Restaurants Holdings, Inc. remaining as the surviving corporation. As a result of the Merger, Buffets Restaurants Holdings, Inc. became a wholly owned subsidiary of Alamo Ovation, LLC, a Texas limited liability company.

8. Buffets Restaurants Holdings, Inc., is a holding company that wholly owns Buffets Holdings, LLC f/k/a Buffets Holdings, Inc., a Delaware limited liability company, which in turn wholly owns Buffets, LLC f/k/a Buffets, Inc. ("Buffets"), a Minnesota limited liability

company, which both operates restaurants directly and is the sole parent of several other restaurant operating companies in the Debtor group.

9. Buffets is the direct parent of the following Debtors: Hometown Buffet, Inc.; OCB Restaurant Company, LLC; OCB Purchasing Co.; and Ryan's Restaurant Group, LLC (collectively, the "Direct Buffets Subsidiaries"), through which various restaurants and restaurant functions are operated. The other Debtors, Tahoe Joe's, Inc. and Fire Mountain Restaurants, LLC, are indirectly owned by Buffets through one of the Direct Buffets Subsidiaries. The Debtors' corporate headquarters are located in Hollywood Park, Texas.

10. Immediately following the Merger, the Debtors operated over 300 restaurants in 35 states which included the five buffet brands: Ryan's®, HomeTown® Buffet, Old Country Buffet®, Country Buffet®, and Fire® Mountain and the one full service, casual dining brand, Tahoe Joe's® Famous Steakhouse.

11. The Debtors' business operations are, and have been, managed by FMP SA Management Group, LLC ("FMP") pursuant to a management agreement. FMP, a privately held company based in Hollywood Park, Texas, is a multi-concept developer and operator of independent restaurant chains. FMP provides operational oversight and all professional and administrative services for the Debtors. In return for the services provided, FMP receives reimbursement of allocated costs and expenses and a management fee. A separate entity, FMP Ovation Payroll, LLC ("FMP Ovation"), provides employment and wage related services for the Debtors.

12. Since the Merger, certain events have occurred that were the genesis for the filing of these Chapter 11 cases. In October 2015, an $11.37 million judgment against Buffets, LLC (formerly known as Buffets, Inc., which was the named defendant although not the entity

actually operating the restaurant where the alleged incident occurred) was awarded to plaintiffs in a 2014 court case for an incident dating back to 2010. No answer to such lawsuit was timely filed by prior management, which apparently overlooked it after initially receiving the service of process and such lawsuit was not disclosed by the previous management and ownership group in the course of 2015 negotiations leading to the recent Merger and change of control. Buffets, LLC is also attempting to overturn such judgment on the basis of the wrong defendant entity having been sued and other grounds.

13. Although at the time of the Merger, Buffets Restaurants Holdings, Inc. represented adequate positive cash flow for the operating entities, the financial results since the Merger have been far less than expected. For example, sales were down twenty-two percent (22%) from the seller's projections. This decline in the Debtors' cash flow performance combined with unanticipated expenses has caused a severe liquidity strain. Despite the Debtors' best efforts, the Debtors have fallen behind on their obligations to creditors.

14. As of the Petition Date, Buffets is the primary obligor on several term notes the approximate principal amounts of which total in the aggregate $46,168,000 (the "Loans"). Buffets pledged all of its assets as collateral to secure the Loans. The Loans are guaranteed by each of the Debtors as well as the following non-debtors: Alamo Ovation, LLC, Buffet Restaurants Holdings, Inc. and Buffets Holdings, LLC. In addition, the Debtors have unsecured debt in an aggregate amount exceeding $60 million which includes over $18 million in ordinary course trade debt and rent that was unpaid as of the Petition Date.

15. Due to the numerous underperforming restaurants, the Debtors closed and vacated 74 stores several weeks prior to the Petition Date and closed another 92 stores immediately preceding the bankruptcy filing which the Debtors will vacate within the next 7-10 days.

16. As of the Petition Date, the Debtors continue to operate approximately 150 restaurants in over 25 states including Texas, California, Minnesota, Wisconsin, Michigan, Illinois, Colorado, Missouri, New York, New Jersey, Pennsylvania, Maine, Tennessee, Indiana, Washington, Oregon, Delaware, South Carolina, Louisiana, West Virginia, Ohio, Kentucky, North Carolina, Tennessee and Mississippi.

17. The Debtors have diligently evaluated, in consultation with their professionals, a number of options to address the Debtors' current financial issues. These efforts have included retaining a Chief Restructuring Officer, Bill Patterson of Bridgepoint Consulting, LLC, for the Debtors with the goal of consensually restructuring the Debtors' restaurant footprint and balance sheet.

18. The Debtors have commenced these cases in order to fully implement their restructuring efforts and to deal with both legacy costs and those liabilities resulting from the store closures. The Debtors believe that once they shed themselves of the burdens associated with the Wyoming litigation and the unprofitable stores, they can focus their efforts on their successful stores which will provide sufficient cash to fund the Debtors' ordinary course expenses and enable the Debtors to become a profitable enterprise.

19. Additional details regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of this Chapter 11 Case are set forth in the First Day Declaration previously filed and incorporated herein by reference as though set forth in full.

## RELIEF REQUESTED

### Background

20. Through this Motion, the Debtors respectfully request authority to (i) retain and pay Auction Nation, LLC (the "Auctioneer") as auctioneer for the Debtors' estates pursuant to

the Auction Agreement attached hereto as **Exhibit A** (the "Auction Agreement"), pursuant to 11 U.S.C. § 327, and (ii) sell by auction all furniture, fixtures, and equipment (the "FF&E") at the previously-closed locations set forth in **Exhibit B** hereto, free and clear of all liens, claims, and encumbrances, pursuant to 11 U.S.C. § 363.

