

**The relief described hereinbelow is SO ORDERED.**

**Signed April 27, 2017.**

Ronald B. King
Chief United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[1] | § | Case No. 16–50557-rbk |
| | § | |
| Debtors. | § | (Jointly Administered) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER SECTION 1129 OF THE BANKRUPTCY CODE AND RULE 3020 OF THE BANKRUPTCY RULES CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

## RECITALS

A.     On March 7, 2016, Buffets, LLC f/k/a Buffets, Inc. ("Buffets"), a Minnesota limited liability company, Hometown Buffet, Inc., a Minnesota corporation, OCB Restaurant Company, LLC, a Minnesota limited liability company, OCB Purchasing Co., a Minnesota corporation, Ryan's Restaurant Group, LLC, a South Carolina limited liability company, Fire Mountain Restaurants, LLC, an Ohio limited liability company, and Tahoe Joe's, Inc., a Minnesota corporation (each a "Debtor," and collectively, the "Debtors") filed petitions for relief

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

41415483v4

under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

B.      On February 10, 2017, the Debtors filed an Expedited Motion for Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving the Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots; and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan, and (B) Proposed Cure Amounts Related to Contracts and Leases Assumed Under the Plan; and (IV) Granting Related Relief (the "Solicitation Procedures Motion") [Docket No. 2170]. The Solicitation Procedures Motion was served by first class mail to the persons listed on the service list attached to the affidavit confirming service, filed with the Court on February 13, 2017 [Docket No. 2183].

C.      On February 24, 2017, the Debtors filed their Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended and modified, including modifications contained in the black line version of the Plan filed at Docket No. 2487, the "Plan") [Docket No. 2244], and the Amended Disclosure Statement for Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as amended and modified, the "Disclosure Statement") [Docket No. 2243].[2]

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan, a copy of which is attached hereto as **Exhibit A** (which includes any changes made to the Plan since February 23, 2017), or, if not defined in the Plan, in the Debtors' Omnibus Response to Objections to the Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Omnibus Response"). Any capitalized term used in the Plan or in the Omnibus Response that is not defined in the Plan, the Omnibus Response, or this Confirmation Order, but that is used in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), or in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the

2

41415483v4

D.  On February 24, 2017, this Court entered its Order approving the Amended Disclosure Statement and Solicitation Procedures Motion (the "Solicitation Procedures Order") [Docket No. 2242].

E.  As required by the Solicitation Procedures Order, the Debtors, through their noticing and voting agent, Donlin, Recano & Company, LLC ("Donlin"), timely mailed to all holders of Claims entitled to vote on the Plan solicitation packages (the "Solicitation Packages") containing (a) written notice of (i) the Court's approval of the Disclosure Statement for the Plan, (ii) the deadline for voting on the Plan, (iii) the date of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and (iv) the deadline and procedures for filing objections to confirmation of Plan; (b) the Plan, (c) the Disclosure Statement; (d) Ballots, as applicable, to vote to accept or reject the Plan and a ballot return envelope to be used to return a completed Ballot; and (e) a letter from the Official Committee of Unsecured Creditors appointed in these bankruptcy cases (the "Creditors' Committee") in support of the Plan (the "Plan Support Letter"). As further required by the Solicitation Procedures Order, the Debtors, through Donlin, timely mailed to all Claim or Equity Interest holders not entitled to vote on the Plan written notice of (i) the Court's approval of the Disclosure Statement, (ii) a summary of the treatment of Claims and Interests under the Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the Plan (the "Non-Voting Party Notice"). Affidavits of service confirming such actual notice were filed with the Court on March 20, 2017. [Docket No. 2419].

F.  The Non-Voting Party Notice, which was approved by the Solicitation Procedures Order, provides in part that:

---

meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. Citations to the Bankruptcy Code and Bankruptcy Rules are to the sections and rules as numbered and in effect on the Petition Date or as otherwise applicable to these Chapter 11 Cases.

41415483v4

all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction…(ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan.

G.     In accordance with the Solicitation Procedures Order, the Ballots allowed holders of Claims in Classes 1, 4, 5, 6, and 7 to opt out of the releases of the Reorganized Debtors and Released Parties set forth in Article VIII of the Plan by checking the appropriate box on the Ballots. The Ballots included the following statements:

OPTIONAL RELEASE ELECTION. Check this box if you elect not to grant the releases contained in Article VIII of the Plan and elect not to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VIII of the Plan and the related injunction to the fullest extent permitted by applicable law.

H.     As further required by the Solicitation Procedures Order, the Debtors, through Donlin, on March 8, 2017 mailed the Notice of (I) Proposed Assumption of Executory Contracts and Unexpired Leases (II) Fixing of Cure Amounts and (III) Deadline to Object Thereto (the

4

41415483v4

"Cure Notice") [Docket No. 2278]. An affidavit of service confirming mailing of the Cure Notice was filed with the Court on March 16, 2017 [Docket No. 2405]. Objections to the Cure Notice were filed within the time prescribed by the Solicitation Procedures Order, each of which has been consensually resolved or agreed to be adjourned with the objecting party. Those objections to cure amounts and/or assumption/rejection of certain contracts listed on **Exhibit B**, if any, hereto are adjourned to a date indicated therein, if any.

I. Pursuant to the Solicitation Procedures Order, the deadline for filing objections to the Plan and the voting deadline for holders of Claims entitled to vote on the Plan was March 27, 2017.

J. On March 31, 2017, the Debtors filed the Declaration of Jung W. Song on Behalf of Donlin, Recano & Company, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 2484] attesting to, and certifying the method and results of, the ballot tabulation for holders of Claims in Classes 1, 4, 5, 6, and 7 voting to accept or reject the Plan (the "Voting Report").

K. On March 31, 2017, the Debtors filed the Debtors' Notice of Filing of Proposed Changes to Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed by Debtors on March 31, 2017 attaching as Exhibit 1 the proposed Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Second Amended Plan") [Docket No. 2487] (the "Second Amended Plan").

L. The voting results, as certified in the Voting Report, are reflected in the chart below:

41415483v4

| Class | Number of Creditors Voting | | Amount of Claims Held by Voting Creditors | Amount of Claims Voted | | Percentage of Voting Claims | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Accept | Reject | | Accept | Reject | % $ Accept | $ % Reject | % # Accept | % # Reject |
| 1 – Priority Claims | 27 | 3 | $880,192.57 | $811,661.13 | $68,531.44 | 92.21 | 7.79 | 90.00 | 10.00 |
| 4 –General Unsecured Claims | 71 | 4 | $22,475,197.43 | $21,884,559.85 | $590,637.58 | 97.37 | 2.63 | 94.67 | 5.33 |
| 5 – Convenience Claims | 137 | 10 | $386,056.79 | $348,521.10 | $37,535.69 | 90.28 | 9.72 | 93.20 | 6.80 |
| 7 – ACE Companies[3] | | 1 | $30,697,297 | | $30,697,297 | 0.00 | 100.00 | 0.00 | 100.00 |

[3] Based on the revisions set forth in the Second Amended Plan and as set forth on the record of the Confirmation Hearing, the ACE Companies changed their vote to a vote to accept at the Confirmation Hearing. The ACE Companies did not change their election not to grant the releases contained in Article VIII of the Plan and not to consent to the related injunction.

6

41415483v4

M.     On March 21, 2017, the Debtors filed the Plan Supplement [Docket No. 2422] which included, as exhibits, substantially final forms of the following documents:

| | |
|---|---|
| Exhibit A: | Schedule of Additional Rejected Contracts and Leases |
| Exhibit B: | Schedule of Additional Assumed Contracts and Leases |
| Exhibit C: | Unsecured Creditors' Trust Agreement |
| Exhibit D: | List of members of the Trust Advisory Board |
| Exhibit E: | Trust Causes of Action |
| Exhibit F: | Alamo Buffets Advance Agreement |
| Exhibit G: | Secured Trust Note |
| Exhibit H: | Subordination Agreement |
| Exhibit I: | Assignment Agreement |
| Exhibit J: | Security Agreement |
| Exhibit K: | List of the Excluded Causes of Actions |
| Exhibit L: | List of the Excluded Insider Causes of Action |
| Exhibit M: | Collateral Assignment of Leases |
| Exhibit N: | Composite of Mortgages |

N.     The Plan Supplement was amended on March 31, 2017 [Docket No. 2485]. Further Amendments to the Plan Supplement were introduced as hearing exhibits during the Confirmation Hearing.  To the extent that any of the Plan Supplement documents are not in final form, the Plan Supplement may be amended again prior to the Effective Date. Specifically, and without limitation, the Creditors' Committee raised objections to Plan Supplement Exhibit K (Excluded Causes of Action), and the parties agreed to work through the Creditors' Committee's objections and to file with the Court an amended Exhibit K within 30 days following the

41415483v4

Confirmation Hearing. If the Creditors' Committee and the Debtors do not reach agreement concerning Exhibit K, then such parties may bring the matter before the Court for determination as to the appropriate content of such exhibit. In addition, while the transactional documents included in the Plan Supplement are substantially in final form, certain provisions and exhibits to such transactional documents had not yet been finalized and completed. Counsel for the Creditors' Committee, the Debtors, and the Debtors' insiders represented to the Court that efforts to finalize the transactional documents and exhibits are ongoing and these documents are expected to be finalized prior to the Effective Date.

O. The Debtors received a total of twenty-one (21) filed objections to confirmation of the Plan (collectively, the "Plan Objections"). Each of the Plan Objections, has been resolved consensually by the Debtors agreeing to insert language in this Order or by modifying the Plan[4], addressing such objecting parties' concerns, overruled or deferred for a later hearing on issues specific to certain objections raised by the Creditors' Committee or to a particular creditor that would not impact confirmation of the Plan.

P. In addition to the Voting Report, on April 3, 2017, the Debtors filed the Declaration of Peter Donbavand Pursuant to 28 U.S.C. § 1746 in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Donbavand Declaration") in support of confirmation of the Plan [Docket No. 2492].

Q. The Confirmation Hearing was held on April 4, 2017 at 9:30 a.m.

NOW, THEREFORE, based upon the Court's review of the Donbavand Declaration, the Voting Report and upon (i) all of the evidence proffered or adduced and arguments of counsel

---

[4] The use of the term "Plan" hereafter is intended to be and shall be understood to be a reference to the Second Amended Plan.

41415483v4

made at the Confirmation Hearing and (ii) the entire record of these Chapter 11 Cases, and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[5]

### IT IS HEREBY FOUND AND DETERMINED THAT:

1.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §4 157, 1334(a), 1408 and 1409). The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.      Judicial Notice. This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases.

3.      Burden of Proof. The Debtors, as proponents of the Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

4.      Transmittal and Mailing of Materials; Notice. The Solicitation Packages and Non-Voting Party Notice were transmitted and served in compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service was adequate and sufficient.

---

[5] These Findings of Fact and Conclusions of Law constitute the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

41415483v4

Adequate and sufficient notice of the Confirmation Hearing and the other dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and Solicitation Procedures Order, and no other or further notice is or shall be required.

5.  Voting Results. As described more fully in the Voting Report, each Impaired Class that was entitled to vote to accept or reject the Plan voted to accept the Plan or modified their vote at the confirmation hearing to accept the Plan. See Voting Report, Exhibit A. In addition and as set forth in footnote 3 herein, counsel for the ACE Companies and Subordinated Claims classes during the confirmation hearing announced their vote to accept the Plan.

6.  Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Claims and Fee Claims, which need not be classified, the Plan designates eight (8) Classes of Claims and Equity Interests. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) Specification of Unimpaired Classes (11 U. S. C . § 1123(a)(2)). Article IV of the Plan specifies that Classes 2, and 3 are not Impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii) Specification of Treatment of Impaired Classes (11 U.S.C. 1123(a)(3)). Article IV of the Plan designates Classes 1, 4, 5, 6, and 7 as Impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv) Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in a particular Class unless the holder of a particular Claim or Equity Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

41415483v4

(v)      Implementation of Plan (11 U.S.C. § 1123(a)(5)). In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Article VIII of the Plan, provides adequate and proper means for its implementation, including, without limitation: (1) the continued existence of the Debtors under Article VIII.A of the Plan, except as otherwise provided under the Plan, (2) the adoption of the amendments to the certificates of incorporation of Reorganized Debtors, and such other amended and restated governing documents as set forth in the Plan Supplement that will govern the Reorganized Debtors, as the case may be, as provided in Article V.A of the Plan, (3) the issuance of new membership interests as provided in Article V of the Plan, and (4) the establishment of the Unsecured Creditors' Trust under Article VII.D.

(vi)      Selection of Officers (11 U.S.C. § 1123(a)(7)). The officers of the Reorganized Debtors shall be substantially the same as the officers of the Debtors on the Effective Date. The foregoing provisions of the Plan for the selection of managers and officers are consistent with the interests of creditors and equity holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(vii)      Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

7.      Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)      the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

(ii)      the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and

(iii)      the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

8.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors, the Creditors' Committee, Equity Interest, and their respective counsel and advisors as applicable, participated in good faith in

11

41415483v4

negotiating, at arms' length, the Plan and the contracts, instruments, releases, agreements and documents related to or necessary to implement, effectuate and consummate the Plan. Each of the Debtors, the Creditors' Committee, Equity Interest, and their respective counsel and advisors as applicable also participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, confirmation. In so determining, the Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of the Confirmation Hearing, the formulation of the Plan and all related pleadings, exhibits, statements and comments regarding confirmation of the Plan and the approval of the Plan by the creditors that voted on the Plan. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purposes of effecting a reorganization of the Debtors.[6]

9.      Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except for payments to be paid under Article VIII.I of the Plan (governing payment of Administrative Claims incurred after the Effective Date), the fees and expenses of the professionals, any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

10.     Managers, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Debtors disclosed in the Plan the identities and affiliations of the individuals initially proposed to serve, after confirmation of the Plan, as officers of Reorganized Debtors, on or after the Effective Date. The appointment of such

---

[6] The findings set forth in paragraph 8 are not intended to adversely impact any claims that EarthLink, LLC may have against any nondebtor parties regarding its entry into a Master Services Agreement with Buffets, LLC, dated as of December 31, 2015.

41415483v4

individuals to such positions is consistent with the interests of creditors, Equity Interest holders, and public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

11. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Debtors' businesses are not subject to rate regulation by any governmental regulatory commission; therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

12. <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing and the Donbavand Declaration, (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged, and (iii) establishes that each holder of a Claim or Equity Interest in an Impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

13. <u>Acceptance By the Requisite Classes of Creditors and Equity Interest Holders (11 U.S.C.§ 1129)(8))</u>. Classes 1, 4, 5, 6, and 7 are the only Impaired Classes entitled to vote on the Plan, and Classes 1, 4, 5, and 7 voted in sufficient number and amount to accept the Plan and Class 6, at the Confirmation Hearing, indicated acceptance. Classes 2 and 3 are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. See Plan Article IV. The Plan provides that holders of Equity Interests in Class 8 shall be cancelled, and this Class is therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "<u>Deemed Rejecting Class</u>"). Notwithstanding that section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to all Classes of Claims and Equity Interests, the plan

13

may be confirmed over the nonacceptance of the Deemed Rejecting Class pursuant to Section 1129(b) of the Bankruptcy Code.

14. <u>Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)).</u> The Plan's treatment of Allowed Administrative Claims, Fee Claims, and Allowed Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

15. <u>Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).</u> Classes 1, 4, 5, and 7, each of which is Impaired under the Plan, have voted to accept the Plan or otherwise announced acceptance of the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider. Consequently, section 1129(a)(10) of the Bankruptcy Code is satisfied.

16. <u>Feasibility (11 U.S.C. § 1129(a)(11)).</u> The Debtors have established, by a preponderance of the evidence, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors. To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, the Debtors prepared and included as Exhibit C to the Disclosure Statement projections of their financial performance for reporting periods ending at year-end 2017. These financial projections along with the Donbavand Declaration and Cash Necessary for Exit documents support the finding that the Debtors will have adequate capital to meet their obligations arising under the Plan or otherwise. The Court finds that the financial projections and Cash Necessary for Exit documents, the Donbavand Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged, and (iii) establish that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

41415483v4

17. <u>Payment of Certain Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to Article X.A of the Plan. Moreover, each of the Reorganized Debtors will be responsible for paying post-Effective Date quarterly fees under 28 U.S.C. § 1930(a)(6). Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

18. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Article XII of the Plan provides that as of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of

15

41415483v4

such plans, contracts, or programs. Thus, the Plan satisfies each of the requirements of section 1129(a)(13) of the Bankruptcy Code.

19. <u>Classification of Claims and Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. §1129(b))</u>. The classification and treatment of Claims in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan, if all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. All Impaired Classes, other than the Deemed Rejecting Class, voted to accept the Plan.

20. The requirements of 1129(b)(1) and (b)(2) of the Bankruptcy Code are satisfied because no holders of Equity Interests junior to the holders of Equity Interests in the Deemed Rejecting Class will receive distributions under the Plan on account of such Equity Interests, and no holder of a Claim or Equity Interest in a Class senior to the holders of Equity Interests in the Deemed Rejecting Class shall receive more than full recovery on account of its Allowed Claim or Equity Interest. Accordingly, the requirements of section 1129(b) of the Bankruptcy Code are satisfied with respect to the Deemed Rejecting Class, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to such Class. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

21. <u>Only One Plan (11 U.S.C. §1129(c))</u>. Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

41415483v4

22.     Purpose of the Plan (11 U.S.C. §1129(d)). The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and there has been no filing by any governmental unit asserting any such attempted avoidance.

23.     Good Faith Solicitation and Participation (11 U.S.C. § 1125(e)). Based upon the record before the Court, the Debtors and the Released Parties, and their respective counsel, advisors and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with the solicitation of acceptances of the Plan and the offer, issuance, sale or purchase of securities in connection with the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunctive and exculpatory provisions set forth in Articles VIII.F and VIII.M of the Plan, as modified by this Order.

24.     Releases by the Debtors. In connection with the Releases by the Debtors contained in Article VIII.J of the Plan, the evidence proffered or adduced at the Confirmation Hearing, and the Donbavand Declaration satisfy the Debtors' burden of proof in support of such releases and establish that such releases are an essential component of the consensual Plan negotiated among all of the Debtors' key constituencies. The Releases by the Debtors set forth in the Plan constitute good faith compromises and settlements of the matters thereby and are consensual. Such compromises and settlements are made in exchange for adequate consideration and are in the best interests of holders of Claims, are fair, necessary, equitable, and reasonable, and are integral elements of the resolution of these Chapter 11 Cases in accordance with the Plan. The Releases by the Debtors are: (i) within the jurisdiction of this Court to authorize under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan

41415483v4

pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated into the Plan; (iv) conferring material benefit on, and is in the best interests of, the Debtors, their estates and their creditors; (v) important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization; consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code; and (vii) and were the product of arms' length negotiations among the Debtors, certain insiders and the Official Committee of Unsecured Creditors.

25. <u>Non-Debtor Releases.</u> In connection with the releases by non-debtors of the Released Parties (the "<u>Non-Debtor Releases</u>") contained in Article VIII.K. of the Plan, based on the evidence adduced at the Confirmation Hearing and the Donbavand Declaration, the Court finds:

(i) The Non-Debtor Releases shall not be binding on any party electing not to accept the Non-Debtor Releases to the extent affirmatively elected on such party's ballot as identified in the Voting Report filed with this Court. Nothing herein shall be construed to create or revive any claim or right of action against a Released Party that has expired or does not otherwise exist under applicable non-bankruptcy law.

(ii) The Non-Debtor Releases are binding for six months from the Effective Date for (1) holders of Claims that voted to accept the Plan and did not mark their Ballot to indicate their refusal to grant the Non-Debtor Releases and (2) any holder of a Claim that did not vote unless such holder elected not to accept the Non-Debtor Releases. Thereafter, the Non-Debtor Releases have no effect. Any applicable statute of limitations is tolled during the foregoing six months of the temporary release.

(iii) In addition to the foregoing, the Non-Debtor Releases are appropriate in these Chapter 11 Cases because they are fair and reasonable to all parties in interest, essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, and integral elements of the transactions incorporated in the Plan that are important to the overall objectives of the Plan.

26. [This paragraph intentionally omitted.]

41415483v4

27. <u>Satisfaction of Confirmation Requirements.</u> The Plan satisfies each of the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

28. <u>Retention of Jurisdiction.</u> This Court may properly retain jurisdiction over the matters set forth in Article IX of the Plan and herein.

29. <u>Substantive Consolidation.</u> Solely in connection with Distributions to be made to the holders of Allowed Claims, Article VI of the Plan provides for the substantive consolidation of the Estates of the Debtors into a single Estate for purposes of the Plan and the Distributions thereunder. Based on the Omnibus Response and the Donbavand Declaration and in the absence of any objections to such request, the Court finds that such deemed substantive consolidation of the Debtors' estates is justified and appropriate in these Chapter 11 Cases for purposes of the Plan and the Distributions thereunder.

## DECREES

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

30. <u>Confirmation.</u> The Plan satisfies each of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Therefore, the Plan is approved and confirmed as set forth in this Order under section 1129 of the Bankruptcy Code and all objections thereto not previously resolved or withdrawn are hereby overruled.

31. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent.</u> The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

32. <u>Plan Classification Controlling.</u> The classification of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the holders of

41415483v4

Claims entitled to vote on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes, and (iii) shall not be binding on the Debtors, their estates, or the Reorganized Debtors.

33. Binding Effect. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, and (iv) each person acquiring property under the Plan. To the extent of any inconsistencies between the terms of this Order and the Plan, as amended, the terms of this Order shall control, except as otherwise provided herein.

34. Vesting of Assets. Pursuant to Article VIII.D of the Plan, on the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors shall be vested with all of the property of the Estates free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders, except as otherwise provided in the Plan or any document entered into in connection with the transactions described in the Plan and this Order (including, without limitation, the Trust Assets which are to be conveyed to the Unsecured Creditors' Trust and liens and encumbrances on all assets of the Reorganized Debtors which are to be granted to the Unsecured Creditors' Trust pursuant to the Secured Trust Note and related transaction documents, as modified by this Order).

41415483v4

35. <u>Injunction.</u> Except as otherwise expressly provided in the Plan, this Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors or the Unsecured Creditors' Trust on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors on account of any such Claim except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely filed proof of claim or a rejected non-residential real property lease. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) and the Unsecured Creditors' Trust and their respective properties and interests in property. Such injunction shall not apply in respect of Ordinary Course Administrative Claims.

36. <u>Continuation of the Automatic Stay.</u> All injunctions or stays, whether imposed by operation of law or by Order of this Court, provided for in the Chapter 11 Cases, pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise, that are in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. As of the Effective Date, the

41415483v4

stay imposed pursuant to section 362(a) of the Bankruptcy Code shall be dissolved and of no further force and effect, subject to the injunction set forth herein and/or sections 524 and 1141 of the Bankruptcy Code, except that nothing herein shall bar the filing of documents in connection with the Plan, or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan, the Exhibits to the Plan, the Plan Supplement Documents (as modified by this Order) or this Order.

37. <u>Insurance.</u> Pursuant to Article VIII.O of the Plan, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with the Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former managers) or any other person or entity. For the avoidance of doubt, nothing in this Confirmation Order alters or supersedes, nor shall be deemed to alter or supersede Article VII.I.3 of the Plan and, without the ACE Companies' prior written consent, no modifications, at any time, to the Plan, Plan Supplement or Plan Supplement Documents shall in any way alter or supersede, nor be deemed to alter or supersede, Article VII.I.3 of the Plan.

38. <u>Unclaimed Distributions of Cash.</u> Any distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall become the property of the Reorganized Debtor or the Unsecured Creditors' Trust, as applicable, against which such Claim was Allowed notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

41415483v4

39. <u>Assumed and Rejected Contracts and Leases.</u> Except with respect to those executory contracts and unexpired leases listed on **Exhibit B** hereto, if any, with respect to which a hearing to resolve an objection to the Debtors' proposed cure amount or assumption/rejection is adjourned to a later date, the Debtors have cured, or provided adequate assurances that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases being assumed under the Plan. Further, other than (i) executory contracts or unexpired leases that have expired or terminated pursuant to their own terms during the pendency of the Chapter 11 Cases or been assumed or rejected earlier in the Chapter 11 Cases, (ii) executory contracts or unexpired leases assumed under the Plan, and (iii) executory contracts and unexpired leases on the Schedule of Additional Assumed Contracts and Leases, all of the executory contracts and unexpired leases that exist between the Debtors and any Person are specifically rejected as of and subject to the occurrence of the Effective Date pursuant to the Plan. To the extent any such executory contracts or unexpired leases have been amended prior to the Confirmation Date, such contracts or leases shall be assumed as so amended.

40. As further ordered hereinafter, effective as of the Effective Date, all of Debtors' and Reorganized Debtors' interests in any and all proceeds hereafter arising from or otherwise related to any and all assumed leases of non-residential property (the "<u>Assumed Real Property Leases</u>", and each an "<u>Assumed Real Property Lease</u>"), including, without limitation, those listed on **Exhibit C** (List of Assumed Real Property Leases) to this Order and any subsequently assumed real property leases, shall be assigned to the Unsecured Creditors' Trust as collateral securing the performance and payment of obligations arising under the Secured Trust Note and related transaction documents. Nothing in this paragraph or elsewhere in this Order shall be

41415483v4

construed to alter or otherwise interfere with the rights of the respective landlords under the Assumed Real Property Leases. Notwithstanding anything to the contrary contained in the Plan, Plan Supplement (inclusive of the Secured Trust Note, Subordination Agreement, Security Agreement and Collateral Assignment of Leases), as may be amended, Plan Supplement Documents or this Order, no Assumed Real Property Lease of the Debtors may be collaterally assigned, assigned, pledged, or subject to any lien, security interest, mortgage, deed of trust or encumbrance unless permitted by the terms of such lease or consented to in writing by the landlord under such lease. The Creditors' Committee shall not record any document with respect to any Assumed Real Property Leases. The Unsecured Creditors' Trust shall not record in applicable real estate records any document with respect to an Assumed Real Property Lease unless the real property lease permits such recording or is consented to in writing by the Landlord.

41. Notwithstanding Article VIII(E)-(M) of the Plan or this Order, with respect to any Assumed Real Property Lease, the Debtors and Reorganized Debtors shall remain liable for: (i) amounts owed under the Assumed Real Property Lease that are unbilled or not yet due as of the Effective Date, regardless of when such amounts accrued, such as common area maintenance, insurance, taxes, and similar charges; (ii) any regular or periodic adjustment or reconciliation of charges under the Assumed Real Property Lease which are not due or have not been determined as of the Effective Date; (iii) any percentage rent that may come due under the Assumed Real Property Lease; (iv) other obligations, including indemnification obligations, if any, as of the Effective Date; and (v) any unpaid cure or post-assumption obligations under the Assumed Real Property Leases. All rights of the parties under the Assumed Real Property Leases for setoff,

41415483v4

recoupment and subrogation shall survive, notwithstanding any term or condition of the Plan or this Order to the contrary.

42. <u>Oracle.</u> The Debtors and Oracle have agreed that all issues regarding assumption and / or rejection of the contracts and relationships, including cure amounts and the decision to assume or reject, with Oracle (as successor in interest and liability to Micros), related to Debtors' Point-of-Sale systems, are not impacted by the entry of this Order and instead will be determined at a future hearing, to be set by this Court, or by future agreement of the parties. All rights by all the parties are expressly reserved, in the interim.

43. <u>Ecolab.</u> The Debtors and Ecolab have agreed that all issues regarding assumption and / or rejection of all contracts and relationships, including cure amounts and the decision to assume or reject, between Ecolab and any of the Debtors, related to Debtors' dish machines, supplies, pest services and any related services and leases related to or provided by Ecolab, are not impacted by the entry of this Order and instead will be determined at a future hearing, to be set by this Court, or by future agreement of the parties. All rights and claims of the parties are expressly reserved, in the interim.

44. <u>Cortland Capital Market Services, LLC.</u> The parties have agreed that the Objection of Cortland Capital Market Services, LLC's ("**Cortland**") (Docket No. 2483) does not prevent confirmation of the Plan as set forth in this Order. Issues raised by Cortland concerning assignment by non-Debtors of certain causes of action against Cortland, any former officers or directors of the Debtors, or the Sellers under the Merger Agreement are reserved for further hearing. Entry of this Order will not be deemed to authorize any such assignment. The parties shall have thirty (30) days after the entry of this Order to submit an agreed order concerning the

41415483v4

matters raised in Cortland's Objection. If no agreed order is submitted by that time, the Court will conduct a hearing on or before May 31, 2017.

45. FMP SA Management, LLC. Notwithstanding anything to the contrary in the Plan or this Order, by this Order, Debtors shall reject as of the Effective Date their contract for management services with FMP SA Management, LLC. FMP SA Management, LLC may file a claim for rejection damages under, without limitation, sections 365 and 502 of the Bankruptcy Code; provided, however, any such Claim will be treated as a Subordinated Claim under the Plan and, FMP SA Management, LLC shall have no Claim against the Unsecured Creditors' Trust and shall have no right to receive any distributions from the Unsecured Creditors' Trust. All references to the FMP Cure Claim and to the assumption of the FMP Management Agreement are deleted from the Plan. On or before the Effective Date, Reorganized Debtors shall enter into a management services agreement with TX FMP Management, LLC on the same terms as the contract Debtors currently have with FMP SA Management, LLC. The composition of the members, managers, and employees of TX FMP Management, LLC shall be substantially similar to that of FMP SA Management, LLC. TX FMP Management, LLC shall become a party to a Subordination Agreement substantially in the form included in the Plan Supplement as Exhibit H. Upon a default under the Secured Trust Note or related transaction documents, TX FMP Management, LLC shall not be entitled to payment of any previously earned but then unpaid compensation or management fees, or reimbursement of any previously incurred or advanced expenses or costs, unless and until the Secured Trust Note is paid in full.

46. Discharges, Injunctions, Releases and Indemnifications Approved. In light of all of the circumstances and the record in these Chapter 11 Cases, including the evidenced proffered or addressed at the Confirmation Hearing and the Donbavand Declaration, the evidence that the

41415483v4

Debtor Releases were pursuant to a compromise and finding that the releases are supported by valuable consideration, each of the discharges, releases, injunctions, indemnifications and exculpations provided under the Plan, including those, without limitation, set forth in Articles VIII.E., VIII.F, and VIII.J of the Plan, is hereby approved, as modified in and by this Order, as being (i) within the jurisdiction of the Bankruptcy Court to approve under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (ii) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) an integral element of the transactions incorporated in the Plan; (iv) beneficial to, and in the best interests of, the Debtors, their Estates and their Creditors; (v) critical to the overall objectives of the Plan; (vi) 11 U.S.C. § 1123(b)(3)(A) is satisfied; and (vii) consistent with sections 105, 1123, 1129 and all applicable provisions of the Bankruptcy Code.

Upon the Effective Date, the Creditors' Committee, members of the Creditors' Committee, acting in their capacities as such, and their respective officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Committee Released Parties" and each a "Committee Released Party") shall be deemed to be released.

Exculpation Provision Stricken. The Exculpation provision at Article VIII.M.1 is hereby stricken from the Plan for all purposes, and will not be part of the confirmed Plan in the Chapter 11 Cases.

47.    Texas Comptroller of Public Accounts. The Court notes that Texas Comptroller of Public Accounts has opted-opt of the Non-Debtor Releases set forth in Article VIII.K. of the Plan and the exculpation limitation in Article VIII. M. of the Plan.

27

41415483v4

48.     Designation or Continuation in Office of Officers Approved. The designation or continuation in office as officers of the Reorganized Debtors of each of the individuals identified by the Debtors at or prior to the Confirmation Hearing hereby are approved and ratified as being in the best interests of the Debtors and Creditors and consistent with public policy. Such officers hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date.

49.     Substantive Consolidation Approved. The substantive consolidation of all of the Debtors for purposes of the Plan and the Distributions to be made pursuant to the Plan is approved such that (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of the Plan and Distributions to be made thereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of the Plan and Distributions thereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor under the Plan will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors, provided, however, that holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was

41415483v4

originally liable for such Claim and such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed pursuant to the express terms of the Plan, which guarantees shall continue in full force and effect.

50. General Authorizations, Future Plan Modifications. Pursuant to section 1142(b) of the Bankruptcy Code, the Debtors, the Reorganized Debtors, and all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and this Order and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan, including, without limitation, entering into each of the Plan Supplement Documents as modified by this Order. After entry of this Order and prior to the Effective Date, the Debtors or the Reorganized Debtors, as the case may be, and upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code (in consultation with the Creditors Committee with respect to the treatment of holders of General Unsecured Claims and Convenience Claims and matters pertaining to the Unsecured Creditors' Trust or any other matter affecting the rights of holders of General Unsecured Claims and Convenience Claims).

51. Plan Supplement Documents Approved. Subject to any applicable provisions of this Order and the terms of the Plan, the forms, terms and provisions of each of the Plan Supplement Documents filed with this Court as modified by this Order are hereby approved. The

41415483v4

Debtors are hereby authorized to amend any of the Plan Supplement Documents with the prior consent of the Creditors Committee and, to the extent applicable, the Unsecured Creditors' Trustee, through and including the Effective Date in a manner consistent with the Plan and this Order. When in final form and executed by the parties thereto, each of the Plan Supplement Documents shall be filed with the Court and shall constitute a legal, valid, binding and authorized obligation of the respective parties thereto, enforceable in accordance with its terms (except as enforceability may be limited by any bankruptcy or insolvency proceeding filed by any party thereto subsequent to the date of the execution of such document or by further order of this Court with respect to the proposed assignment referenced in paragraph 44 of this order).

52. Authorizations. The Debtors are authorized, empowered, and directed to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Order, all without further corporate action or action of the Debtors' managers or officers, on the Effective Date, of the officers of Reorganized Debtors disclosed prior to the Confirmation Hearing, the adoption of the Amended and Restated Certificates of Incorporation, Amended and Restated By-Laws and other amended and restated governing documents. In accordance with the adoption of the Amended and Restated Certificates of Incorporation, the Debtors and Reorganized Debtors are hereby authorized (i) to take all actions necessary to cause to be legended all membership interests in accordance with restrictions set forth in the Amended and Restated Certificates of Incorporation, in such manner as the Reorganized Debtors deem necessary and appropriate.

53. Exemption From Transfer Taxes. Pursuant to, and to the fullest extent permitted by, section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under the Plan of equity interests, (b) the making or assignment of any lease or sublease, or (c) the making or

41415483v4

delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan shall not be subject to any stamp tax or other similar tax. All recording and filing officers and clerks wherever located are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, any mortgage, deed of trust or other instrument of transfer described in (a), (b) or (c) above without payment of any stamp tax or similar tax. The Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer must accept for filing such security interests without charging any stamp tax or other similar tax or fee within the scope of Section 1146(a).

54. <u>Objections to and Resolution of Claims.</u> In the event any proof of Claim is permitted to be filed after the applicable bar date and/or Claims Objection Deadline, the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, shall have one hundred eighty (180) days (or such longer period as may be derived from application of Claims Objection Deadline as set in the Plan or subsequently extended by the Court) from the filing such proof of Claim to object thereto, which deadline may be extended by the Court on motion of the Reorganized Debtors or the Unsecured Creditors' Trustee and served on the Master Service List. Notwithstanding anything to the contrary in the Plan or this Order, the Claims Objection Deadline may only be extended by motion on prior notice to the parties on the Master Service List.

55. <u>Bar Date for Administrative Claims.</u> All holders of asserted Administrative Claims (except for (i) Fee Claims including Claims for expenses by members of the Creditors' Committee, and (ii) Ordinary Course Administrative Claims) not paid or filed prior to the Confirmation Date shall submit proofs of such Administrative Claims on or before the first business day that is thirty (30) days after the Effective Date (the "<u>Administrative Claims Bar</u>

41415483v4

Date") or forever be barred from doing so and from receiving payment thereof. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered following a motion on prior notice to the parties on the Master Service List) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

56. Bar Date for Rejected Contracts. The Debtors shall serve notice of the rejection of any executory contract or unexpired lease rejected pursuant to the Plan and the deadline for filing claims arising from or related to the rejection of such executory contracts and unexpired leases within two (2) business days of the Effective Date. Non-Debtor parties to executory contracts and unexpired leases that have been rejected by the Debtors pursuant to the Plan shall be permitted to file a proof of claim with regards to alleged damages resulting from such rejection until the date that is thirty (30) days after the Effective Date.

57. Fee Claims. As provided in Article III.B of the Plan, all requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors' Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and

32

41415483v4

served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date. The Allowed Fee Claims are to be paid in full in Cash within three (3) business days of the Final Order allowing such Claims.

58. Payment of Administrative Claims. Except with respect to Administrative Claims that are Fee Claims, each holder of an Allowed Administrative Claim shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

59. In addition, the Debtors shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the confirmation hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the Chapter 11 cases. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative expense claim against the Debtors and their estates.

60. Payment of Professional Fees and Fee Escrow of Estimated Fee Claims. On or before the Effective Date, the Debtors shall place in escrow with an escrow agent mutually acceptable to the Debtors, US Trustee, and Creditors' Committee funds sufficient to pay all the unpaid Fee Claims, as well as reasonably estimated amounts necessary to pay known and/or anticipated Fee Claims, except to the extent that the holder of such a Fee Claim executes a written waiver of such escrow requirement. As a condition to the Plan becoming effective and

41415483v4

the occurrence of the Effective Date, the Debtors shall, prior to the Effective Date, provide the Creditors' Committee proof of the creation, amount, and sufficiency of the escrow fund, including, without limitation, (a) an account statement from the escrow agent reflecting the amount of funds held in escrow and the account number and identifying the financial institution, including, without limitation, address, telephone and contact information, at which such account is established and (b) accurate and complete  documentation evidencing and detailing the amounts of any known unpaid Fee Claims and any anticipated Fee Claims.

61.    Payment of Fees.  All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. Each Reorganized Debtor shall pay such fees payable after the Effective Date until such time as a final decree is entered closing the applicable Chapter 11 Case or the Court orders otherwise.

62.    Continued Corporate Existence. The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement.

41415483v4

63.    Dissolution of Creditors' Committee. The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. Thereafter, the Creditors' Committee shall continue in existence until the latest of: (1) the Effective Date; and (2) the conclusion of any appeals or other challenges or matters with respect to this Order. On the latest of such dates, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Fee Claims. Following the Confirmation Date, in accordance with the foregoing, (x) the attorneys and financial advisors to the Creditors' Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date through and including the dissolution of the Creditors' Committee in connection with the services to the Creditors' Committee and (y) the members of the Creditors' Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities.   The Reorganized Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the members of the Creditors' Committee. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors or the affected member may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such

41415483v4

invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

64. <u>Preservation of Causes of Action.</u> The Reorganized Debtors and the Unsecured Creditors' Trust, as applicable, as described in the Plan Supplement, shall retain all causes of action, other than as expressly provided below. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in the Plan or this Order shall be deemed a release, waiver or relinquishment of any such causes of action. Nothing contained in the Plan or Confirmation Order shall be deemed a release, waiver or relinquishment of any claim, causes of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically released, waived or relinquished by the Plan. The Reorganized Debtors and the Unsecured Creditors' Trust, as applicable, shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically released, waived or relinquished by this Plan may be asserted after the Effective Date by the Reorganized Debtors or the Unsecured Creditors' Trust, as applicable, to the same extent as if the Chapter 11 Cases had not been commenced.

65. <u>Administrative Claims Incurred After the Effective Date.</u> Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim holders.

41415483v4

66.     Failure to Consummate Plan. In accordance with Article XIII.D of the Plan, in the event that the Effective Date does not occur on or before sixty (60) days after the Confirmation Date, or such later date as may be determined in a Court order upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

67.     Revocation, Withdrawal, or Non-Consummation. Subject to the terms of, and without prejudice to the rights of any party under, the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any

37

further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

68. <u>Retention of Jurisdiction.</u> The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom;

(ii) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

(iii) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(iv) to resolve disputes as to the ownership of any Claim or Equity Interest;

(v) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(vi) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(vii) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

(ix) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(x) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, including, without any limitation whatsoever, enforcement of the injunctive relief granted hereinafter prohibiting the transfer, assignment, or encumbrance of any interests of the Debtors and/or the Reorganized Debtors in any Assumed Real Estate Leases

41415483v4

and/or any other assets serving as collateral securing obligations arising under the Secured Trust Note and related transaction documents;

(xi)    to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xii)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiii)    to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xiv)    to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3);

(xv)    to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge;

(xvi)    to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article VIII of the Plan;

(xvii)    to enter a final decree closing the Chapter 11 Cases;

(xviii) to hear and determine all matters, controversies, suits, and disputes that may arise out of or in connection with the Unsecured Creditors' Trust, Unsecured Creditors' Trustee and/or the Unsecured Creditors' Trust Agreement; and

(xix)    hear, determine, and adjudicate any and all (x) Claims, including allowance, classification, priority, compromise, estimation or payment, or (y) Transferred Avoidance Actions brought by the Unsecured Creditors' Trust.

69.    Notwithstanding the foregoing, if the Unsecured Creditors' Trustee on behalf of the Unsecured Creditors' Trust chooses to pursue any claim or Trust Causes of Action of or transferred to the Unsecured Creditors' Trust in another court of competent jurisdiction, the Unsecured Creditors' Trust will have authority to bring such action in any other court of competent jurisdiction which properly has jurisdiction.

70.    Formation of and Provisions Regarding the Unsecured Creditors' Trust. Without any further action of the officers of the Debtors, on the Effective Date, the Unsecured Creditors'

39

41415483v4

Trust Agreement, substantially in the form of Exhibit C to the Plan Supplement, is approved and shall become effective. The Unsecured Creditors' Trustee shall accept the Unsecured Creditors' Trust and sign the Unsecured Creditors' Trust Agreement on the Effective Date and the Unsecured Creditors' Trust will then be deemed created and effective. On the Effective Date the Debtors (or, in the case of the Assigned Non-Debtor Causes of Action, the holders thereof) shall transfer, assign, deliver and distribute to the Unsecured Creditors' Trust all right, title and interest in the (i) Causes of Action, (ii) Assigned Non-Debtor Causes of Action, to the extent assignable and subject to paragraph 44, (iii) the Unsecured Creditors' Trust Cash Component, (iv) the Secured Trust Note, (v) all documents necessary to create and perfect the security interests to be granted to the Unsecured Creditors' Trust on assets of the Reorganized Debtors, as modified by this Order (collectively, the "Trust Assets"). The Excluded Causes of Action shall not be transferred to the Unsecured Creditors' Trust. Subject to the terms of the Plan and the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title and interest of the Debtors in and to the Trust Assets and the Unsecured Creditors' Trust. The Debtors and the Reorganized Debtors shall have no other further rights or obligations with respect thereto, except as set forth in the Plan and any ancillary agreements executed in connection with the Plan. In addition, on the Effective Date, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall be vested with and succeed to all of the applicable Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to General Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable General Unsecured Claim. Notwithstanding the foregoing, the

41415483v4

Reorganized Debtors shall make available to the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtors to enable the Unsecured Creditors' Trustee to perform the Unsecured Creditors' Trustee's tasks under the Unsecured Creditors' Trust Agreement and the Plan, and the Debtors and the Reorganized Debtors shall permit the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access to information related to the Trust Causes of Action and any unliquidated or Disputed General Unsecured Claims that is reasonably requested by the Unsecured Creditors' Trustee, as more specifically set forth in the Unsecured Creditors' Trust Agreement. With respect to the Insured Claims, the Reorganized Debtors shall also make available to the Unsecured Creditors' Trustee reasonable access and cooperation during normal business hours to personnel responsible for administering the Claims, in addition to access to books and records of the Debtors or the Reorganized Debtors, including any incident files or other documents related to the Insured Claims. The Unsecured Creditors' Trustee shall also have the authority (subject to the Debtors' insurance policies) to work directly with the Debtors' insurers, claims adjusters, third party administrators and agents with respect to the reconciliation, allowance, settlement, and/or prosecution of the Insured Claims and the Reorganized Debtors will reasonably cooperate with the Unsecured Creditors' Trustee to assist with such efforts. Notwithstanding anything to the contrary herein, the Reorganized Debtors will not be required to incur any unreasonable out-of-pocket expense in discharging its commitments set forth in this paragraph.

71.     Interests in the Unsecured Creditors' Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law or with consent

of the Unsecured Creditors' Trustee upon such terms as the Unsecured Creditors' Trustee, in its sole and absolute discretion, might require. The terms of the Unsecured Creditors' Trust may be amended by the Unsecured Creditors' Trustee to the extent necessary to ensure that the Unsecured Creditors' Trust will not become subject to the Securities Exchange Act of 1934. For federal income tax purposes, it is intended that the Unsecured Creditors' Trust be classified as a liquidating trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Unsecured Creditors' Trust Claims and then contributed such interests to the Unsecured Creditors' Trust.

72. <u>Approval of Unsecured Creditors' Trustee and Related Matters.</u> Meta Advisors, LLC, the Person designated as Unsecured Creditors' Trustee is disinterested as defined by section 101(14) of the Bankruptcy Code. The appointment of the Unsecured Creditors' Trustee under the Unsecured Creditors' Trust Agreement is hereby approved, and the Unsecured Creditors' Trustee is hereby authorized to carry out all duties as set forth in the Plan, this Order and the Unsecured Creditors' Trust Agreement including, without limitation, the litigation and resolution of Unsecured Creditors' Trust Claims, if any, without further order of this Court.

73. <u>Additional Provisions Relating to the Unsecured Creditors' Trust.</u> The Unsecured Creditors' Trust shall be established for the purposes provided for in the Unsecured Creditors' Trust Agreement and the Plan, which shall include, without limitation, (i) receiving, collecting, holding and liquidating the Trust Assets and distributing the same and proceeds thereof to the benefit of the beneficiaries in accordance with the terms of the Unsecured Creditors' Trust Agreement, Assigned Non-Debtor Causes of Action Agreement, and the Plan, (ii) providing for

41415483v4

the prosecution, collection, compromise and settlement of the Trust Causes of Action and (iii) determining, objecting to and resolving objections to unliquidated and Disputed General Unsecured Claims and Convenience Claims. Such rights, powers and duties granted to the Unsecured Creditors' Trustee shall vest on the Effective Date without the need to obtain further Court approval. The Unsecured Creditors' Trustee, in its discretion and in consultation with the Trust Advisory Board, may settle any Disputed General Unsecured Claim or Convenience Claim without further order of the Court. The Unsecured Creditors' Trustee shall pursue, litigate, compromise or abandon the Trust Causes of Actions with the objective of maximizing the return to holders of Allowed General Unsecured Claims and Convenience Claims, in accordance with the Unsecured Creditors' Trust Agreement, and pay all associated costs. None of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Unsecured Creditors' Trust following the Effective Date, except as provided by the Plan and pursuant to the Secured Trust Note and ancillary agreements. The Unsecured Creditors' Trustee shall distribute the Unsecured Creditors' Trust Proceeds in accordance with the Unsecured Creditors' Trust Agreement and the terms of the Plan.

74. Acceptance and Execution of Plan Supplement Documents. Each and every federal, state and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan and the Plan Supplement Documents (in substantially the forms filed with the Court), including, without limitation, documents and instruments for recording in county and state offices where any Plan Supplement Document may need to be filed in order to effectuate the Plan or this Order.

41415483v4

75.     Cure Amounts. Except to the extent a timely objection has already been filed, each non-Debtor party to an executory contract or unexpired lease to be assumed pursuant to the Plan is deemed to have consented to the assumption of such executory contract or unexpired lease and the cure amount provided in (i) any order providing for the assumption of such executory contract or unexpired lease; (ii) the Schedule of Additional Assumed Contracts and Leases or (iii) as previously disclosed by the Debtors and such parties are barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors prior to the Effective Date of the Plan. In addition, upon the Effective Date of the Plan, the counterparties to such executory contracts or unexpired leases shall be forever enjoined and barred from asserting any additional amount on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors and the Reorganized Debtors and the non-debtor party to such executory contracts or unexpired leases shall enjoy all of the rights and benefits under such assumed executory contracts or unexpired leases without the necessity of obtaining any party's written consent to the Debtors' assumption of such executory contracts or unexpired leases, and such counterparties are deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of such executory contracts or unexpired leases.

76.     The applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized

41415483v4

Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

77. <u>Indemnification Obligations.</u> Indemnification Obligations owed to managers, officers, and employees of the Debtors (or the estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan.

All Indemnification Obligations owed to managers, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated

41415483v4

as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

78. <u>Taxing Authorities.</u> With respect to holders of tax related claims ("<u>Taxing Authorities</u>"), the Plan shall be deemed not to extinguish, waive or otherwise prejudice the respective rights of the Taxing Authorities under section 553 of the Bankruptcy Code in respect of pre-petition indebtedness held by the Taxing Authorities.

79. <u>Payment of Allowed Tax Claims.</u> Allowed Priority Claims to a Taxing Authority will be paid in quarterly Cash installments, over a period of four years ending no later than March 1, 2021. The following Taxing Authorities shall be paid interest at a rate in accordance with Applicable non-bankruptcy law: (i) Mississippi Department of Revenue; (ii) Tyler Independent School District; (iii) The City of El Paso; (iv) Ellis County, Texas; (v) Gregg County, Texas; (vi) Montgomery County, Texas; (vii) Smith County, Texas; and (viii) Texas Comptroller of Public Accounts. Upon the failure of the Debtor to make any payment due on an Allowed Priority Claim to a Taxing Authority that is not cured within fifteen days of the mailing of a written notice of default by a Taxing Authority, such Taxing Authority may exercise all rights and remedies available under nonbankruptcy law for the collection of its entire Allowed Priority Claim and/or seek appropriate relief in this Court. Holders of Allowed Priority Claims shall retain any liens that have arisen or may arise under applicable non-bankruptcy law.

80. <u>Alternative Dispute Procedures.</u> Notwithstanding any other provision of this order or the plan, with respect to claimants subject to the "Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy 9019 (I) Establishing Alternate Dispute Resolution Procedures for Personal Injury Claims and Employment Related Claims and (II) Granting Related Relief" (Docket No. 1377") (the "ADR Order"), those claimants who do not reach a

41415483v4

mediated settlement and those claimants who are permitted to opt-out of the mediation process pursuant to the terms of the ADR Order, may initiate, maintain and prosecute their claims and causes of action to judgment in the appropriate forum other than the Bankruptcy Court without further order of the Bankruptcy Court. Nothing in this Order alters Article VII.I.4 of the Plan and for the avoidance of doubt, to the extent the Debtors had duties under the ADR Order, the Unsecured Creditors' Trustee shall assume such duties including those that were required to be completed prior to the Effective Date.

81. <u>Fair Labor Standards Act (South Carolina) ("FLSA")</u>. To the extent an individual has properly opted-in pursuant to this Court's Amended Order Pursuant to 11 U.S.C. § 362(d) Modifying the Automatic Stay Imposed by 11 U.S.C. § 362(a) (Docket No. 2126) and timely filed consistent with the Court's prior orders a General Unsecured Claim and/or Priority Claim, as the case may be, or has or shall have by the Administrative Claims Bar Date filed an Administrative Claim arising from alleged breach of FLSA relating to labor provided after the Petition Date, counsel of record for the opted-in individuals in this bankruptcy case, counsel for the Debtors and/or Reorganized Debtors, the Unsecured Creditors' Trustee to the extent appointed, counsel for the Unsecured Creditors' Trustee to the extent employed, counsel to the Creditors' Committee if prior to the Effective Date and counsel for the Equity Holders shall confer telephonically regarding procedures for objecting to and resolving FLSA claims within forty-five (45) days from the date of this Order. If the parties are not able to reach an agreement as to the process for handling FLSA claims the parties may file a motion requesting the court establish procedures for handling the FLSA claims. Nothing set forth in this paragraph impacts the confirmation of the Debtor's Plan.

41415483v4

82. <u>Retention and Destruction of Debtors' Records Stored by Larson Records Management.</u> Upon the Effective Date, Larson Records Management f/k/a Larson Business Data Storage ("Larson") is authorized to destroy all records of Debtors and their predecessors maintained by Larson which pre-date July 2015 except those boxes of records which Larson has indexed as HR or Payroll and logged as receiving for storage for the time period July 2012 –July 2015 (specifically with respect to the retained documents, the "Pre Acquisition Remaining Documents"). The Debtors are also authorized to exercise their business judgment in deciding whether to destroy any and all documents sent to Larson for storage on or after August 1, 2015, if duplicate records or information is maintained by the Debtors elsewhere (the "Post Acquisition Documents"). Further, on or before the Effective Date, but no later than April 30, 2017, Debtors shall remit to Larson the sum of $51,500.00 to cover the expense of destroying any and all records of Debtors currently stored with Larson. The Reorganized Debtors shall pay Larson $135.24 per month to store the Pre Acquisition Retained Documents and $254.99 per month to store the Post Acquisition Documents, or such other usual and customary fees for storage or other requested services as may be agreed to by the Reorganized Debtors and Larson. Notwithstanding the above, the Reorganized Debtors are authorized to transport the documents retained by Larson to alternative storage facilities. If the Reorganized Debtors request that Larson destroy either the Pre Acquisition Retained Documents or the Post Acquisition Documents, then no additional charges for destruction will be owed. If the Reorganized Debtors request Larson to retrieve the remaining boxes so that they can be shipped to the Reorganized Debtors or to another storage facility, then no additional charges for destruction will be owed for retrieving the boxes. Any other requests made by the Reorganized Debtors to Larson (i.e. pulling documents for inspection or similar) shall be billed at normal and customary rates then in effect

41415483v4

for Larson's other clientele. This Court retains jurisdiction to adjudicate disputes that may arise regarding payment of Larson's fees by the Reorganized Debtors and the retention, storage or transportation of documents.

83. <u>No Post-Confirmation Amendment or Filing of Claims.</u> Except as otherwise provided herein or in the Plan, any party filing a proof of Claim after the bar date established by the Court shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan, unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, that permits the filing of the Claim.

84. <u>Notices of Entry of Confirmation Order; Occurrence of the Effective Date and Various Deadlines.</u> Promptly after occurrence of the Effective Date, the Debtors shall file with the Bankruptcy Court and serve by first class mail or overnight delivery service, a notice of the entry of this Confirmation Order, occurrence of the Effective Date, the Administrative Claims Bar Date, and the deadline to file Fee Claims (collectively the "Notice of Effective Date"), on each of the following at their respective addresses last known to the Debtors: (i) the Office of the United States Trustee for the Western District of Texas; (ii) all parties on the Master Service List filed with the Bankruptcy Court; (iii) all persons or entities listed in the Debtors' schedules of assets and liabilities, or any amendments thereto, and (iv) any other known holders of Claims against or Equity Interests in the Debtors (collectively, the "Notice Parties") by causing a notice in substantially the form of the notice annexed hereto as **Exhibit D**, which form is hereby approved (the "Effective Date Notice"); *provided, however,* that the Notice of Effective Date

49

41415483v4

shall not be served upon any person or entity to whom the Debtors have mailed other notices during these Chapter 11 Cases that have been returned as undelivered, unless the Debtors have been informed in writing by such person or entity of that person or entity's new address. Such service shall constitute good and sufficient notice pursuant to Bankruptcy Rule 2002 and 3020 of the confirmation of the Plan, the entry of this Confirmation Order and occurrence of the Effective Date.

85. References to Plan Provisions. The failure specifically to include or reference any particular provision of the Plan in this Order shall not affect, diminish or impair the effectiveness of such provision, it being the intent of the Court that entry of this Order constitutes approval of the Plan in its entirety, except as modified by this Order.

86. Confirmation Order Controlling. If there is any direct conflict between the Plan and this Order, the terms of this Order shall control.

87. Separate Order. This Order is and shall be deemed a separate Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Case for all purposes. The Clerk of the Court is directed to file and docket this Order in the Chapter 11 Case of each of the Debtors.

88. Vacatur of Confirmation Order. If this Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

41415483v4

89.     Applicable Non-Bankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, and the Plan Supplement Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

90.     Except as permitted by the Secured Trust Note and related security agreement and other transaction documents or pursuant to subsequent written agreement signed by the Unsecured Creditors' Trustee, the Debtors and the Reorganized Debtors shall not assign, transfer, or otherwise encumber, and the Debtors, the Reorganized Debtors, and their principals, stakeholders, affiliates, directors, managers, officers, employees, and agents are hereby ENJOINED and PROHIBITED from transferring, assigning, or otherwise encumbering, or bringing about any transfer, assignment, or encumbrance of, (a) any assets constituting collateral securing obligations under the Secured Trust Note, (b) (without limiting the foregoing) any interest of the Debtors and/or the Reorganized Debtors in any Assumed Real Estate Leases or real estate leases subsequently entered into by the Reorganized Debtors (collectively the "Leases"), and (c) (without limiting the foregoing) any fixtures attached to real property that is the subject of the Leases, unless and until all obligations of the Debtors and the Reorganized Debtors under the Secured Trust Note and related Transaction Documents (as defined in the Secured Trust Note) are satisfied in full.

91.     Pursuant to the Plan, the Secured Trust Note, and the Security Agreement, the Unsecured Creditors' Trust shall have a first in priority lien on the Debtors' and Reorganized Debtors' interests in all proceeds arising from or relating to the assignment, sale or other disposition of the Leases in order to secure performance of obligations to the Unsecured Creditors' Trust including, without limitation, (a) all principal, interest, fees and charges, and any attorneys' fees arising in connection with the Secured Trust Note, both principal and interest

41415483v4

being payable as therein provided and being finally due and payable on the Maturity Date (as defined in the Secured Trust Note), (b) all obligations, indebtedness and liabilities now or hereafter incurred or arising pursuant to the provisions of the Security Agreement; and (c) all obligations and liabilities owed to the Unsecured Creditors' Trust now or hereafter incurred or arising pursuant to the Plan.

92.     In the event of any future disposition of the rights or interests of the Debtors or the Reorganized Debtors in any of the Leases (or any of the Debtors' or Reorganized Debtors' fixtures at the subject real estate), except as permitted by the Secured Trust Note and related security agreement and other transaction documents or pursuant to subsequent written agreement signed by the Unsecured Creditors' Trustee, the Unsecured Creditors' Trust's security interest shall extend and attach to Debtors' and Reorganized Debtors' interests in the proceeds thereof.

93.     With respect to each Lease, and to the extent the same is permitted by the terms of such Lease, or, in the alternative, with the written consent of the landlord, the Unsecured Creditors' Trustee may cause to be recorded in the real property records and other appropriate records of jurisdictions in which is located the real property that is the subject of each Lease appropriate documentation to perfect the security interests of the Unsecured Creditors' Trust. For avoidance of doubt, any Lease which does not permit, or which only permits with a landlord's consent, the recordation of the Lease shall be considered to prohibit recordation of this Order and prohibit recordation of any property-specific documentation in real estate records with respect to the security interest of the Unsecured Creditors' Trust, other than as provided in Paragraph 94, below.

94.     Debtors shall execute, as appropriate, UCC-1 Financing Statements and other such documents in jurisdictions where Debtors and Reorganized Debtors do business, as may be

reasonably requested by the Unsecured Creditors' Trust (or its counsel), and the Unsecured Creditors' Trust may file the UCC-1 Financing Statement and other such documents to perfect the security interest in the proceeds of the prospective disposition of Debtors' and Reorganized Debtors' interests in the Leases, as granted herein. To the extent the Unsecured Creditors' Trust files any such UCC-1 Financing Statements or other such documents in real estate records at the county or other local level, any such documents shall specifically identify the Lease in which such security interest is granted and expressly provide that any security interest is limited to the Debtors' and Reorganized Debtors' interests in the proceeds of the prospective disposition of the particular lease, and not the leasehold interest itself.

95.     Nothing in this Order, the Plan, Plan Supplement (as may be amended) or the Plan Supplement Documents shall be construed to alter or interfere with any rights of the landlords under the Leases or permit any violation of the Leases.

96.     The terms of the Stipulation by and between Debtors and ARC DBPPROP001, LLC and Cole BU Portfolio II, LLC (Docket No. 2543) is hereby incorporated by reference in this Order.

41415483v4

**Exhibit A**

Debtors' Second Amended Joint Plan of Reorganization
Under Chapter 11 of the Bankruptcy Code

41415483v4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[1] | § | Case No. 16–50557-rbk |
| | § | |
| Debtors. | § | (Jointly Administered) |

## DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

AKERMAN LLP

/s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

and

Andrea S. Hartley (Florida Bar No. 864234)
Esther A. McKean (Florida Bar No. 28124)
Amy M. Leitch (Florida Bar No. 90112)
Katherine Fackler (Florida Bar No. 68549)
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
andrea.hartley@akerman.com
esther.mckean@akerman.com
amy.leitch@akerman.com
katherine.fackler@akerman.com

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

Dated: April 4, 2017

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

I. DEFINITIONS AND CONSTRUCTION OF TERMS ............................................................. 2
    A.    Definitions ........................................................................................................ 2
    B.    Interpretation, Application of Definitions and Rules of Construction ................. 16

II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............................................ 16
    A.    Introduction .................................................................................................... 16

III. TREATMENT OF UNCLASSIFIED CLAIMS ..................................................................... 17
    A.    Administrative Claims ..................................................................................... 17
    B.    Fee Claims ....................................................................................................... 18
    C.    Substantial Contribution Claim of Value Extraction Services ......................... 18

IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS .................................................. 18
    A.    Class 1 – Priority Claims .................................................................................. 18
    B.    Class 2 – Other Secured Claims ...................................................................... 19
    C.    Class 3 – Allowed PACA Claims ..................................................................... 20
    D.    Class 4 – General Unsecured Claims ............................................................... 20
    E.    Class 5 – Convenience Claims ......................................................................... 20
    F.    Class 6 – Subordinated Claims ........................................................................ 21
    G.    Class 7 – Equity Interests ................................................................................ 22

V. PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE
    REORGANIZED DEBTORS ...................................................................................... 22
    A.    Amendments to Certificates of Incorporation ................................................. 22
    B.    Management ..................................................................................................... 22
    C.    Corporate Action ............................................................................................. 23

VI. SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ................................................. 23

VII. PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING,
    DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS ........................... 25
    A.    Funding the Unsecured Creditors' Trust ......................................................... 25
    B.    Payment of Claims .......................................................................................... 25
    C.    Restructuring Transactions .............................................................................. 25
    D.    Unsecured Creditors' Trust ............................................................................. 25
    E.    The Trust Advisory Board ............................................................................... 28
    F.    Voting of Claims ............................................................................................. 29
    G.    Distributions ................................................................................................... 29
    H.    Estimation ...................................................................................................... 34
    I.    Nonconsensual Confirmation .......................................................................... 35
    J.    Intercompany Claims ...................................................................................... 35
    K.    Liens ............................................................................................................... 35

i

40967845v2

L.   Enforcement of Subordination ................................................................. 35

VIII. EFFECT OF CONFIRMATION OF THE PLAN ........................................ 36
A.   Continued Corporate Existence ............................................................. 36
B.   Settlement of Treatment of General Unsecured Claims ........................ 36
C.   Dissolution of Creditors' Committee ..................................................... 36
D.   Vesting of Property ................................................................................. 37
E.   Discharge of the Debtors ....................................................................... 37
F.   Injunction ............................................................................................... 37
G.   Preservation of Causes of Action .......................................................... 38
H.   Votes Solicited in Good Faith ................................................................ 38
I.   Administrative Claims Incurred After the Effective Date ..................... 38
J.   Insider Releases by the Debtors ............................................................. 38
K.   Insider Releases by non-Debtors ........................................................... 39
L.   Releases of Creditors' Committee, Committee Members and Committee
     Professionals .......................................................................................... 40
M.   Exculpation and Injunction in Respect of Released Parties .................. 41
N.   Term of Bankruptcy Injunction or Stays .............................................. 41
O.   Preservation of Insurance ...................................................................... 41
P.   Indemnification Obligations Owed by the Debtors .............................. 42

IX. RETENTION OF JURISDICTION ............................................................. 42

X. MISCELLANEOUS PROVISIONS .............................................................. 43
A.   Payment of Statutory Fees ..................................................................... 43
B.   Modification of the Plan ........................................................................ 43
C.   Governing Law ....................................................................................... 43
D.   Filing or Execution of Additional Documents ...................................... 44
E.   Withholding and Reporting Requirements ............................................ 44
F.   Exemption From Transfer Taxes ........................................................... 44
G.   Waiver of Federal Rule of Civil Procedure 62(a) ................................. 44
H.   Exhibits/Schedules ................................................................................. 44
I.   Notices .................................................................................................... 44
J.   Plan Supplement ..................................................................................... 45
K.   Conflict ................................................................................................... 45

XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................... 46
A.   Assumption and Rejection of Executory Contracts and Unexpired Leases ......... 46
B.   Limited Extension of Time to Assume or Reject ................................... 47
C.   Cure ........................................................................................................ 47
D.   Rejection Damage Claims ...................................................................... 47

XII. BENEFIT PLANS ....................................................................................... 48

XIII. EFFECTIVENESS OF THE PLAN ........................................................... 49
A.   Conditions Precedent to Confirmation .................................................. 49
B.   Conditions Precedent to Effectiveness .................................................. 49

ii

C.      Waiver of Conditions ........................................................................................ 50
D.      Effect of Failure of Conditions ....................................................................... 50
E.      Vacatur of Confirmation Order ....................................................................... 50
F.      Revocation, Withdrawal, or Non-Consummation ........................................... 50

40967845v2

## INTRODUCTION

Buffets, LLC, Hometown Buffet, Inc., OCB Restaurant Company, LLC, OCB Purchasing, Co., Ryan's Restaurant Group, LLC, Fire Mountain Restaurants, LLC, and Tahoe Joe's, Inc., the above-captioned debtors and debtors in possession, propose the following joint plan of reorganization under section 1121(a) of the Bankruptcy Code.[1]

The Debtors' Chapter 11 Cases are being jointly administered pursuant to an order of the Court, and the Plan is being presented as a joint plan of reorganization of the Debtors. Claims against, and Interests in, the Debtors (other than Administrative Claims) are classified in Article II hereof and treated in Article IV hereof.

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, properties, results of operations, and projections for future operations and risk factors, together with a summary and analysis of this Plan. All Claim holders entitled to vote on this Plan are encouraged to consult the Disclosure Statement and to read this Plan carefully before voting to accept or reject this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE COURT, HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

---

[1] Capitalized terms used in this Introduction shall have the meanings ascribed to them herein below.

1

# I.

## DEFINITIONS AND CONSTRUCTION OF TERMS

### A. <u>Definitions</u>

Unless otherwise defined herein, or the context otherwise requires, the following terms shall have the respective meanings set forth below:

*ACE Companies*      means ACE American Insurance Company and its affiliates or successors.

*ACE Companies' Claim*      means the Claim(s) of the ACE Companies arising from the Debtors' obligations under the ACE Insurance Program whether such claims/obligations arise or become liquidated before or after the Effective Date

*ACE Collateral*      means any and all collateral, security, funds, and/or other assets provided by or on behalf of the Debtors (or any of their predecessors) to the ACE Companies to secure the Debtors' obligations under the ACE Insurance Program and all proceeds thereof including, but not limited to, any credits and any letter(s) of credit and the proceeds thereof.

*ACE Insurance Program*      means all insurance policies that have been issued at any time by the ACE Companies to provide coverage to any of the Debtors and all agreements, documents or instruments related thereto.

*Acquisition Debt*      means obligations arising under promissory notes and related loan documents executed in favor of the Pre-Petition Secured Creditors' in the approximate principal, aggregate amount of $46,168,000, of which the Debtors are obligors or guarantors and/or for which the Debtors, or any of them, pledged assets as collateral to secure the loans.

| | |
|---|---|
| *Administrative Claim* | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code, and any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code. |
| *Administrative Claims Bar Date* | means the first business day that is thirty (30) days after the Confirmation Date. |
| *Alamo Buffets Advance* | means a Cash advance in an amount of not less than $6.5 million to be provided to the Debtors by Alamo Buffets, LLC, on or before the Effective Date, in order to fund the Debtors' payment of the Unsecured Creditors' Trust Cash Component pursuant to Article VII.A(i) and to the extent necessary, Claims to be paid on the Effective Date. |
| *Alamo Buffets Advance Agreement* | means an agreement or agreements pursuant to which the Alamo Buffets Advance shall be made. |
| *Alamo CRG Secured Claim* | means the Claim of Alamo CRG LLC related to that certain promissory note issued by the Debtors and certain affiliated non-debtors dated December 31, 2015 in the original principal amount of $2 million. |

3

*Allowed*

means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not Disputed by the Claims Objection Deadline, (d) any Claim the amount or existence of which, if Disputed, (i) has been determined by a Final Order of a court of competent jurisdiction, or (ii) has been allowed by Final Order of the Court, or (e) any Claim which the Reorganized Debtors or the Unsecured Creditors' Trustee deems allowed, depending upon the party responsible for distribution under the Plan; provided, however, if the time to object to Claims has not expired, a Claim shall not be deemed allowed unless designated as such by the Reorganized Debtors or the Unsecured Creditors' Trustee, depending upon the party responsible for distribution under the Plan; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

*Assigned Causes of Action Agreement*

means the agreement pursuant to which rights with respect to the Assigned Non-Debtor Causes of Action and/or to receive proceeds thereof are to be assigned to the Unsecured Creditors' Trust. Such agreement shall be in a form acceptable to the Debtors, and the Creditors' Committee and shall be included in the Plan Supplement.

4

| | |
|---|---|
| *Assigned Non-Debtor Causes of Action* | means rights, claims or causes of action of Alamo Ovation, LLC, Buffets Restaurants Holdings, Inc., and Buffets Holdings, LLC, (collectively, the "Non-Debtor Parent Companies"), and/or affiliated Persons against parties including, without limitation, the former equity holders of the Non-Debtor Parent Companies and/or former officers and directors of such entities, as to which rights of recovery or proceeds thereof (including, without limitation, any rights under any insurance policies) are to be assigned to the Unsecured Creditors' Trust pursuant to the Assigned Causes of Action Agreement, as well as any rights of the Non-Debtor Parent Companies under or with respect to any insurance policy issued by the ACE Companies prior to the Petition Date for workers' compensation, automobile liability, or general liability coverage to any of the Debtors or the Non-Debtor Parent Companies, including, without limitation, with respect to any excess collateral or other amounts held by or for the benefit of the ACE Companies; provided, however, that, with respect to any claims asserted against Alamo Ovation, LLC or any claims asserted against guarantors of Alamo Ovation, LLC with respect to the obligations of Alamo Ovation, LLC under the Merger Agreement, by the former equity holders and/or pre-merger officers and directors of the other Non-Debtor Parent Companies which arise under the Agreement and Plan of Merger dated July 20, 2015 (pursuant to which Alamo Ovation, LLC acquired directly or indirectly the other Non-Debtor Parent Companies and Debtors (the "Merger Agreement")), Alamo Ovation, LLC, as well as its owners and the guarantors of the consideration under the merger, reserve and retain the right to assert as a set off or defense any "Direct Claims" or "Third Party Claims" of Alamo Ovation, LLC that arise under the Merger Agreement or which could be asserted by Alamo Ovation, LLC against the "Escrow Fund" (as such terms are defined under the Merger Agreement). |
| *Automobile Liability Claims* | means any claim arising from an automobile accident for which the Debtors had insurance. |
| *Avoidance Actions* | means those certain claims or causes of action of the Estates arising out of or maintainable pursuant to sections 510, 542, 543, 544, 545, 547, 548, 550, or 551 of the Bankruptcy Code or under any other similar applicable law, regardless of whether or not such action has been commenced prior to the Effective Date. A non-exhaustive list of potential Avoidance Actions shall be included in the Plan Supplement. |
| *Ballots* | means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan. |

| | |
|---|---|
| *Bankruptcy Code* | means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the date hereof. |
| *Bankruptcy Rules* | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require. |
| *Buffets* | means Buffets, LLC. |
| *Business Day* | means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a). |
| *Cash* | means legal tender of the United States of America. |
| *Causes of Action* | means all claims (including, without limitation, any right to recover excess proceeds, if any, of ACE Collateral) choses in action and causes of action, suits, debts, sums of money, damages, demands, judgments and Avoidance Actions, whether known or unknown, owned by the Debtors as of the Effective Date (including causes of action which can be asserted derivatively), as well as any Cash and non-Cash proceeds thereof, whether arising under the Bankruptcy Code or other federal, state or foreign law, equity or otherwise, other than the Excluded Causes of Action or any claims or causes of action released pursuant to the terms of this Plan. |
| *Chapter 11 Cases* | means the chapter 11 cases commenced by the Debtors. |
| *Claim* | means any claim, as such term is defined in section 101(5) of the Bankruptcy Code. |
| *Claims Agent* | means Donlin, Recano & Company, Inc. or any successor thereto. |
| *Claims Objection Deadline* | means the first business day that is one hundred eighty (180) days after the Effective Date, or such other later date the Court may establish upon a motion by the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable, which motion may be filed before or after such deadline and may be approved without a hearing and without notice to any party. |
| *Class* | means a group of Claims or Equity Interests as classified under the Plan. |

| | |
|---|---|
| *Collateral* | means any property or interest in property of the Debtors' estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law. |
| *Collateral Assignment of Real Property Leases* | means a collateral assignment of leases, substantially in the form to be included in the Plan Supplement, to be executed by the Reorganized Debtors in favor of the Unsecured Creditors' Trust with respect to one or more Real Property Leases. |
| *Confirmation Date* | means the date on which the Confirmation Order is entered by the Court. |
| *Confirmation Hearing* | means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time. |
| *Confirmation Order* | means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code. |
| *Convenience Claim* | means any Claim in an amount no greater than $7,500, or any Claim which has been voluntarily reduced to $7,500 by the holder thereof pursuant to an election made on such holder's Ballot or any other agreement in writing. |
| *Court* | means, (a) the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States Bankruptcy Court for the Western District of Texas, San Antonio Division; and (c) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein. |
| *Creditors' Committee* | means the Official Committee of Unsecured Creditors' appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time. |
| *Cure Claim* | means all Claims arising under or relating to the assumption or assumption and assignment of any executory contract or unexpired lease by any of the Defendants. |
| *Debtors* | means Buffets, LLC, Hometown Buffet, Inc., OCB Restaurant Company, LLC, OCB Purchasing, Co., Ryan's Restaurant Group, LLC, Fire Mountain Restaurants, LLC, and Tahoe Joe's, Inc. |

| | |
|---|---|
| *Debtors in Possession* | means the Debtors in their capacity as debtors in possession in the chapter 11 Cases pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. |
| *Default* | means any event of default under the Secured Trust Note existing after the expiration of any applicable cure or notice period. |
| *DIP Credit Facility* | means that certain secured, super-priority Note and Security Agreement, as amended from time to time, executed by, between, and among the Debtors and Alamo CRG, LLC. |
| *DIP Financing Claims* | means all Claims arising under or relating to the DIP Credit Facility, the interim orders approving the DIP Credit Facility, and the Final DIP Order and all agreements and instruments relating thereto, including, without limitation, Claims for the fees, reasonable and documented expenses, costs and other charges of the lender under the DIP Credit Facility (including those of counsel and advisors) to the extent provided in the DIP Credit Facility. |
| *DIP Lender* | means Alamo CRG, LLC, in its capacity as DIP Lender. |
| *Disclosure Statement* | means the written disclosure statement that relates to this Plan, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time (including all schedules and exhibits thereto). |
| *Disputed* | means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) for which a proof of claim was required, but as to which a proof of claim was not timely or properly filed; or (b) any Claim as to which the Debtors or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim. |
| *Distributions* | means the distribution in accordance with this Plan of (a) Cash, (b) new membership interests, or (c) other form of consideration, as the case may be. |
| *Effective Date* | means the first Business Day on which all of the conditions specified in Article XIII.B of the Plan have been satisfied or waived in accordance with Article XIII.C of the Plan; provided, however, that if a stay of the Confirmation Order is in effect on such date, the Effective Date will be the first Business Day after such stay is no longer in effect. |

8

| | |
|---|---|
| *Employee Claims* | means any Claim by any current or former employee of the Debtors. |
| *Equity Interest or Interest* | means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest. |
| *Estates* | means the estates of the Debtors, individually or collectively, as is appropriate in the context created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code. |
| *Excluded Administrative Claims* | has the meaning assigned to such term in Article III.A.1. of the Plan. |
| *Excluded Causes of Action* | means causes of action against those certain vendors identified by Debtors to be critical to their operations or who were granted critical vendor status by the Debtors during these Chapter 11 Cases. A list of all critical vendors referenced herein will be included in the Plan Supplement. In any event, the Unsecured Creditors' Trust shall retain the right to assert any Excluded Causes of Action as defenses to, or off sets against, any Claims against or rights to receive distributions from the Unsecured Creditors' Trust. |
| *Excluded Insider Causes of Action* | means causes of action against (a) any of the Debtors' current respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, each solely in their capacities as such, or (b) FMP, the DIP Lender, Pre-Petition Secured Creditors' and all of their current officers, directors, principals, members, employees, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and any other professionals of FMP, the DIP Lender and Pre-Petition Secured Creditors', each solely in their capacities as such. For avoidance of doubt, a specific, exhaustive list of all Persons that are potential defendants to any Excluded Insider Causes of Action will be included in the Plan Supplement, and only causes of action against Persons specifically and individually named therein shall be included in the Excluded Insider Causes of Action. In any event, the Unsecured Creditors' Trust shall retain the right to assert any Excluded Insider Causes of Action as defenses to, or off sets against, any Claims against or rights to receive distributions from the Unsecured Creditors' Trust. |

| | |
|---|---|
| *Fee Claims* | means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including reasonable expenses of the members of the Creditors' Committee incurred as members of the Creditors' Committee in discharge of their duties as such. |
| *Fee Claims Escrow* | has the meaning assigned to such term in Article III.B. of the Plan |
| *Final Order* | means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such Court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending. |
| *Fire Mountain* | means Fire Mountain Restaurants, LLC. |
| *FMP* | means FMP SA Management Group, LLC. |
| *FMP Cure Claim* | means FMP's Cure Claim in connection with the assumption by the Debtors of FMP's Management Agreement. The FMP Cure Claim is approximately $12 million. |
| *FMP Management Agreement* | means the Management Agreement between FMP and Buffets, LLC dated August 19, 2015. |
| *General Unsecured Claim* | means a Claim against any of the Debtors that is not otherwise classified or dealt with in the Plan. |
| *Governmental Unit* | has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code. |
| *HomeTown* | means HomeTown Buffet, Inc. |
| *Impaired* | means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code. |
| *Indemnification Obligation* | means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution pursuant to charter, by-laws, contract, or otherwise; provided, however, that such term shall not include any obligation that constitutes a Subordinated Claim or other subordinated obligation. |

| *Initial Distribution Date* | means the date of the first distribution by the Unsecured Creditors' Trustee, Debtors or the Reorganized Debtors as applicable, to a particular class of Creditors'. |
|---|---|
| *Insider* | has the meaning set forth in section 101(31) of the Bankruptcy Code. |
| *Insured Claim* | means any Claim or portion of a Claim, other than Workers' Compensation Claims and Automobile Liability Claims, that is insured under the Debtors' insurance policies, but only to the extent of such coverage. |
| *Intercompany Claims* | means any Claim held by one of the Debtors against any other Debtor, including, without limitation, (a) any account reflecting intercompany book entries by such Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor, and (c) any derivative Claim asserted or which can be asserted by or on behalf of such Debtor against any other Debtor. |
| *Lien* | has the meaning set forth in section 101(37) of the Bankruptcy Code. |
| *OCB Purchasing* | means OCB Purchasing, Co. |
| *OCB Restaurant* | means OCB Restaurant Company, LLC. |
| *Ordinary Course Administrative Claims* | means (1) Administrative Claims against the Debtors that represent liabilities (a) to sellers of goods or services on account of such seller's provision of goods and/or services and (b) that were incurred in the ordinary course of business by the Debtors; or (2) Claims against the Debtors that represent liabilities to taxing authorities that would be properly classified as Administrative Claims. |
| *Other Priority Claim* | means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code (other than Administrative Claims, Property Tax Claims and Priority Tax Claims), including, without limitation, certain allowed employee compensation and benefit claims of the Debtors' employees incurred within one hundred eighty (180) days prior to the Petition Date. |
| *Other Secured Claims* | means any Claim (excluding the Subordinated Claims and the ACE Companies' Claim) to the extent reflected in the Schedules or a proof of claim filed as a Secured Claim, which is secured by a Lien on Collateral) to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff. |

11

| | |
|---|---|
| *PACA Claims* | means all Claims arising under the Perishable Agricultural Commodities Act. |
| *Person* | means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, or any other entity. |
| *Petition Date* | means March 7, 2016. |
| *Plan* | means this Plan, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any. |
| *Plan Interest Rate* | means simple interest at the rate of 3% per annum. |
| *Plan Supplement* | means the supplemental appendix to this Plan, to be filed no later than fourteen (14) calendar days prior to the commencement of the Confirmation Hearing, which will contain, among other things, draft forms or signed copies, as the case may be, of the Plan Supplement Documents. |
| *Plan Supplement Documents* | means the documents to be included in the Plan Supplement, including the forms of documents to be executed, delivered, and/or performed in connection with the consummation of this Plan. |
| *Pre-Petition Secured Credit Claim* | means all Claims relating or arising under the Acquisition Debt. |
| *Pre-Petition Secured Creditors'* | means Alamo CRG, LLC, FMP SA Management Group, LLC, All Jones LLC, BPTX Holdings, LLC, Larrac Inv., LLC Series L, and Dayspring Operating Company, LLC, in their capacity as holders of Pre-Petition Secured Credit Claims. |
| *Priority Claim* | means any unsecured Claim that is entitled to a priority in right of payment under section 507 of the Bankruptcy Code, including claims entitled to priority right of payment under section 507(a)(8), Property Tax Claims and Other Priority Claims. |
| *Professional* | means (i) any professional employed in the Chapter 11 Cases pursuant to section 327, 328 or 1103 of the Bankruptcy Code and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code. |

12

| | |
|---|---|
| *Property Tax Claim* | All property tax claims on real or personal property, owned by the Debtors or, with respect to leased real property, is not attributable to a lease that has been rejected and is attributable to a lease which permits, in general, payment of property taxes over the statutory time provided in the Bankruptcy Code for payment of a property tax claims. |
| *Pro Rata* | means, with respect to any Claim, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims (including Disputed Claims) in such Class, unless in each case the Plan provides otherwise. |
| *Real Property Lease* | means, individually, any unexpired lease of nonresidential real property identified on the Schedule of Additional Assumed Contracts and Leases in the Plan Supplement. |
| *Record Date* | means, (a) for purposes of making distributions under the Plan on account of Allowed Claims, the Confirmation Date, and (b) for purposes of casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan. |
| *Release Effective Date* | means the date that is the earlier of (i) the date that is one year following the Effective Date, or (ii) the date on which the Secured Trust Note is paid in full, in each case, so long as there has been no intervening Default (as defined above) as a result of any failure to make any payment as and when due, the filing of any bankruptcy petition, or insolvency of any of the Reorganized Debtors. For the avoidance of doubt, in the event of the occurrence of one or more such Defaults (as defined above), the releases set forth in Article VIII, Sections J and K of the Plan shall not be granted and the Unsecured Creditor Trustee may pursue the Excluded Insider Causes of Action. |
| *Released Parties* | has the meaning assigned to such term in Article VIII of the Plan. |
| *Reorganized Debtors* | means the Debtors, or any successors thereto by merger, consolidation, or otherwise, on and after the Effective Date. |
| *Reorganized Subsidiaries* | means the Subsidiaries, collectively, on or after the Effective Date. |
| *Ryan's Restaurant Group* | means Ryan's Restaurant Group, LLC |
| *Scheduled* | means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Schedules. |

| | |
|---|---|
| *Schedules* | means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests filed with the Court by each of the Debtors, including any amendments or supplements thereto. |
| *Schedule of Additional Assumed Leases* | means that certain schedule to be included in the Plan Supplement that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be assumed pursuant to the Plan. |
| *Schedule of Additional Rejected Contracts and Leases* | means that certain schedule to be included in the Plan Supplement that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be rejected pursuant to the Plan. |
| *Secured Claim* | means a Claim to the extent that it is secured, as provided by section 506 of the Bankruptcy Code. |
| *Secured Trust Note* | means the promissory note and related loan documents, substantially in the form to be included in the Plan Supplement, to be executed and paid by the Reorganized Debtors in favor of the Unsecured Creditors' Trust in the amount of $5.25 million payable in quarterly payments over two years with interest on the outstanding balance at the rate of 5.5%. All obligations arising under the Secured Trust Note shall be secured by a perfected first-in-priority security interest on all assets of the Reorganized Debtors, including, without limitation, collateral assignments of all real estate leases under which the Debtors or Reorganized Debtors, or any of them, are or become tenants. The Secured Trust Note and related loan documents shall be prepared and negotiated by the Creditors' Committee and in a form acceptable to the Creditors' Committee and Debtors. |
| *Subsidiaries* | means Hometown, OCB Purchasing, OCB Restaurant, Ryan's Restaurant Group, Fire Mountain, and Tahoe Joe's, which are direct and indirect subsidiaries of Buffets. |
| *Subordination Agreement* | means the Inter-creditor and Subordination Agreement, to be entered into between the Unsecured Creditors' Trust and all holders of the Subordinated Claims, in a form acceptable to the Debtors and the Creditors' Committee. |
| *Subordinated Claims* | means the (i) DIP Financing Claim, (ii) the FMP Cure Claim, (iii) the Alamo CRG Secured Claim, (iv) the Pre-Petition Secured Credit Claims, (iv) any other Claims of the Pre-Petition Secured Creditors' and their principals and affiliates, (v) any other Claims of FMP, Alamo CRG, Alamo Ovation, LLC, non-debtor parent companies of the Debtors, and the respective principals and affiliates of any of the foregoing, (vi) Intercompany Claims, and (vii) any obligations relating to the Alamo Buffets Advance. |

14

| | |
|---|---|
| *Tahoe Joe's* | means Tahoe Joe's, Inc. |
| *Trust Advisory Board* | means the board that is to be created pursuant to Article VIII of this Plan for the purpose of advising the Unsecured Creditors' Trustee with respect to decisions affecting the Unsecured Creditors' Trust. |
| *Trust Assets* | means shall have the meaning assigned to such term in Article VII.D.2. of the Plan. |
| *Trust Causes of Action* | means the Causes of Action (including the Excluded Insider Causes of Action, but excluding the Excluded Causes of Action), together with rights assigned, transferred granted to the Unsecured Creditors' Trust pursuant to the Assigned Causes of Action Agreement. |
| *Unsecured Creditors' Trust* | means the trust to be created on the Effective Date pursuant to the Unsecured Creditors' Trust Agreement. |
| *Unsecured Creditors' Trust Agreement* | means the trust agreement to be entered into pursuant to Article VII.D, substantially in the form to be included in the Plan Supplement. Such agreement shall be prepared by the Creditors' Committee, and be in a form acceptable to the Debtors and the Creditors' Committee. |
| *Unsecured Creditors' Trust Cash Component* | means the $6.5 million in Cash to be transferred by the Debtors or Reorganized Debtors to the Unsecured Creditors' Trust on the Effective Date, which is to be funded with the proceeds of the Alamo Buffets Advance. |
| *Unsecured Creditors' Trust Interests* | means the beneficial interests in the Unsecured Creditors' Trust granted to holders of Allowed General Unsecured Claims, which interests shall entitle the holders, in the aggregate, to the Unsecured Creditors' Trust Proceeds. |
| *Unsecured Creditors' Trust Proceeds* | means, net of the expenses of the Unsecured Creditors' Trust, including, without limitation, fees of the Unsecured Creditors' Trustee and its professionals, (i) the Unsecured Creditors' Trust Cash Component, (ii) the net proceeds of the Trust Causes of Action after payment of costs incident to the litigation and (iii) the proceeds of the Secured Trust Note together with any interest or earnings thereon. |
| *Unsecured Creditors' Trustee* | means the Person designated in accordance with the Plan and the Unsecured Creditors' Trust Agreement. The identity of the Unsecured Creditors' Trustee shall be disclosed in the Plan Supplement. |
| *Workers' Compensation Claim* | means a Claim held by a current or former employee of the Debtors that is covered by workers' compensation insurance. |

15

### B. Interpretation, Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in the Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. Any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. The rules of construction set forth in section 102 of the Bankruptcy Code (except for section 102(5)) shall apply to this Plan. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A. Introduction

All Claims and Equity Interests, except Administrative Claims, and Fee Claims are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Fee Claims, as described below, have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

1. **Unclassified Claims (not entitled to vote on the Plan)**

(a) Administrative Claims.

(b) Fee Claims.

2. **Classes of Claims**

(a) <u>Class 1:</u> Priority Claims.

(b) <u>Class 2:</u> Other Secured Claims.

(c) <u>Class 3:</u> Allowed PACA Claims.

(d) <u>Class 4:</u> General Unsecured Claims.

(e) <u>Class 5:</u> Convenience Claims.

(f) <u>Class 6:</u> Subordinated Claims.

(g) <u>Class 7:</u> ACE Companies' Claim.

(h) <u>Class 8:</u> Equity Interests in Buffets.

## III.

## TREATMENT OF UNCLASSIFIED CLAIMS

A. **Administrative Claims**

Unless otherwise provided herein, each holder of an Allowed Administrative Claim shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing; <u>provided, however,</u> that Allowed Ordinary Course Administrative Claims shall be paid in full in the ordinary course of business of the Reorganized Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

1. **Bar Dates for Administrative Claims**

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing applications for allowance of Administrative Claims (except for (i) Fee Claims, including Claims for expenses by members of the Creditors' Committee related to the performance of their duties on the Creditors' Committee, and (ii) Ordinary Course Administrative Claims (collectively (i) - (ii) shall hereinafter be referred to as the "Excluded Administrative Claims"), which date will be the first business day that is thirty (30) days after the Confirmation Date. Holders of Administrative Claims, except Excluded Administrative Claims, not paid prior to the Confirmation Date shall submit requests for payment on or before the applicable Administrative Claims Bar Date or forever be barred from doing so. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative

Claims Bar Date. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

### B. Fee Claims

All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors' Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days after the Effective Date. The Allowed Fee Claims are to be paid in full in Cash within three (3) business days of the Final Order allowing such Claims.

On or before the Effective Date, the Debtors shall place in escrow with Debtors' counsel both funds sufficient to pay all allowed but unpaid Fee Claims, as well as reasonably estimated amounts necessary to pay known and/or anticipated Fee Claims which have not yet been Allowed (the "Fee Claims Escrow"), except to the extent that the holder of such a Fee Claim executes and written waiver of such escrow requirement.

### C. Substantial Contribution Claim of Value Extraction Services

Value Extraction Services, LLC ("VES") shall have an Allowed Administrative Claim for substantial contribution in the amount of $25,000 to reimburse VES and its client Mistral Equity Partners for time and expenses incurred in making a substantial contribution, as contemplated in Section 503(b)(3)(D) of the Bankruptcy Code, in the Debtors' cases. The VES substantial contribution claim shall be paid from the Trust Assets following funding to the Unsecured Creditors' Trust of the Unsecured Creditors' Trust Cash Component.

## IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. Class 1 – Priority Claims

#### 1. Distributions

Except to the extent that a holder of an Allowed Priority Claim shall have agreed in writing to a different treatment, the holder of an Allowed Priority Claim will be paid in quarterly Cash installments, commencing on the first day of the first month following the Effective Date, over a period of five years, with interest at the Plan Interest Rate, except that if a holder of an

Allowed Priority Claim that is also a Claim for taxes notifies the Debtor before the Confirmation Date that applicable non-bankruptcy law entitles it to a rate of interest higher than the Plan Interest Rate then such holder shall be paid interest at a rate in accordance with applicable non-bankruptcy law. A list of such holders shall be included in the Confirmation Order. Holders of Allowed Priority Claims shall retain any liens that have arisen or may arise under applicable non-bankruptcy law.

2. <strong><u>Impairment and Voting</u></strong>

Class 1 is impaired under the Plan. Holders of Allowed Priority Tax Claims in Class 1 are entitled to vote to accept or reject the Plan.

**B.      <u>Class 2 – Other Secured Claims</u>**

1. <strong><u>Distributions</u></strong>

Except to the extent that a holder of an Allowed Other Secured Claim shall have agreed in writing to a different treatment, at the sole option of the Debtors, each Allowed Other Secured Claim shall, in full and final satisfaction of such Claim:

> (i) be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default;

> (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, by the later of thirty (30) days after the Effective Date or after a Final Order allowing such Claims; or

> (iii) receive the Collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code by the later of thirty (30) days after the Effective Date or three (3) business days after a Final Order allowing such Claims.

Notwithstanding the foregoing, to the extent an Allowed Other Secured Claim arises on account of property taxes, such Allowed Other Secured Claim shall be treated as Property Tax Claims.

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Distributions under the Plan.

19

### 2. Impairment and Voting

Class 2 is unimpaired under the Plan. The holders of Allowed Other Secured Claims in Class 2 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

### C. Class 3 – Allowed PACA Claims

#### 1. Distributions

Except to the extent that a holder of an Allowed PACA Claim shall have agreed in writing to a different treatment, each Allowed PACA claim shall be paid in full in Cash by the later of thirty (30) days after the Effective Date or three (3) business days after a Final Order allowing such Claims.

#### 2. Impairment and Voting

Class 3 is unimpaired under the Plan. Each holder of an Allowed PACA Claim in Class 5 is entitled to vote to accept or reject the Plan.

### D. Class 4 – General Unsecured Claims

#### 1. Distributions

Except to the extent that a holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each holder of an Allowed General Unsecured Claim in Class 4 shall be deemed to receive its *pro rata* share of the Unsecured Creditors' Trust Interests. The Unsecured Creditors' Trust Interests shall entitle the holders of Allowed General Unsecured Claims to receive, on such date or dates determined in accordance with the Unsecured Creditors' Trust Agreement, their *pro rata* share of the Unsecured Creditors' Trust Proceeds. Under no circumstances shall any holder of an Allowed General Unsecured Claim receive more than payment in full of such Claim.

#### 2. Impairment and Voting

Class 4 is impaired under the Plan. Each holder of an Allowed General Unsecured Claim in Class 4 is entitled to vote to accept or reject the Plan.

### E. Class 5 – Convenience Claims

#### 1. Distributions

Each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, either a distribution in Cash equal to ten percent (10%) of such holder's Allowed Convenience Claim or such holder's *pro rata* share of a maximum combined distribution in the amount of $425,000 to be funded out of the Unsecured Creditors' Trust proceeds to holders Convenience Claims, whichever is less, on the Initial Distribution Date for the Unsecured Creditors' Trust. Any portion of the $425,000 remaining after distributions on account of Class 5 Claims shall be applied to fund distributions on account of Class 4 Claims.

In order to share in a distribution a Convenience Claim needs to be an Allowed Claim as of the date of distribution to the Convenience Claims Class. To the extent a Convenience Claim is not an Allowed Claim as of the Initial Distribution Date for Convenience Claims said Claim will be treated as a General Unsecured Claim.

### 2.   Impairment and Voting

Class 5 is impaired under the Plan. Each holder of an Allowed Convenience Claim in Class 5 is entitled to vote to accept or reject the Plan.

### F.   Class 6 – Subordinated Claims

#### 1.   Distributions

Holders of Subordinated Claims shall receive no distribution under the Plan until all payments required under the Plan (including, without limitation, all payments under the Secured Trust Note) have been made. Upon all payments under the Plan being made, the Holders of the Subordinated Claims and the Debtors will mutually agree to repayment terms. Holders of Subordinated Claims shall have no Claims against, and no rights to receive any distributions from, the Unsecured Creditors' Trust.

The Subordinated Claims will remain as debt on the respective Debtor's books and records, to the extent provided by their individual terms. Holders of the Subordinated Claims will retain any liens securing their claims and said liens will be subordinated to the Secured Trust Note, as well as obligations to and liens granted in favor of the Unsecured Creditors' Trust. Any liens retained by holders of Subordinated Claims are not enforceable against the Reorganized Debtors until all payments required under the Plan have been made and repayment terms negotiated with the Debtors.

### 2.   Impairment and Voting

Class 6 is impaired under the Plan. Holders of Class 6 Claims are entitled to vote on the Plan.

### G.   Class 7 – ACE Companies' Claim

#### 1)   Distributions

The ACE Companies' Claim shall be satisfied as provided for in Article VII(I)(3).

#### 2)   Impairment and Voting

21

Class 7 is impaired under the Plan. Holders of Class 7 Claims are entitled to vote on the Plan.

### H.    Class 8 – Equity Interests

#### 1.    Distributions

Existing Equity Interests in Buffets LLC shall be cancelled.

#### 2.    Impairment and Voting

Class 8 is impaired under the Plan. Holders of Equity Interests in Buffets are presumed to reject the Plan and are not entitled to vote to accept or reject the Plan.

## V.

## PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS

### A.    Amendments to Certificates of Incorporation

On the Effective Date, or as soon thereafter as is practicable, the certificate of incorporation for each Debtor shall be amended if and as necessary to permit any other corporate action necessary to implement this Plan. An organization chart reflecting the Reorganized Debtors corporate structure will be included in the Plan Supplement.

### B.    Management

#### 1.    Appointment of Officers and Directors

The Debtors' current officers shall serve in the same capacity as officers of the Reorganized Debtors and shall serve in accordance with any applicable non-bankruptcy law.

#### 2.    Powers of Officers

The officers of the Debtors or the Reorganized Debtors, as the case may be, shall have the power to enter into or execute any documents or agreements that they deem reasonable and appropriate to effectuate the terms of the Plan.

#### 3.    Management of Reorganized Debtors

The Reorganized Debtors' officers shall serve in accordance with the Reorganized Debtors and applicable non-bankruptcy law.

#### 4.    Indemnification of Directors, Officers and Employees

Upon the Effective Date, the charters and by-laws of each Reorganized Debtors shall contain provisions which (i) eliminate the personal liability of the Debtors' and the Reorganized Debtors' then-present and future, directors, managers and officers for post-Effective Date monetary damages resulting from breaches of their fiduciary duties to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized; and (ii) require such Reorganized Debtor, subject to appropriate procedures, to indemnify the Reorganized Debtors'

22

directors, officers, and other employees serving on or after the Effective Date for all post-Effective Date claims and actions to the fullest extent permitted by applicable law in the state in which the subject Reorganized Debtor is organized.

### 5. Management

After the Effective Date, TX FMP Management LLC ("TX FMP") shall commence management of the Reorganized Debtors pursuant to a management agreement that shall have identical terms as and provide for the same management fee as provided for in the FMP Management Agreement. TX FMP shall be entitled to receive management fees for post-Effective Date management services as currently provided for in the FMP Management Agreement; provided, however, that, unless and until the Secured Trust Note is satisfied in full, the TX FMP Management Agreement may not be amended and the calculation of management fees shall not be altered without the written consent of the Unsecured Creditors' Trustee, and further provided that, in the event of a Default under the Secured Trust Note, no unpaid pre-Default management fees shall be paid.

### 6. New Equity

New membership interests reflecting 100% of the ownership in Buffets LLC shall be issued to Alamo Buffets LLC.

### C. Corporate Action

Except as set forth in the Plan, any action under the Plan to be taken by or required of the Debtors or the Reorganized Debtors, including, without limitation, the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' or Reorganized Debtors' boards of directors or managers, as applicable, or security holders.

The Debtors, the Reorganized Debtors, and the Unsecured Creditors' Trustee, as appropriate, shall be authorized to execute, deliver, file, and record such documents (including the Plan Supplement Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Court, corporate, or member approval or action. In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by managers, members or the applicable Reorganized Debtor.

## VI.

## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

Solely in connection with Distributions to be made to the holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the substantive consolidation of the Estates of the Debtors

23

into a single Estate for purposes of this Plan and the Distributions hereunder. To the extent a Claim (including any Disputed Claim) becomes an Allowed Claim, such Claim shall be satisfied in accordance with the provisions of the Plan.

Pursuant to the Confirmation Order, upon the Effective Date and without further order of the Court, except as expressly provided herein, (i) all assets and liabilities of the substantively consolidated Debtors will be deemed to be merged solely for purposes of this Plan and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the substantively consolidated Debtors solely for purposes of this Plan and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the substantively consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor hereunder will be deemed to be made by the substantively consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the substantively consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim. Notwithstanding the foregoing, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, (b) guarantees that are required to be maintained post-Effective Date in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed, or pursuant to the express terms of the Plan. The substantive consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6). Such obligations shall continue until an order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

Unless the Court has approved the substantive consolidation of the Estates by a prior order, the Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Estates as set forth in this Plan. If no objection to substantive consolidation under this Plan is timely filed and served, then the holders of Claims will be deemed to have consented to substantive consolidation for the purpose of this Plan only and the Court may approve substantive consolidation of the Debtors' Estates in the Confirmation Order. If such objection to the substantive consolidation provided for in this Plan is timely filed and served, a hearing with respect to the substantive consolidation of the Estates and the objections thereto shall be scheduled by the Court, which hearing may coincide with the Confirmation Hearing.

# VII.

## PROVISIONS REGARDING MEANS OF IMPLEMENTATION, VOTING, DISTRIBUTIONS, AND TREATMENT OF DISPUTED CLAIMS

### A.     Funding the Unsecured Creditors' Trust

Funding of the Unsecured Creditors' Trust shall be as follows:

(i) Alamo Buffets, LLC shall provide $6.5 million in cash to the Debtors, *i.e.*, the Alamo Buffets Advance, in order to fund the Unsecured Creditors' Trust Cash Component, which shall be transferred to the Unsecured Creditors' Trust on or before the Effective Date;

(ii) the Reorganized Debtors shall each execute the Secured Trust Note; and

(iii) the Trust Causes of Action, including the Causes of Action and rights under the Assigned Causes of Action Agreement, shall be transferred to the Unsecured Creditors' Trust.

### B.     Payment of Claims

The Debtors or Reorganized Debtors shall pay all Allowed unclassified Claims and Allowed Claims other than Allowed Claims in Classes 4 and 5. The Unsecured Creditors' Trust shall be responsible solely for distributions on account of Allowed Class 4 and 5 Claims in accordance with the terms of Unsecured Creditors' Trust Agreement.

### C.     Restructuring Transactions

On or before the Effective Date, the Debtors may, provided (i) there are no material adverse tax consequences to the Debtors, (ii) no material adverse consequences to holders of General Unsecured Claims, and does not substitute a tenant under an assumed lease (1) cause any or all of the Debtors to be merged into one or more of the Debtors, dissolved, or otherwise consolidated, (2) cause the transfer of assets between and among the Debtors, (3) convert or change the corporate form of any Debtor, or (4) engage in any other transaction in furtherance of the Plan. Any such transactions shall be disclosed in the Plan Summary and shall be effective pursuant to the Confirmation Order without any further action by the stockholders or directors of any of the Debtors.

### D.     Unsecured Creditors' Trust

The Unsecured Creditors' Trust Agreement shall become effective on the Effective Date. In accordance with the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trust shall be administered by the Unsecured Creditors' Trustee, who shall be designated by the Creditors' Committee. Subject to the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trustee shall serve from and after the Effective Date until completion of its responsibilities. This Section VII.D. sets forth certain of the rights, duties and obligations of the Unsecured Creditors' Trustee and the terms of the Unsecured Creditors' Trust, all of which will

25

be more fully described in the Unsecured Creditors' Trust Agreement. In the event of any conflict between the terms of this Section VII.D. and the terms of the Unsecured Creditors' Trust Agreement, the terms of the Unsecured Creditors' Trust Agreement shall govern.

### 1. Duties and Powers of the Unsecured Creditors' Trust and Unsecured Creditors' Trustee

The Unsecured Creditors' Trust shall be established solely for the purposes provided for in the Unsecured Creditors' Trust Agreement, which shall include (i) administering, maintaining and ultimately distributing the Unsecured Creditors' Trust Proceeds in accordance with the Plan, (ii) providing for the prosecution, collection, compromise and settlement of the Trust Causes of Action and (iii) determining, objecting to and resolving objections to unliquidated and Disputed General Unsecured Claims. Such rights, powers and duties granted to the Unsecured Creditors' Trustee shall vest on the Effective Date without the need to obtain further Court approval. The Unsecured Creditors' Trustee, in its discretion and in consultation with the Trust Advisory Board, may settle any Disputed General Unsecured Claim by providing the holder of such Claim an immediate Cash Distribution on the Allowed amount of such Claim up to the proximate estimated amount of the projected Distribution to holders of Allowed General Unsecured Claims without further order of the Court. The Unsecured Creditors' Trustee shall pursue, litigate, compromise or abandon the Trust Causes of Action with the objective of maximizing the return to holders of Allowed General Unsecured Claims, in accordance with the Unsecured Creditors' Trust Agreement, and pay all associated costs. The Unsecured Creditors' Trustee shall not effectuate any Distribution to a holder of an Allowed Claim if the holder of the Allowed Claim is also the subject of one or more Avoidance Actions that have not been satisfied, abandoned, or subject to judgment solely in such Claimant's favor. None of the Debtors or the Reorganized Debtors shall have any liability for any cost or expense of the Unsecured Creditors' Trust following the Effective Date. The Unsecured Creditors' Trustee shall distribute the Unsecured Creditors' Trust Proceeds in accordance with the Unsecured Creditors' Trust Agreement and the terms of the Plan.

### 2. Transfers to the Unsecured Creditors' Trust

On and after (as applicable) the Effective Date, the Debtors (or, in the case of the Assigned Non-Debtor Causes of Action, the holders thereof) shall transfer, assign, deliver and distribute to the Unsecured Creditors' Trust all right, title and interest in the (i) Causes of Action, (ii) Assigned Non-Debtor Causes of Action, (iii) the Unsecured Creditors' Trust Cash Component, (iv) the Secured Trust Note and (v) all documents necessary to create and perfect the security interests to be granted to the Unsecured Creditors' Trust on all assets of the Reorganized Debtors, including, without limitation, collateral assignments of all real estate leases under which one or more of the Reorganized Debtors are or become tenants (collectively, the "Trust Assets"). For the avoidance of doubt, the Excluded Causes of Action will not be transferred to the Unsecured Creditors' Trust and will not be considered Trust Assets. Subject to the terms of the Plan and the Unsecured Creditors' Trust Agreement, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall, on the Effective Date, be vested with and succeed to all rights, privileges, immunities, title and interest of the Debtors in and to the Trust Assets, and the Debtors and the Reorganized Debtors shall have no other further rights or obligations with respect thereto, except as set forth in the Plan and any ancillary agreements

executed in connection with the Plan. In addition, on the Effective Date, the Unsecured Creditors' Trust and the Unsecured Creditors' Trustee shall be vested with and succeed to all of the applicable Debtor's rights of setoff, credits, credit balances, defenses, and any right with respect to the adjustment to General Unsecured Claims but only to the extent such rights (i) existed as of or related to the period prior to the Petition Date, and (ii) do not exceed the Allowed amount of the applicable General Unsecured Claim. Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtors to enable the Unsecured Creditors' Trustee to perform the Unsecured Creditors' Trustee's tasks under the Unsecured Creditors' Trust Agreement and the Plan, and the Debtors and the Reorganized Debtors shall permit the Unsecured Creditors' Trustee (subject to appropriate confidentiality and privilege arrangements) reasonable access to information related to the Trust Causes of Action and the unliquidated and Disputed General Unsecured Claims that is reasonably requested by the Unsecured Creditors' Trust, as more specifically set forth in the Unsecured Creditors' Trust Agreement. With respect to the Insured Claims, the Reorganized Debtors shall also make available to the Unsecured Creditors' Trustee reasonable access and cooperation during normal business hours to personnel responsible for administering the Claims, in addition to access to books and records of the Debtors or the Reorganized Debtors, including any incident files or other documents related to the Insured Claims. The Unsecured Creditors' Trustee shall also have the authority (subject to the Debtors' insurance policies) to work directly with the Debtors' insurers, claims adjusters, third party administrators and agents with respect to the reconciliation, allowance, settlement, and/or prosecution of the Insured Claims and the Reorganized Debtors will reasonably cooperate with the Unsecured Creditors' Trustee to assist with such efforts. Notwithstanding anything to the contrary herein, the Reorganized Debtors will not be required to incur any expenses in discharging its commitments set forth in this paragraph. Interests in the Unsecured Creditors' Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law or with consent of the Unsecured Creditors' Trustee upon such terms as the Unsecured Creditors' Trustee, in its sole and absolute discretion, might require.

### 3. **Funding of Unsecured Creditors' Trust Expenses**

The expenses of the Unsecured Creditors' Trust, including the fees of the Unsecured Creditors' Trustee, shall be funded from the Trust Assets, and, shall not be funded by the Debtors or the Reorganized Debtors.

### 4. **Retention of Professionals by the Unsecured Creditors' Trust**

The Unsecured Creditors' Trustee may retain counsel and other professionals to assist in its duties, on such terms as the Unsecured Creditors' Trustee deems appropriate, without Court approval and may pay such professionals reasonable fees and expenses without Court approval.

5.    **Termination of Unsecured Creditors' Trust**

Upon the final distribution of any and all Unsecured Creditors' Trust Proceeds, and completion of the Unsecured Creditors' Trustee's responsibilities, the Unsecured Creditors' Trustee shall be relieved of further responsibility.

E.    **The Trust Advisory Board**

1.    Subject to the provisions of the Unsecured Creditors' Trust Agreement, the Trust Advisory Board shall be comprised of up to three (3) members which shall be designated by the Creditors' Committee. The Unsecured Creditors' Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Unsecured Creditors' Trust. Members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Trust Advisory Board, which shall be payable by the Unsecured Creditors' Trust.

2.    In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member may be replaced by designation of the remaining members of the Trust Advisory Board.

3.    Upon the distribution of the Unsecured Creditors' Trust Proceeds, and the completion of the Unsecured Creditors' Trustee's responsibilities, the members of the Trust Advisory Board shall be deemed to resign their positions, whereupon they shall be discharged from further duties and responsibilities.

4.    The Trust Advisory Board may remove the Unsecured Creditors' Trustee in its discretion. In the event the requisite approval necessitated by the Unsecured Creditors' Trust Agreement or documents related thereto is not obtained, the Unsecured Creditors' Trustee may be removed by the Court for cause shown. In the event of the resignation or removal of the Unsecured Creditors' Trustee, the Trust Advisory Board shall, by majority vote, designate a person to serve as successor Unsecured Creditors' Trustee. The identity of any successor Unsecured Creditors' Trustee shall be promptly disclosed in a filing with the Court.

5.    Notwithstanding anything to the contrary in the Plan, neither the Trust Advisory Board nor any of its members, designees, counsel, financial advisors or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Trust Advisory Board, nor shall any member be liable for anything other than such members' own gross negligence or willful misconduct. The Trust Advisory Board may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with such advice or opinions. If the Trust Advisory Board determines not to consult with counsel, accountants or other professionals, such action or omission shall not be deemed to impose any liability on the Trust Advisory Board, or its members and/or designees.

6.    The Trust Advisory Board shall govern its proceedings through the adoption of bylaws, which the Trust Advisory Board shall adopt by majority vote.

28

### F. Voting of Claims

Each holder of an Allowed Claim in an Impaired Class of Claims entitled to vote on the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as may be entered by the Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Court.

### G. Distributions

#### 1. Allowed Claims

(i) Delivery of Distributions. Distributions under the Plan shall be made by the Reorganized Debtors or their designee or the Unsecured Creditors' Trustee, as applicable, to the holders of Allowed Claims in all Classes at the addresses set forth on the Schedules, unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 by the Record Date (or at the last known addresses of such holders if the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee, as applicable, have been notified in writing of a change of address).

(ii) Distribution of Cash. Any payment of Cash by the Reorganized Debtors or the Unsecured Creditors' Trustee pursuant to the Plan shall be made at the option and in the sole discretion of the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtors or Unsecured Creditors' Trustee, as applicable. The Unsecured Creditors' Trustee shall be responsible for payments to Classes 10 and 11. The Debtors or Reorganized Debtor shall make all other distributions required in the Plan.

(iii) Unclaimed Distributions of Cash. Any distribution of Cash under the Plan that is unclaimed after six months after it has been delivered (or attempted to be delivered) shall become the property of the Reorganized Debtor or the Unsecured Creditors' Trustee, as applicable, against which such Claim was Allowed notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

(iv) Saturdays, Sundays, or Legal Holidays. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

(v) De Minimis Distributions.

The Debtors or the Reorganized Debtors or the Unsecured Creditors' Trustee, as the case may be, shall not be required to, but may in their sole and absolute discretion, make distributions to any holder of a Claim of Cash in an amount less than $10. In addition, the Debtors and the Reorganized Debtors or Unsecured Creditors' Trustee shall not be required to, but may in their

sole and absolute discretion, make any payment on account of any Claim in the event that the costs of making such payment exceeds the amount of such payment.

(vi) *Distributions as of the Record Date.* As of the close of business on the Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests. The Debtors, the Reorganized Debtors and the Unsecured Creditors' Trustee shall have no obligation to, but may in their sole and absolute discretion, recognize any transfer of any Claims or Equity Interests occurring after the Record Date. The Debtors, the Reorganized Debtors and the Unsecured Creditors' Trustee shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Record Date.

(vii) *Interest on Claims.* Except as specifically provided for in the, no Claims, Allowed or otherwise, shall be entitled, under any circumstances, to receive any interest on a Claim.

## H.     Objections To And Resolution Of Claims

The Reorganized Debtors shall have the exclusive right to make and to file objections to, or otherwise contest the allowance of all claims, other than as provided in this paragraph H. or elsewhere in the Plan.  The Unsecured Creditors' Trustee shall have the exclusive right to make and file objections to Claims in Classes 4 and 5.  Both the Reorganized Debtors and Unsecured Creditors' Trustee shall have the right to make and to file objections to, or otherwise contest the allowance or secured status of Class 7 Claims (*i.e.*, the ACE Companies' Claim) and any Claim that is asserted to be a Secured Claim pursuant to Section 506 of the Bankruptcy Code.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning the allowance of, Administrative Claims and Claims shall be filed and served upon the holders of the Administrative Claims or Claims as to which the objection is made, or otherwise commenced, as the case may be, as soon as practicable, but in no event later than the Claims Objection Deadline. Objections to Fee Claims shall be filed and served within seventy-five (75) days of the Effective Date (or such longer period as may be allowed by order of the Court).

Objections to, or other proceedings contesting the allowance of, Administrative Claims and Claims may be litigated to judgment, settled or withdrawn, in the sole discretion of the Reorganized Debtors or the Unsecured Creditors' Trustee, as applicable. The Debtors or the Unsecured Creditors' Trustee, as appropriate, may settle any such objections or proceedings without Court approval or may seek Court approval without notice to any Person.

Unless an order of the Court specifically provides for a later date, any party filing a proof of Claim (other than an amendment to a timely filed Proof of Claim) after the bar date established by the Court for such Claim shall not be entitled to treatment as a creditor with respect to such Claim for the purposes of voting on and distribution under the Plan unless and until the party filing such Claim either obtains the written consent of the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, to file such Claim late or obtains an order of the Court upon written motion on notice to the Reorganized Debtors or the Unsecured Creditors'

Trustee, as appropriate, that permits the filing of the Claim. In the event any proof of Claim is permitted to be filed after the Claims Objection Deadline, the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, shall have ninety (90) days from the date of such order or agreement to object to such Claim, which deadline may be extended by the Court on motion of the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, without a hearing or notice to Creditors'.

## I.     Special Provisions Regarding Insured Claims

### 1.     Distributions on Insured Claims

Distributions under the Plan to each holder of an Insured Claim that is also a General Unsecured Claim shall be in accordance with the treatment provided under the Plan for General Unsecured Claims; *provided, however,* that

(i)     to the extent a holder has an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible (of the relevant insurance policy of the Debtors, then such holder shall have an Allowed General Unsecured Claim for the amount which is within the applicable self-insured retention or deductible of the relevant insurance policy of the Debtors;

(ii)     to the extent a holder has an Allowed Insured Claim, a portion of which exceeds the limits of coverage available from the relevant insurance policies of the Debtors, such holder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the limits of coverage available from the Debtors' relevant insurance policies;

(iii)     any final settlement of or judgment on account of an Allowed Insured Claim, all or a portion of which is within the applicable self-insured retention or deductible of the relevant insurance policy of the Debtors, shall be satisfied first by the application of the full amount of Debtors' self-insured retention or deductible under the relevant insurance policy, as though such self-insured retention or deductible were paid in full dollar for dollar (up to the amount of the settlement or judgment), even though the self-insured retention or deductible may be satisfied by way of a *pro rata* Distribution under the Plan in a lesser amount, and regardless of the value of such Distribution under the Plan;

(iv)     the Debtors' insurers shall have no duty or obligation to pay any amount within the self-insured retention or deductible of any insurance policy of the Debtors except as may be required by law;

(v)     to the extent the Debtors, the Unsecured Creditors' Trust and/or the Debtors' insurers have an obligation to satisfy any Insured Claim, in whole or in part, in accordance with the Plan, an applicable general liability policy or applicable law, each Allowed Insured Claim shall be adjusted, settled and/or paid by the Debtors' insurers in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions, self-insured retentions or deductibles and limits of such policies and subject to the Plan;

31

(vi) nothing in this section shall constitute a waiver of any claims or causes of action the Debtors or the Unsecured Creditors' Trustee, as applicable, may hold against any Person, including the Debtors' insurance carriers or a waiver of any rights, claims and defenses the insurers may have. Nothing in this section is intended to, shall, or shall be deemed to preclude any holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any distribution such holder may receive under the Plan or to preclude any insurer from contesting or asserting defenses to the claims of such holders. The Debtors and the Unsecured Creditors' Trustee, as applicable, do not waive, and expressly reserve their rights to assert that any insurance policy proceeds are property of the Estates to which they are entitled and the insurers expressly reserve their rights to contest or assert defenses to any such assertion by the Debtors. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall be construed as, or is, a determination as to coverage in connection with any Insured Claim under any applicable insurance policy; and

(vii) subject to the provisions of Article VII(I)(i)-(iv), each Automobile Liability Claim or Workers' Compensation Claim shall be adjusted, settled and/or paid by the Debtors' insurers in the ordinary course in accordance with the terms of the applicable insurance policies of the Debtors, subject to the terms, conditions and limits of such policies without the need or requirement for the claimant, the insurer or third party administrator to seek relief from the automatic stay or Plan injunction to the extent applicable.

(viii) none of the Disclosure Statement, Plan, or Confirmation Order shall: (a) modify the coverage provided under the Debtors' current, unexpired insurance policies, (b) except as provided for in the Plan, alter in any way the rights and obligations of the Debtors' insurers under their policies, or (c) except as provided in the Plan, alter in any way the rights and obligations of the Debtors (or after the Effective Date, the Reorganized Debtors) or the Unsecured Creditors' Trustee, as applicable, under the insurance policies, including, without limitation, any duty of the Debtors or the Unsecured Creditors' Trustee, as applicable, to defend, at their own expense, against claims asserted under the insurance policies. The Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors (or after the Effective Date, the Reorganized Debtors) and the Unsecured Creditors' Trustee, as applicable, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. Nothing in the Disclosure Statement, Plan or Confirmation Order in any way permits any holder of an Insured Claim to recover the same amounts from the insurers and any other party including, but not limited to, the Debtors or the Reorganized Debtors, or the Unsecured Creditors' Trustee. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall modify the rights of the Debtors' insurers with respect to the maintenance or use of any letters of credit, or other collateral and security provided to them, in connection with liabilities arising under the applicable insurance agreements.

## 2. Large Deductible Policies

The Debtor has been insured under pre-petition large deductible workers' compensation, automobile and general liability policies. Any and all ongoing obligations of the Debtors with respect to such policies that have expired are rejected pursuant to Section 365 as to the

Reorganized Debtors. Any Claims in excess of any applicable collateral for such claims of any insurers against the Unsecured Creditors' Trust under rejected insurance policies shall be treated as General Unsecured Claims under Class 4 or 5, as applicable, and the Unsecured Creditors' Trust shall have all rights of the Debtors in and to any collateral posted for such policies or other rights provided pursuant to such policies. All of such insurers' rights and defenses under such policies are likewise reserved as to the Unsecured Creditors' Trust.

### 3. The ACE Insurance Program

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Plan Supplement Documents, the Confirmation Order, any exit financing, any prepetition or administrative claim bar date order (or notice) or any other pleading, notice, or document or order of the Bankruptcy Court (including, without limitation, Articles VII (I) (1) and (2) and VIII of the Plan or any other provision that purports to be preemptory or supervening, grants an injunction or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases), on and after the Effective Date:

(i) the Unsecured Creditors' Trust shall succeed to all of the Debtors' rights as an insured and shall be liable for the obligations under the ACE Insurance Program (provided that the monetary obligations owed to the ACE Companies shall be satisfied in accordance with subsection (iv) hereof) and the ACE Insurance Program shall be enforceable by and against the Unsecured Creditors' Trust.

(ii) except to the extent otherwise specifically provided in this section VII.I.3 of the Plan, the terms and conditions of the ACE Insurance Program are not altered, including, but not limited to: (a) coverage for claims insured thereunder (even if such claims or the liability therefore have not been transferred to the Unsecured Creditors' Trust), (b) any agreement to arbitrate disputes, (c) any provisions requiring the payment of amounts within any deductible by the ACE Companies and any Claim the ACE Companies may have for reimbursement thereof, and (d) any right of the ACE Companies to not pay amounts within any self-insured retention;

(iii) the ACE Companies' rights in the ACE Collateral shall survive and shall not be modified, waived, released, discharged or impaired in any respect as a result of confirmation of the Plan;

(iv) the ACE Companies' Claim (including any amounts referenced in part (i)(c) hereof) shall be satisfied (in full dollars) solely from the existing ACE Collateral in the ordinary course and pursuant to the terms of the ACE Insurance Program;

(v) in no event shall either the Unsecured Creditors' Trust or the Reorganized Debtors be required to make any payment on account of the ACE Companies' Claim and/or for any cost or expense incurred by the ACE Companies (other than by application of the existing ACE Collateral) or to provide additional collateral to the ACE Companies for the ACE Insurance Program;

(vi) in no event shall the ACE Companies have or be entitled to any administrative or priority Claim against or distribution from the Unsecured Creditors' Trust (other than from the existing ACE Collateral);

(vii) the automatic stay of Bankruptcy Code Section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit (a) claimants with valid Workers' Compensation claims or direct action claims covered by the ACE Insurance Program to proceed with their claims; (b) the ACE Companies to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Court, (I) all valid Workers' Compensation Claims covered by the ACE Insurance Program, (II) all claims where a claimant asserts a direct claim against any of the ACE Companies under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay to proceed with its claim, and (III) all costs in relation to each of the foregoing; and (c) the ACE Companies to draw against any or all of the collateral or security provided by or on behalf of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors and/or the Unsecured Creditors' Trust, as applicable) under the ACE Insurance Program, in such order as the ACE Companies may determine; and

(viii) any claims or causes of action (including any Causes of Action) against the ACE Companies for return of excess proceeds, if any, of the ACE Collateral shall be transferred to the Unsecured Creditor Trust and any right to return of excess proceeds, if any, of the ACE Collateral shall be transferred to the Unsecured Creditors Trust..

### 4. Alternate Dispute Resolution Procedures

(a) The Unsecured Creditors' Trustee shall be deemed to substitute for the Debtors in the Alternative Dispute Resolution Procedures approved by the Court at (the "ADR Order"). The ADR Order shall remain in full force and effect.

### 5. Distributions Following Allowance

Notwithstanding anything to the contrary set forth herein, each holder of a Disputed Claim that becomes an Allowed Claim subsequent to the applicable Initial Distribution Date shall receive the Distribution to which such holder of an Allowed Claim is entitled at such time that the Reorganized Debtors or the Unsecured Creditors' Trustee, as appropriate, determine, in their discretion, to make subsequent Distributions to holders of other Claims Allowed following the applicable Distribution Date. Nothing set forth herein is intended to, nor shall it, prohibit the Debtors or the Unsecured Creditors' Trustee, as appropriate, in their discretion, from making a Distribution on account of any Claim at any time after such Claim becomes an Allowed Claim.

### J. Estimation

The Debtors, Reorganized Debtors, or the Unsecured Creditors' Trustee, as applicable, may at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c)

of the Bankruptcy Code regardless of whether the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim, except that the Court may not estimate any claim based on an alleged personal injury or wrongful death. In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to the Plan, or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors, the Reorganized Debtors, or the Unsecured Creditors' Trustee as the case may be, may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### K.  Nonconsensual Confirmation

The Debtors will seek to have the Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

### L.  Intercompany Claims

At the option of the Debtors or the Reorganized Debtors, as applicable, each Intercompany Claim shall be, either (i) reinstated and continued in full or in part, or (ii) eliminated in full or in part by offset, distribution, cancellation, assumption or contribution of such Intercompany Claim or otherwise; provided, however, that no Intercompany Claim shall be Allowed as a General Unsecured Claim or be payable from the Unsecured Creditors' Trust.

### M.  Liens

Notwithstanding anything to the contrary contained herein, the substantive consolidation of the Debtors pursuant to Article VI of this Plan shall not affect the extent or validity of any Lien.

Upon the treatment or other satisfaction of any Secured Claims in accordance with the Plan, the Liens securing such secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

### N.  Enforcement of Subordination

The classification and manner of satisfying all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall enjoin, effective as of the Effective Date, all persons and entities from

enforcing or attempting to enforce any such contractual, legal and/or equitable rights so satisfied, compromised and settled.

## VIII.

## EFFECT OF CONFIRMATION OF THE PLAN

### A. Continued Corporate Existence

The Debtors, as Reorganized Debtors, shall continue to exist after the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement. The Reorganized Debtors shall be responsible for filing required post-confirmation reports and each Reorganized Debtor shall pay quarterly fees of such Debtor due to the Office of the United States Trustee until such time as a final decree is entered closing the applicable Chapter 11 Case or the Bankruptcy Code orders otherwise.

### B. Settlement of Treatment of General Unsecured Claims

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the Plan constitutes a good faith compromise and settlement of the rights and claims, if any, that the holders of Claims may have against the Released Parties. Any Distributions to be made pursuant to the Plan shall be made on account, and in consideration, of the compromise and settlement provided hereunder, which upon the Effective Date shall be binding on the holders of Claims (whether or not Allowed). The entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the settlement and the Court's finding that the settlement is in the best interests of the Debtors and their Estates.

### C. Dissolution of Creditors' Committee

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code. Thereafter, the Creditors' Committee shall continue in existence until the latest of: (1) the Effective Date; and (2) the conclusion of any appeals or other challenges or matters with respect to the Confirmation Order. On the latest of such dates, the Creditors' Committee shall be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, and other agents shall terminate; provided, however, such attorneys and financial advisors shall be entitled

36

to pursue their own Fee Claims. Following the Confirmation Date, in accordance with the foregoing, (x) the attorneys and financial advisors to the Creditors' Committee shall be entitled to request any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Confirmation Date through and including the dissolution of the Creditors' Committee in connection with the services to the Creditors' Committee and (y) the members of the Creditors' Committee shall be entitled to reimbursement of their reasonable expenses incurred in connection with their exercise of the foregoing duties and responsibilities. The Reorganized Debtors shall pay, within ten (10) Business Days after submission of a detailed invoice to the Reorganized Debtors, such reasonable claims for compensation or reimbursement of expenses incurred by the professionals of the Creditors' Committee. If the Reorganized Debtors dispute the reasonableness of any such invoice, the Reorganized Debtors or the affected professional may submit such dispute to the Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

### D.    Vesting of Property

All property of the Debtors' estates other than property transferred under the Plan shall be revested in the Reorganized Debtors on the Effective Date.

### E.    Discharge of the Debtors

**The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Debtors in Possession, the Reorganized Debtors or any of their respective assets or properties, arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, and Liens on the Debtors, their respective assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.**

### F.    Injunction

**Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized**

Debtors or the Unsecured Creditors' Trust, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors or the Unsecured Creditors' Trust on account of any such Claim, and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors, the Reorganized Debtors or the Unsecured Creditors' Trust or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) or the Unsecured Creditors' Trust and their respective properties and interests in property

### G.    Preservation of Causes of Action

The Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall retain all causes of action, other than as expressly provided herein. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such causes of action. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, causes of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date that is not specifically waived, released or relinquished by this Plan. The Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date by the Reorganized Debtors or the Unsecured Creditors' Trust, as applicable, to the same extent as if the Chapter 11 Cases had not been commenced. The Plan Supplement sets forth a non-exhaustive list of causes of action that are preserved.

### H.    Votes Solicited in Good Faith

The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

### I.    Administrative Claims Incurred After the Effective Date

Obligations incurred by the Reorganized Debtors after the Effective Date including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtors in the ordinary course of business and without application for or Court approval, subject to any agreements with any claim holders.

### J.    Insider Releases by the Debtors

Upon the Release Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their estates (which shall include the Unsecured Creditors' Trust),

38

shall be deemed to release unconditionally (a) all of their current respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, acting in their capacities as such, (b) All Jones, LLC, (c) the DIP Lender, (d) the Pre-Petition Secured Creditors', (e) FMP, and (f) as to each of the foregoing, their respective officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Released Parties" and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities (which shall include the Excluded Insider Causes of Action) whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct (notwithstanding this clause (i), neither the debtors, Reorganized Debtors nor the Unsecured Creditors' Trust shall ever claim or assert that the actions of any of the Released Parties in determining to complete, or completing, the acquisition of the Debtors or the Non-Debtor Parent Companies pursuant to the Merger Agreement or the actions or omissions of the Released Parties in the management of the Debtors or the Non-Debtor Parent Companies between the closing of the Merger Agreement and the Petition Date constitute or may be characterized as gross negligence or willful misconduct for the purposes hereof), (ii) the Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors, (iv) the foregoing release applies to the Released Parties solely in their respective capacities described above and (v) notwithstanding any other provisions of the Plan, the foregoing release shall not affect the creation of the Unsecured Creditors' Trust. Unless and until there is a Default by the Reorganized Debtors in payment and performance under the Secured Trust Note, the filing of or prosecution of, causes of action to be released pursuant to this paragraph (which include the Excluded Insider Causes of Action) will be enjoined; provided, however, that any applicable limitation of actions periods shall be tolled during the pendency of such injunction until a date not earlier than 6 months after such injunction is lifted or expires by its own terms.

K.    Insider Releases by non-Debtors

Upon the Release Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, or (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Reorganized Debtors and the Released Parties not to (y) sue or otherwise seek recovery from any of the Reorganized Debtors or any Released Party on account of any Claim in any way related to the Debtors or their business and affairs, including but not limited to any Claim based upon tort, breach of contract, violations of

39

federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date or (z) assert against any of the Reorganized Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any Claim primarily based on any act or omission that constitutes gross negligence or willful misconduct as determined by a court of competent jurisdiction (notwithstanding this clause (i), none of the Persons otherwise deemed to have granted a release under this Section VIII.K of the Plan shall ever claim or assert that the actions of any of the Released Parties in determining to complete, or completing, the acquisition of the Debtors or the Non-Debtor Parent Companies pursuant to the Merger Agreement or the actions or omissions of the Released Parties in the management of the Debtors or the Non-Debtor Parent Companies between the closing of the Merger Agreement and the Petition Date constitute or may be characterized as gross negligence or willful misconduct for the purposes hereof), (ii) the foregoing release shall not apply to obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan. Unless and until there is a Default by the Reorganized Debtors in payment and performance under the Secured Trust Note, the filing of or prosecution of, causes of action to be released pursuant to this paragraph will be enjoined; provided, however, that any applicable limitation of actions periods shall be tolled during the pendency of such injunction until a date not earlier than 6 months after such injunction is lifted or expires by its own terms.

FOR THE AVOIDANCE OF DOUBT AND IN CONSIDERATION OF PAYMENTS MADE HEREUNDER TO THE LITIGATION TRUST, THE ABOVE RELEASES ARE INTENDED TO AND SHALL BE INTERPRETED TO RELEASE FMP, ALAMO CRG, THE PRE-PETITION SECURED CREDITORS AND ALAMO OVATION, LLC AND THEIR RESPECTIVE OFFICERS, DIRECTORS AND AGENTS OF AND FROM ANY AND ALL CLAIMS THAT HAVE BEEN OR COULD BE ASSERTED BY A CREDITOR OF THE DEBTORS, THE DEBTORS, A PERSON OR ENTITY ACTING ON BEHALF OF THE DEBTORS AGAINST ANY OF THEM OR IN ANY WAY TO THE DEBTORS (BEFORE OR AFTER THE EFFECTIVE DATE) OR THE ACQUISITION OF THE DEBTORS ON AUGUST 19, 2015.

L.  Releases of Creditors' Committee, Committee Members and Committee Professionals

Upon the Effective Date, the Creditors' Committee, members of the Creditors' Committee, acting in their capacities as such, and their respective officers, directors, principals, members, employees, partners, subsidiaries, affiliates, advisors, attorneys, financial advisors, accountants, and other professionals (collectively the "Committee Released Parties" and each a "Committee Released Party") shall be deemed to be released unconditionally from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever, whether known or unknown, foreseen or

40

unforeseen, existing or hereafter arising, in law, equity or otherwise, or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no person shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors and the Unsecured Creditors' Trustee, as applicable, shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set off or recoupment against any Claims of any such persons asserted against the Debtors, and (iii) the foregoing release applies to the Committee Released Parties solely in their respective capacities described above.

### M.  Exculpation and Injunction in Respect of Released Parties

#### 1.  Exculpation

The Debtors, the Reorganized Debtors, the Released Parties, and the Committee Released Parties shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, a Claim, or an Equity Interest for any act or omission in connection with, or arising out of, the Plan or the Disclosure Statement, the negotiation of the Plan or the Disclosure Statement, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration and implementation of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties and Committee Released Parties from liability.

#### 2.  Injunction

Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Claim, a Claim or an Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against a Released Party or Committee Released Party that accrued on or prior to the Effective Date and that has been released or waived pursuant to this Plan.

### N.  Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### O.  Preservation of Insurance

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any

41

insurance policy that may cover Claims against the Debtors, the Reorganized Debtors (including, without limitation, its officers and current and former directors) or any other person or entity.

## P.      Indemnification Obligations Owed by the Debtors

Indemnification Obligations owed to directors, officers, and employees of the Debtors (or the estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date, excluding claims which have been determined by Final Order to have resulted from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to Sections 365 of the Bankruptcy Code under the Plan; provided that the Reorganized Debtors' liabilities in respect of such obligations shall be limited to the extent of available insurance coverage.

All Indemnification Obligations owed to directors, officers, and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to Section 365 of the Bankruptcy Code under the Plan.

Indemnification Obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and order of the Court, to the extent that such Indemnification Obligations relate to the period after the Petition Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

## IX.

## RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim or Equity Interest; (5) to hear and determine objections to Claims and to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the

interpretation, implementation, or enforcement of the Plan; (11) to hear and determine any issue for which the Plan requires a Final Order of the Court; (12) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (13) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date; (14) to hear and determine any Causes of Action, including any Avoidance Action, preserved under the Plan under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (15) to hear and determine any matter regarding the existence, nature and scope of the Debtors' discharge; (16) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article VIII of the Plan; (17) to enter a final decree closing the Chapter 11 Cases; (18) to hear and determine all matters, controversies, suits, and disputes that may arise out of or in connection with the Unsecured Creditors' Trust, Unsecured Creditors' Trustee and/or the Unsecured Creditors' Trust Agreement; and (19) hear, determine, and adjudicate any and all (x) Claims, including allowance, classification, priority, compromise, estimation or payment, or (y) Transferred Avoidance Actions brought by the Unsecured Creditors' Trust.

## X.

## MISCELLANEOUS PROVISIONS

### A.     Payment of Statutory Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. Each Reorganized Debtor shall pay such fees payable after the Effective Date until such time as a final decree is entered closing the applicable Chapter 11 Case or the Court orders otherwise.

### B.     Modification of the Plan

Subject to the limitations contained in the Plan: (1) the Debtors reserve the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may (in consultation with the Trust Advisory Board with respect to the treatment of holders of General Unsecured Claims and matters pertaining to the Unsecured Creditors' Trust or any other matter affecting the rights of the holders of General Unsecured Claims), and upon order of the Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code.

### C.     Governing Law

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any

agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

### D. Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or the Reorganized Debtors, shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### E. Withholding and Reporting Requirements

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors and Unsecured Creditors' Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

### F. Exemption From Transfer Taxes

Pursuant to, and to the fullest extent permitted by, section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange under the Plan of equity interests, (b) the making or assignment of any lease or sublease, or (c) the making or delivery of any other instrument whatsoever, in furtherance of or in connection with the Plan shall not be subject to any stamp tax or other similar tax.

### G. Waiver of Federal Rule of Civil Procedure 62(a)

The Debtors may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

### H. Exhibits/Schedules

All Exhibits and schedules to the Plan and the Plan Supplement Documents are incorporated into and constitute a part of the Plan as if set forth herein.

### I. Notices

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

To the Debtors: Buffets, LLC *et al.*, Attn: Adele Wang, 120 Chula Vista Dr., Hollywood Park, TX 78232, with a copy to counsel to the Debtors, Akerman LLP, Attn: David W. Parham and John E. Mitchell, 2001 Ross Avenue, Ste. 2550, Dallas, TX 75201 (Tel: 214-720-4300; Fax: 214-981-9339).

To the Creditors' Committee: In care of (a) Greenberg Traurig, LLP, Attn: Shari L. Heyen and David R. Eastlake, 1000 Louisiana, Suite 1700, Houston, Texas 77002 (Tel: 713-374-3564; Fax: 713-374-3505), and (b) Greenberg Traurig, LLP, Attn: David B. Kurzweil and John D. Elrod, 3333 Piedmont Road, NE, Suite 2500, Atlanta, Georgia 30305 (Tel: 678-553-2100; Fax: 678-553-2269).

To the DIP Lender, Alamo CRG, LLC: In care of (a) Dykema Cox Smith, Attn: Deborah D. Williamson and Patrick L. Huffstickler, 112 E. Pecan Street, Suite 1800, San Antonio, TX 78205 (Tel: 210-554-5500; Fax: 210-226-8395), and (b) Dykema Cox Smith, Attn: Mark E. Andrews, 1717 Main Street, Ste. 4200, Dallas, TX 75201 (Tel: 214-462-6400; Fax: 214-462-6401).

### J.  **Plan Supplement**

Forms of the Plan Supplement Documents (which may be in substantially final form), the Schedule of Additional Rejected Contracts and Leases, the Schedule of Additional Assumed Leases, the Schedule of Additional Rejected Contracts, the Unsecured Creditors' Trust Agreement, the identity of the members of the Trust Advisory Board, Trust Causes of Action, the Alamo Buffets Advance Agreement, the Secured Trust Note, the Inter-creditor and Subordination Agreement, the Assigned Causes of Action Agreement, amendments to certificates of incorporation and by-laws and lists of the Excluded Causes of Actions and the Excluded Insider Causes of Action (specifically identifying and naming each potential defendant thereto), and such other documents as the Debtors determine to be necessary or appropriate to the implementation and/or confirmation of the Plan shall be contained in the Plan Supplement which will be filed with the Clerk of the Court no later than fourteen (14) calendar days prior to the Confirmation Hearing. The Plan Supplement may be inspected in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.deb.uscourts.gov." Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to counsel to the Debtors in accordance with Article X.J of the Plan. In addition, the Plan Supplement will be available on the Claims Agent's website.

### K.  **Conflict**

The terms of this Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.

### L.     Destruction of Records

Following the Effective Date, the Reorganized Debtors may destroy the copies of records maintained by Larson Records Management f/k/a Larson Business Data Storage which pre-date the Agreement and Plan of Merger, dated July 20, 2015.

### XI.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases and Collateral Assignment of Real Property Leases

To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, (iii) subject of a separate motion or subject to the expedited procedures approved by the Court to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically rejected pursuant to this Plan, each executory contract and unexpired lease that exists between Debtor and any Person is specifically rejected by the Debtor that is a party to such executory contract or unexpired lease as of and subject to the Effective Date pursuant to the Plan.

1.     The following executory contracts and unexpired leases are rejected:

(i)     executory contacts or unexpired leases that were rejected before the Confirmation Date;

(ii)     contracts and unexpired leases identified on the Schedule of Additional Rejected Contracts and Leases in the Plan Supplement, which contracts and unexpired leases are deemed rejected by the applicable Debtor as of the corresponding rejection dates set forth on the Schedule of Additional Rejected Contracts and Leases.

Unexpired leases of nonresidential real property identified on the Schedule of Additional Assumed Contracts and Leases in the Plan Supplement, are specifically assumed by the applicable Debtor listed on such schedule as of and subject to the Effective Date, and the Confirmation Order shall operate as an order authorizing the Debtors' assumption of the leases set forth on the Schedule of Additional Assumed Leases as may be amended by agreement of the parties thereto, as of and subject to the Effective Date.

2.     The following executory contracts and unexpired leases are assumed:

(i)     the FMP Management Agreement (subject to subordination of the FMP Cure Claim as provided elsewhere in the Plan);

(ii)     all existing insurance policies that have not expired, been rejected or are subject to a motion to reject as of the Confirmation Date;

(iii)     all executory contracts and all real estate leases that have been assumed pursuant to a court order during these bankruptcy cases; and

46

(iv) all contracts with food vendors that were not rejected prior to confirmation or were not the subject of a motion to reject as of the Confirmation Date.

## B. Limited Extension of Time to Assume or Reject

In the event of a dispute as to whether a contract or lease is executory or unexpired, the right of the Debtors or Reorganized Debtors to move to assume or reject such contract or lease, either by motion or pursuant to such expedited procedures as have been approved by the Court, shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired. The deemed assumptions and rejections provided for in this Article XI of the Plan shall not apply to such contract or lease.

In the event the Debtors or the Reorganized Debtors become aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Schedules or on the Schedule of Additional Assumed Contracts and Leases, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the date on which the Debtors or the Reorganized Debtors become aware of the existence of such contract or lease. The deemed assumptions and rejections provided for in this Article XI.D. of the Plan shall not apply to any such contract or lease.

The Debtors reserve the right to amend the Schedule of Additional Rejected Contracts and Leases up until three (3) days prior to the Confirmation Hearing and amend the Schedule of Additional Assumed Contracts and Leases up until the Effective Date.

## C. Cure

Except as otherwise provided elsewhere in the Plan, the applicable Reorganized Debtor, except as otherwise agreed by the parties, will cure any and all undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtors shall have until thirty (30) days after entry of a Final Order determining the amount, if any, of the applicable Debtor or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the applicable Reorganized Debtor determines to assume the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the applicable Debtor or the applicable Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

## D. Rejection Damage Claims

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such rejection and any applicable bar dates established during the case, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article XI.C. herein). Any Claims not filed within such time will be

forever barred from assertion against the Debtors, their respective estates, the Reorganized Debtors, and the Unsecured Creditors' Trust. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as General Unsecured Claims.

### E.    Collateral Assignment of Real Property Leases.

Effective as of the Confirmation Date, all Real Property Leases shall be collaterally assigned to the Unsecured Creditors' Trust to secure the Reorganized Debtors' obligations under the Secured Trust Note and all related loan and security documents. Each party to each Real Property Lease is hereby deemed to have consented to, and/or agreed that, (1) the Reorganized Debtors collaterally assigning each Real Property Lease to the Unsecured Creditors' Trust to secure the Reorganized Debtors' obligations under the Secured Trust Note and all related loan and security documents pursuant to the terms of a Collateral Assignment of Real Property Leases, (2) any Reorganized Debtor's execution and delivery of a Collateral Assignment of Real Property Leases, (3) the Unsecured Creditors' Trust's recordation of any such Collateral Assignment of Real Property in the real property, or other appropriate records, in the jurisdiction where any real property that is the subject of any Real Property Lease is located, (4) the Unsecured Creditors' Trust's taking of any other action reasonably deemed necessary by the Unsecured Creditors Trust to perfect its security interest in any Real Property Lease, (5) none of the foregoing shall constitute a breach, default, event of default, or other similar event under any Real Property Lease, and (6) no party to any Real Property Lease shall take, or be entitled to take, any remedial action under such Real Property Lease as a result of any of the foregoing.

## XII.

## BENEFIT PLANS

As of and subject to the Effective Date, all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, incentive plans, and life, accidental death, and dismemberment insurance plans, but excluding any employment and severance agreements, plans or policies (unless, with the consent of the Requisite Consenting Parties, such employment and severance agreements, plans or policies are assumed by the Debtors pursuant to Court order), shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan, including on the Schedule of Additional Rejected Contracts and Leases (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs

## XIII.

## EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent to Confirmation

Confirmation of this Plan is subject to the Confirmation Order being in form and substance acceptable to the Debtors, and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

### B.    Conditions Precedent to Effectiveness

The Plan shall not become effective unless and until it has been confirmed and the following conditions have been satisfied in full or waived pursuant to Article XIII C:

1)    the Confirmation Order, in form and substance satisfactory to the Debtors, shall have become a Final Order;

2)    all authorizations, consents and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained;

3)    each of the Plan Supplement Documents shall be in form and substance satisfactory to the Debtors and the Creditors' Committee and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

4)    each of the Creditors' Trust Agreement, the Subordination Agreement, the Assigned Causes of Agreement, and the Secured Trust Note and all related loan and security documents shall be in form and substance satisfactory to the Debtors and Creditors' Committee;

5)    the Unsecured Creditors' Trust Cash Component shall have been paid to the Unsecured Creditors' Trust and the Secured Trust Note (including, without limitation, any ancillary documents) shall have been executed and delivered by the Reorganized Debtors, and the remaining Trust Assets shall have been transferred to the Unsecured Creditors' Trust ;

6)    all documents necessary to create and perfect the security interests to be granted to the Unsecured Creditors' Trust shall have been fully executed and duly recorded in appropriate jurisdictions; and

7)    all ancillary agreements, such as, without limitation, the Unsecured Creditors' Trust Agreement, the Subordination Agreement, the Alamo Buffets Advance Agreement, and the Assigned Causes of Action Agreement, shall have been executed and delivered by all parties thereto.

### C.    Waiver of Conditions

The Debtors may waive the conditions set forth in Article XIII B(1) and (2) at any time without leave of or order of the Court and without any formal action.

The Debtors and Creditors' Committee may agree jointly in writing to waive any of the conditions set forth in Article XIII B (3) through (7) without leave of an order of the Court.

### D.    Effect of Failure of Conditions

In the event that the Effective Date does not occur on or before ninety (90) days after the Confirmation Date, or such later date as may be determined in a Court Order, upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors unless extended by Court order.

### E.    Vacatur of Confirmation Order

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

### F.    Revocation, Withdrawal, or Non-Consummation

#### 1.    Right to Revoke or Withdraw

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date.

#### 2.    Effect of Withdrawal, Revocation, or Non-Consummation

If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts, unexpired leases, or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void. In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or

50

Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

Dated: April 27, 2017

BUFFETS, LLC

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

HOMETOWN BUFFET, INC.

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

OCB RESTAURANT COMPANY, LLC

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

OCB PURCHASING CO.

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

RYAN'S RESTAURANT GROUP, LLC

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

FIRE MOUNT RESTAURANTS, LLC

By: _____

Name:   Peter Donbavand

Title:   Vice President for Real Estate and Business Development

41595382v1

## Exhibit B

Executory Contracts and Unexpired Leases with Respect to Which a
Hearing to Resolve an Objection to the Debtors' Proposed Cure Amount
and/or Assumption/Rejection is Adjourned to a Later Date

| |
|---|
| Executory Contracts, if any, with Oracle as successor in interest to Micros, related to Debtors' Point-of-Sale systems. Hearing to be held on May 18, 2017 at 9:30a.m. before the Honorable Ronald B. King, Chief Judge, United States Bankruptcy Court for the Western District of Texas, Hipolito F. Garcia Federal Building and United States Courthouse, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205. |
| Executory Contracts and Leases with Ecolab, Inc. related to dish machines, supplies, pest agreement and related services and products. Hearing to be held on May 18, 2017 at 9:30a.m. before the Honorable Ronald B. King, Chief Judge, United States Bankruptcy Court for the Western District of Texas, Hipolito F. Garcia Federal Building and United States Courthouse, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205. |

41415483v4

**Exhibit C**

| Store No. | Concept | Address | City | State | Zip | Landlord |
|---|---|---|---|---|---|---|
| 4 | OCB | 2613 E Clairemont Ave | Eau Claire | WI | 54701 | George D. Pathos, Sophia D. Pathos, Mary D. Pathos-DeMoss |
| 7 | OCB | 14150 Nicollet Ave | Burnsville | MN | 55337 | Cobblestone Properties, LLC |
| 16 | OCB | 4902 South 74th Street | Greenfield | WI | 53220 | Greenfield, LP |
| 36 | OCB | 4190 E Court St Suite 801 | Burton | MI | 48509 | Stockbridge Courtland Center, LLC |
| 51 | HTB | 12228 St. Charles Rock Rd | Bridgeton | MO | 63044 | LVP De Paul LLC |
| 61 | HTB | 5259 Airport Highway | Toledo | OH | 43615 | ECO SBC 2015-1 REO 136426, LLC |
| 66 | OCB | 4695 Bay Road | Saginaw | MI | 48604 | FASHION SQUARE WEST, LLC |
| 73 | OCB | 6560 West Fullerton Avenue | Chicago | IL | 60707 | Bricktown Square, LLC |
| 83 | RYAN | 2151 Gallatin Pike North | Madison | TN | 37115 | RB RIVERGATE LLC |
| 108 | HTB | 5555 Youngstown-Warren Road | Niles | OH | 44446 | Boulevard Centre, LLC |
| 126 | CB | 801 N Academy Blvd | Colorado Springs | CO | 80909 | Citadel Crossing Associates |
| 138 | OCB | 4401 Transit Rd | Buffalo | NY | 14221 | BENCHMARK-CLARENCE ASSOCIATES, LLC |
| 139 | OCB | 5220 West Main St | Kalamazoo | MI | 49009 | DFG-Maple Hill, LLC |
| 146 | HTB | 840 Northridge Mall | Salinas | CA | 93906 | Northridge Owner, L.P. |
| 149 | OCB | 9620 Metro Pkwy W. | Phoenix | AZ | 85051 | PDG America Shopping Center, LLC |
| 181 | OCB | 905 Loucks Road | York | PA | 17404 | Urban Edge York, LP |
| 204 | HTB | 517 Maine Mall | South Portland | ME | 04106 | GGP-MAINE MALL L.L.C. |
| 211 | OCB | 2942 Prince William Parkway | Woodbridge | VA | 22192 | KIR SMOKETOWN STATION L.P. |
| 213 | OCB | 17125 North 79th Avenue | Glendale | AZ | 85308 | BHC ENTERPRISES, LC |
| 214 | OCB | 1245 Whitehall Mall | Whitehall | PA | 18052 | WP Glimcher Inc. |
| 226 | HTB | 72-513C Highway 111 | Palm Desert | CA | 92260 | Desert Crossing I, LLC |
| 231 | HTB | 165 Slater St. | Manchester | CT | 06042 | NORMAN C. JACK AS TRUSTEE |
| 234 | OCB | 5083 Jonestown Road | Harrisburg | PA | 17112 | KIMCO OF PENNSYLVANIA TRUST |
| 237 | OCB | 821 County Route 64 | Elmira | NY | 14903 | BG FLATS II - III, LLC |
| 243 | OCB | 4601 200TH STREET SW | Lynnwood | WA | 98036 | MSB SHOPPING CENTER |
| 245 | OCB | 1321 N Columbia Center Blvd Suite 873 | Kennewick | WA | 99336 | Simon Property Group |
| 251 | OCB | 10445 Indianapolis Boulevard | Highland | IN | 46322 | DDRM Highland Grove, LLC |

41415483v4

| Store No. | Concept | Address | City | State | Zip | Landlord |
|---|---|---|---|---|---|---|
| 252 | HTB | 8629 South Sepulveda Blvd | Westchester | CA | 90045 | STRS OHIO CA REAL ESTATE INVESTMENTS II, LLC |
| 256 | HTB | 1850 W Empire Ave | Burbank | CA | 91504 | VEREIT ML-1 |
| 259 | OCB | 6625 East Southern Avenue | Mesa | AZ | 85206 | NED M AND CONNIE G THOMPSON, TRUSTEE OF NED M AND CONNIE G THOMPSON FAMILY TRUST |
| 260 | CB | 7407 E 36th Ave | Denver | CO | 80238 | Great Northern Gas Co. |
| 262 | HTB | 10910 Foothill Boulevard | Rancho Cucamonga | CA | 91730 | VEREIT ML-1 |
| 263 | HTB | 930 Dennery Road | San Diego | CA | 92154 | Yam and Sue Lee living Trust |
| 269 | HTB | 3617 W Shaw Avenue | Fresno | CA | 93711 | VEREIT ML-1 |
| 275 | HTB | 8432 Firestone Boulevard | Downey | CA | 90241 | DOWNEY DOLAN HE LLC |
| 297 | HTB | 7868 Van Nuys Boulevard | Van Nuys | CA | 91402 | NF PLANT ASSOCIATES, LLC |
| 298 | HTB | 1665 Countryside Dr | Turlock | CA | 95380 | VEREIT SL-1 |
| 299 | HTB | 2900 Deerfield Dr | Janesville | WI | 53546 | Inland Commercial Prop. Mgmt. |
| 301 | HTB | 7809-B Ne Vancouver Plaza Dr | Vancouver | WA | 98662 | Cafaro Companies |
| 303 | OCB | 3500 South Meridian | Puyallup | WA | 98373 | Cafaro Companies |
| 305 | OCB | 5815 Lakewood Towne Center Blvd SW | Tacoma | WA | 98499 | RPAI US Management LLC |
| 306 | HTB | 10542-A Se Washington St | Portland | OR | 97216 | Plaza 205 GARP LLC |
| 309 | HTB | 636 Lancaster Drive Ne | Salem | OR | 97301 | LANCASTER CENTER EAST LLC |
| 310 | OCB | 1816 South 320th Street | Federal Way | WA | 98003 | SEATAC VILLAGE SHOPPING CENTER, LLC |
| 337 | HTB | 3520 W Carson St | Torrance | CA | 90503 | Simon Property Group |
| 339 | HTB | 704 Southland Mall | Hayward | CA | 94545 | Southland Mall LP |
| 340 | HTB | 1315 Gateway Blvd | Fairfield | CA | 94533 | FAIRFIELD GATEWAY, LP |
| 341 | HTB | 2050 Diamond Blvd | Concord | CA | 94520 | John Lee & Helen Lee |
| 704 | HTB | 9635 Chapman Avenue | Garden Grove | CA | 92841 | HGGA Promenade LP |
| 705 | HTB | 651 Palomar Street | Chula Vista | CA | 91911 | EC Palomar Center, LLC |
| 707 | HTB | 1025 West Robinhood Drive | Stockton | CA | 95207 | Stonecreek Village Shopping Center, LLC |
| 711 | HTB | 3790 Sw Hall Boulevard | Beaverton | OR | 97005 | Biggi Development Partnership |
| 713 | HTB | 3744 N Blackstone Ave | Fresno | CA | 93726 | 5561 SULTANA, LLC |
| 714 | HTB | 1135 Highland Avenue | National City | CA | 91950 | SOUTH BAY SPE, LLC |
| 715 | HTB | 1380 Churn Creek Rd | Redding | CA | 96003 | SHASTA STATION LLC |
| 716 | HTB | 1771 Prescott Road | Modesto | CA | 95350 | Redwood Theatres, Inc. |
| 718 | HTB | 5478 Newpark Plaza | Newark | CA | 94560 | New Park Plaza Associates, LLC |

41415483v4

| Store No. | Concept | Address | City | State | Zip | Landlord |
|---|---|---|---|---|---|---|
| 725 | HTB | 1299 Center Drive | Medford | OR | 97501 | SUSSLIN INVESTMENTS I, LLC |
| 727 | HTB | 22500 Towngate Circle | Moreno Valley | CA | 92553 | 2250 Town Circle Holdings LLC |
| 736 | HTB | 6705 Fallbrook Ave | Canoga Park | CA | 91307 | VEREIT ML-1 |
| 739 | HTB | 4221 South H Street | Bakersfield | CA | 93304 | Midtowne National Group, LP |
| 742 | HTB | 3041 West Florida Avenue | Hemet | CA | 92545 | GRANITE VILLAGE WEST L.P. |
| 743 | HTB | 1318 North Azusa Avenue | Covina | CA | 91722 | KIR COVINA, L.P. |
| 745 | HTB | 24990 Redlands Boulevard | Loma Linda | CA | 92354 | BLUE BANNER COMPANY, INC. |
| 746 | HTB | 3000 Gateway Street | Springfield | OR | 97477 | GGP Gateway Mall, LLC |
| 747 | HTB | 1804 South Mooney Boulevard | Visalia | CA | 93277 | Visalia Property Partnership |
| 750 | HTB | 561 U.S. Route 1 South | Edison | NJ | 08817 | WICK SHOPPING PLAZA ASSOCIATES, LLC |
| 753 | HTB | 127 West Valley Boulevard | Rialto | CA | 92376 | VEREIT ML-1 |
| 756 | OCB | 4640 Roosevelt Boulevard | Philadelphia | PA | 19124 | VEREIT SL-2 |
| 765 | HTB | 875-877 North Wilcox Avenue | Montebello | CA | 90640 | LUCKY MONTEBELLO SHOPPING CENTER |
| 767 | HTB | 6257 Atlantic Avenue | Bell | CA | 90201 | Bell Palm Plaza, LP |
| 785 | HTB | 1431 South Bradley Road | Santa Maria | CA | 93454 | VEREIT ML-1 |
| 788 | HTB | 1901 Lockwood St | Oxnard | CA | 93036 | VEREIT ML-1 |
| 794 | OCB | 1325 New Churchmans Road | Newark | DE | 19713 | VEREIT ML-1 |
| 796 | HTB | 4700 Candlewood St | Lakewood | CA | 90712 | Macerich Lakewood LP |
| 803 | HTB | 390 N Mckinley St | Corona | CA | 92879 | KIMCO REALTY CORPORATION |
| 805 | HTB | 408 North Capitol Avenue | San Jose | CA | 95133 | CAPITOL SQUARE PARTNERS |
| 806 | HTB | 1008 East 17th Street | Santa Ana | CA | 92701 | WILLIAM H. GRIFFITH, AS SOLE TRUSTEE UNDER THE WILLIAM H. GRIFFITH REVOCABLE TRUST U/A DATED NOVEMBER 7, 1989 |
| 807 | HTB | 2670 El Camino Real | Santa Clara | CA | 95051 | Moonlite Associates, LLC |
| 811 | OCB | 2513 Main Street | Union Gap | WA | 98903 | VEREIT ML-1 |
| 813 | OCB | 6821 W Canal Dr | Kennewick | WA | 99337 | JBP PROPERTIES LLC |
| 822 | TJ | 7006 N Cedar Ave Fresno | Fresno | CA | 93720 | Cedar Pointe Investors, LP |
| 823 | TJ | 9000 Ming Ave | Bakersfield | CA | 93311 | VICTORIA LAND PARTNERS, LP |
| 824 | TJ | 1040 Helen Power Dr | Vacaville | CA | 95687 | Midtowne National Group, LP |
| 825 | TJ | 485 Madonna Rd #2 | San Luis Obispo | CA | 93405 | SLO Promenade DE, LLC |
| 828 | TJ | 1905 Taylor Rd | Roseville | CA | 95661 | Hormox Demooei |
| 830 | TJ | 3801 Pelandale Ave | Modesto | CA | 95356 | Inland Commercial Real Estate |

41415483v4

| Store No. | Concept | Address | City | State | Zip | Landlord |
|---|---|---|---|---|---|---|
| 831 | TJ | 4015 W Caldwell Ave | Visalia | CA | 93277 | VISALIA RETAIL 2015 LLC |
| 835 | TJ | 3968 Grand Ave | Chino | CA | 91710 | SY VENTURES III LLC |
| 2118 | RYAN | 2305 Shorter Ave Sw | Rome | GA | 30165 | VEREIT ML-2 |
| 2138 | RYAN | 1314 N Main Street | Summerville | SC | 29483 | VEREIT ML-1 |
| 2185 | RYAN | 4051 Ryan Street | Lake Charles | LA | 70605 | Spirit ML |
| 2195 | RYAN | 230 Collins Rd Ne | Cedar Rapids | IA | 52402 | Realty Income |
| 2218 | RYAN | 10810 W 75th Street | Shawnee | KS | 66214 | Realty Income |
| 2261 | RYAN | 1920 Mel Browning Street | Bowling Green | KY | 42104 | Spirit ML |
| 2262 | RYAN | 3607 Hwy 17 S | North Myrtle Beach | SC | 29582 | DPI GROUP, LLC |
| 2278 | RYAN | 1413 N Loop 336 West | Conroe | TX | 77304 | Spirit ML |
| 2304 | RYAN | 1201 Hwy 45 North | Columbus | MS | 39705 | Realty Income |
| 2328 | RYAN | 1101 N Service Road E | Ruston | LA | 71270 | Realty Income |
| 2345 | RYAN | 1102 Ave Of Mid America | Effingham | IL | 62401 | Realty Income |
| 2347 | RYAN | 929 S Westwood Blvd | Poplar Bluff | MO | 63901 | Realty Income |
| 2357 | RYAN | 243 Steven B Tanger Blvd | Commerce | GA | 30529 | VEREIT ML-2 |
| 2370 | RYAN | 1000 Brevard Rd | Asheville | NC | 28806 | VEREIT ML-2 |
| 2380 | RYAN | 2645 E Andrew Johnson Hwy | Greeneville | TN | 37745 | Realty Income |
| 2394 | RYAN | 341 Eisenhower Drive | Hanover | PA | 17331 | DIVINITY INVESTMENTS, LLC |
| 2406 | RYAN | 232 Frontage Road | Picayune | MS | 39466 | Spirit ML |
| 2408 | RYAN | 374 Walmart Plaza | Sylva | NC | 28779 | Realty Income |
| 2416 | RYAN | 519 Emily Drive | Clarksburg | WV | 26301 | VEREIT ML-1 |
| 2418 | RYAN | 103 Rhl Blvd | Charleston | WV | 25309 | VEREIT ML-1 |
| 2419 | RYAN | 2330 Memorial Drive | Waycross | GA | 31501 | Realty Income |
| 2423 | RYAN | 3000 S Ferdon Blvd | Crestview | FL | 32536 | COMMUNITY BANK OF RAYMORE |
| 2424 | RYAN | 195 Greasy Ridge Rd | Princeton | WV | 24739 | Spirit ML |
| 2433 | RYAN | 4955 Hwy 90 | Pace | FL | 32571 | Pace 1800, LLC |
| 2435 | RYAN | 405 S Cumberland Street | Lebanon | TN | 37087 | MARCO POLO, INC. |
| 2436 | RYAN | 4615 Broadway St | Mount Vernon | IL | 62864 | Realty Income |
| 2440 | RYAN | 2210 S Harper Road | Corinth | MS | 38834 | Realty Income |
| 2441 | RYAN | 5309 Milan Road | Sandusky | OH | 44870 | Realty Income |
| 2474 | RYAN | 1400 Dallas Highway 77 | Waxahachie | TX | 75165 | Realty Income |

41415483v4

<u>Exhibit D</u>

NOTICE OF
(A) ENTRY OF ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE,
(B) OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN, (C) DEADLINE TO
FILE FEE CLAIMS, (D) DEADLINE TO FILE ADMINISTRATIVE CLAIMS,
AND (E) BAR DATE FOR REJECTED EXECUTORY CONTRACTS

41415483v4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BUFFETS, LLC, *et al.*[7] | § | Case No. 16–50557-rbk |
| | § | |
| Debtors. | § | (Jointly Administered) |

**NOTICE OF
(A) ENTRY OF ORDER CONFIRMING DEBTORS' SECOND AMENDED JOINT
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE,
(B) OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN, (C) DEADLINE TO
FILE FEE CLAIMS, (D) DEADLINE TO FILE ADMINISTRATIVE CLAIMS,
AND (E) BAR DATE FOR REJECTED EXECUTORY CONTRACTS**

TO: ALL KNOWN CREDITORS, EQUITY INTEREST HOLDERS, PROFESSIONALS RETAINED IN THE CHAPTER 11 CASES, THE UNITED STATES TRUSTEE AND THOSE PARTIES REQUESTING NOTICE IN ACCORDANCE WITH BANKRUPTCY RULE 2002

PLEASE TAKE NOTICE that on April ___, 2017 (the "Confirmation Date"), the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court") entered its Findings of Fact, Conclusions of Law, and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (including the exhibits thereto, and all documents and agreements executed pursuant thereto, and as modified from time-to-time, the "Plan").

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan was **[DATE], 2017**.

PLEASE TAKE FURTHER NOTICE that pursuant to section 1141(a) of the Bankruptcy Code, the provisions of the Plan and the Confirmation Order shall bind (i) the Debtors and their estates, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors that arose before or were filed as of the Effective Date, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan or received or retained any property under the Plan, and (iv) each person acquiring property under the Plan.

---

[7] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129). The address for all of the Debtors is 120 Chula Vista Drive, Hollywood Park, Texas 78232.

41415483v4

PLEASE TAKE FURTHER NOTICE that any party-in-interest wishing to obtain a copy of the Confirmation Order may obtain such copy: (i) at https://www.donlinrecano.com/home/activecases by clicking on "Buffets LLC et al." or (ii) by contacting Donlin Recano & Company, Inc. at (212) 771-1128. Copies of the Confirmation Order may also be reviewed in the office of the Clerk of the Court during normal court hours and shall be available online at "https://ecf.txwb.uscourts.gov." The Clerk of Court is located at Hipolito F. Garcia Federal Building and United States Courthouse, 615 East Houston Street, Room 597, San Antonio, TX 78205.

## Fee Claims

PLEASE TAKE FURTHER NOTICE that as provided in Article III.B of the Plan, all requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Reorganized Debtors, counsel to the Reorganized Debtors, the United States Trustee, and counsel to the Creditors Committee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than [_____], 2017. Unless such deadline is extended by agreement of the Reorganized Debtors, holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, and the requesting party no later than seventy-five (75) days (or such longer period as may be allowed by order of the Court) after the Effective Date.

## Administrative Claims Bar Date

PLEASE TAKE FURTHER NOTICE that except as otherwise ordered by the Bankruptcy Court, all holders of Administrative Claims (except for (i) Fee Claims, (ii) Ordinary Course Administrative Claims, (iii) the Creditors' Committee Fee Claims, and (iv) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code) not paid prior to the Confirmation Date shall submit requests for payment of such Administrative Claims in accordance with section 503 of the Bankruptcy Code with the Bankruptcy Court on or before 30 days after the Effective Date, **May [ ], 2017,** (the "Administrative Claims Bar Date") or forever be barred from doing so and from receiving payment on account thereof. The Reorganized Debtors shall have 120 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

PLEASE TAKE FURTHER NOTICE that all holders of Administrative Claims must timely file and serve such applications on the Debtors and all other parties at the addresses set forth in Article X.I. of the Plan.

41415483v4

## Bar Date for Rejected Executory Contracts

PLEASE TAKE FURTHER NOTICE the Debtors shall serve notice of the rejection of any executory contract or unexpired lease pursuant to the Plan and the deadline for filing claims arising from or related to the rejection of such executory contracts and unexpired leases within two (2) business days of the effective date of rejection. Non-Debtor parties to executory contracts and unexpired leases that have been rejected by the Debtors pursuant to the Plan shall be permitted to file a proof of claim with regards to alleged damages resulting from such rejection until the date that is thirty (30) days after the effective date of such rejection.

####

David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
2001 Ross Avenue, Suite 2550
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com

and

Andrea S. Hartley
Florida Bar No. 864234
Esther A. McKean
Florida Bar No. 28124
Amy M. Leitch
Florida Bar No. 90112
Katherine Fackler
Florida Bar No. 68549
Three Brickell City Centre
98 Southeast Seventh Street
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
andrea.hartley@akerman.com
esther.mckean@akerman.com
amy.leitch@akerman.com

COUNSEL FOR DEBTORS AND
DEBTORS-IN-POSSESSION

41415483v4