21. Immediately preceding the Petition Date, the Debtors closed 92 store locations and have moved for authority to reject the leases associated with those closed locations (the "Closed Locations").[2]

22. Certain valuable FF&E remain at certain of the Closed Locations, identified on **Exhibit C** hereto (the "FF&E Sale Locations"), however, rent for the FF&E Sale Locations continues to accrue at approximately $50,000 per day (in the aggregate) and if the FF&E is not sold on an expedited basis, the value of the FF&E will be offset by the accruing rent. The sales are estimated to bring roughly $200,000 to $500,000 in gross proceeds.

23. Prepetition, the Debtors retained the auctioneer pursuant to the Auction Agreement and the auctioneer has been in the process of marketing and taking bids. The bids close tonight (March 9, 2016) with the equipment to be retrieved by the successful seller tomorrow.

<b><u>Employment and Payment of the Auctioneer</u></b>

24. The Debtors propose to retain and pay the Auctioneer pursuant to the terms of the Auction Agreement, and to have the Auctioneer sell the FF&E by auction.

---

[2] On March 7, 2016, the Debtors filed a Second Motion to Reject Unexpired Leases of Real Property Pursuant to 11 U.S.C. § 365 (Doc. 28), seeking an Order deeming certain unexpired leases of restaurant locations rejected *nunc pro tunc* to the latter of the Petition Date or the date the Debtors surrendered possession of the location to its landlord.

25. Section 1107 of the Bankruptcy Code grants a debtor-in-possession the majority of the rights of a trustee appointed under Chapter 11. Included within those rights is the right to employ professional persons. Section 327 of the Bankruptcy Code provides, in relevant part:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

26. *See* 11 U.S.C. § 327(a). Furthermore, Section 328 of the Bankruptcy Code authorizes the Debtor to retain a professional on an other than hourly basis.

27. Employment of the Auctioneer is necessary to assist the Debtors in liquidating the FF&E for the benefit of these estates. If the FF&E is not sold and remains at the closed locations, rent may continue to accrue and the FF&E will depreciate in value. The Debtors believe the Auctioneer is duly-qualified to, and will, facilitate an expeditious, profitable sale of the FF&E for the benefit of their estates.

28. The Auctioneer does not hold or represent an interest adverse to these estates, and is disinterested as that term is defined by 11 U.S.C. § 101(14).

29. Accordingly, the Debtors respectfully request authority to (i) employ the Auctioneer pursuant to the terms of the Auction Agreement, and (ii) compensate the Auctioneer in accordance with the terms of the Auction Agreement, subject to the provisions of 11 U.S.C. § 327 & 328 and appropriate Court approval.

### Sale of FF&E Free and Clear of All Liens, Claims, and Encumbrances

30. The Debtors intend to sell the FF&E by auction, free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).

31. Section 363 of the Bankruptcy Code provides in relevant part that a trustee (or debtor-in-possession) may sell property of the estate free and clear of the interest of any entity if

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f).

32. The Debtors anticipate sales of the FF&E will result in net proceeds to the bankruptcy estate of between $200,000 and $500,000.

33. The lienholders whose claims are secured by the FF&E consent to the relief requested in this Motion and have waived any lien on the sale proceeds.

34. Accordingly, the Debtors believe relief under 11 U.S.C. § 363(f) is appropriate, and request authority to sell the FF&E by auction, free and clear of all liens, claims, and encumbrances.

**Ancillary Relief Requested**

35. The Debtors further request that (i) any restrictions under the applicable leases on the sale and procedures proposed herein be deemed waived; (ii) any order granting this Motion not impact or prejudice the affected landlords' rights to file claims, of any nature, in this Chapter 11 Case; and (iii) any order granting this Motion not impact or prejudice the bankruptcy estates' rights and remedies related to those landlords' claims.

36. Based on the foregoing, the Debtors submit the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted.

{37741983;1}  9

## THE REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

37. The Debtors submit the facts cited herein illustrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estate. Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

38. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

39. Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently. Finally, the relief requested herein shall not oblige the Debtors to accept any services, to accept the shipment of goods, or prevent the Debtors from returning or rejecting goods.

## NOTICE

40. Notice of this Motion has been provided via fax or email to: (i) the U.S. Trustee; (ii) the Debtors' thirty (30) largest unsecured creditors and other parties on the Debtors' Master Service List; (iii) the Debtors' prepetition secured lenders; and (iv) the respective landlords

(where email and faxes were available) (collectively, the "Notice Parties"). The Debtors submit that no other or further notice need be provided.

## CERTIFICATE OF CONFERENCE WITH AFFECTED PARTIES PURSUANT TO LOCAL BANKRUPTCY RULE 9014(e)

41. The Debtors' counsel discovered the ongoing sales on the morning of March 9, 2016. Because of the number of locations and the fact that counsel only found out about the need for emergency relief this morning, prior conferences with each affected landlord have not been possible. However, the Debtors will reach out to the landlords and known counsel on an expedited basis throughout the day and evening and will advise the Court of efforts to confer and progress at the scheduled hearing.

## CONCLUSION

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: March 9, 2016

Respectfully submitted,

AKERMAN LLP

  /s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX  75201
Telephone:   (214) 720-4300
Facsimile:   (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

and

Andrea Hartley (*Pro Hac Vice* Pending)
Florida Bar No. 864234
Esther A. McKean (*Pro Hac Vice* Pending)
Florida Bar No. 28124
Amy M. Leitch (*Pro Hac Vice* Pending)
Florida Bar No. 90112
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
andrea.hartley@akerman.com
esther.mckean@akerman.com
amy.leitch@akerman.com

PROPOSED COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION