

Signed September 18, 2017.

_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BUFFETS, LLC, *et al.*,[1] | § | CASE NO. 16-50557-RBK |
| | § | |
| DEBTORS. | § | CHAPTER 11 |

## OPINION

Buffets, LLC, and its affiliates ("Debtors" or, post-confirmation, "Reorganized Debtors") filed voluntary chapter 11 petitions on March 7, 2016.  On March 22, 2016, Greenberg Traurig, LLP ("Greenberg"), began working as counsel for the Official Committee of Unsecured Creditors ("the Committee").  After lengthy and contested proceedings that included a large number of expedited motions from Debtors' original counsel, a plan was confirmed on April 27, 2017.

On June 13, 2017, Greenberg filed its fee application for compensation and reimbursement of expenses for the period of representation from March 22, 2016, to May 17, 2017.  Greenberg charged a blended hourly rate of $525 regardless of each attorney's individual hourly rate, in order

---

[1] The Debtors are Buffets, LLC; Hometown Buffet, Inc.; OCB Restaurant Company, LLC; OCB Purchasing Co.; Ryan's Restaurant Group, LLC; Fire Mountain Restaurants, LLC; and Tahoe Joe's, Inc.  The cases were jointly administered.

to provide its services at a discount.  Greenberg's application requested $2,200,485.00 in fees and $87,005.04 in reimbursable expenses.  Greenberg provided monthly reports of fees and expenses incurred, as well as a breakdown of the hours worked by each professional during the time of representation.

On August 1, 2017, both the United States trustee and the Reorganized Debtors (through their new special counsel) objected to Greenberg's final fee application.  The Reorganized Debtors generally asserted that Greenberg's fees were excessive, unreasonable, costly to the estate, and for largely unnecessary work.  The Reorganized Debtors requested a fee reduction of between $741,204.13 and $787,118.59.

The filed objections contained four major arguments: first, that disparities between Greenberg's fees and Debtors' counsel's fees demonstrate excessive compensation; second, that the blended rate was functionally more expensive than an hourly rate would have been; third, that Greenberg overstaffed the case with young professionals with hourly rates under $525, thereby over-charging for the professionals' services; and fourth, that Greenberg's travel expenses were unreasonably high.

Greenberg filed its response on August 8, 2017, and the hearing on the issue took place September 6, 2017.  Just before the hearing, the U.S. trustee withdrew its objection after reaching an agreement with Greenberg, wherein Greenberg agreed to reduce its requested compensation by $50,000.

The Court finds that it has jurisdiction to render a final order in this core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409. Along with the findings of fact and conclusions of law stated on the record after the close of the

2

evidence, this opinion constitutes the findings and conclusions of the Court pursuant to FED. R. BANKR. P. 7052 and 9014.

## DISCUSSION

The issue before the Court is whether Greenberg's fees are reasonable and necessary in light of the work the representation required.  Section 330(a) of the Bankruptcy Code provides that attorneys and paraprofessionals may be awarded reasonable compensation for actual, necessary services and reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1).  The burden of proving what constitutes "reasonable compensation" rests on the fee applicant. *In re El Paso Refinery, L.P.*, 257 B.R. 809, 833 (Bankr. W.D. Tex. 2000).  Services rendered should be performed within a reasonable amount of time considering the complexity of the case, and should be necessary to the administration of the estate or beneficial at the time the services were rendered. 11 U.S.C. § 330(a)(3)(C).

Bankruptcy courts are also guided by the Fifth Circuit's *Johnson* factors when considering the appropriateness of attorney's fees and, therefore, whether the applicant has met its burden. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974) (enumerating the criteria); *see also In re Pilgrim's Pride Corp.*, 690 F.3d 650, 656 (5th Cir. 2012) (finding the continued vitality of the *Johnson* factors); *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298–99 (5th Cir. 1977) (applying *Johnson* factors to bankruptcy fees).  The factors relevant for consideration are:

1. the time and labor required;
2. the novelty and difficulty of questions presented;
3. the skill requisite to perform the legal services properly;
4. the preclusion of other employment due to the acceptance of the case;
5. the customary fee for similar work in the community;
6. whether the fee is fixed or contingent;
7. time limitations imposed by the client or the circumstances;

8.  the amount involved and the results obtained;
9.  the experience, reputation, and ability of the attorneys;
10.  the undesirability of the case;
11.  the nature and length of the professional relationship with the client; and
12.  awards in similar cases.

*Johnson*, 488 F.2d at 717–19.  The bankruptcy court has broad discretion in determining what amount constitutes appropriate compensation and whether the *Johnson* criteria are satisfied.  ***In re Consol. Bancshares, Inc.***, 785 F.2d 1249, 1252, 1257 (5th Cir. 1986).

The blended hourly rate of $525 is appropriate considering similar rates within the community, and Greenberg's hours billed were those necessary for representation.  Weighing the above-enumerated factors, the extent of Greenberg's representation, and the efforts Greenberg has already taken to lower its fees, this Court finds Greenberg's current fee application reasonable in its entirety.

### 1. *Greenberg's Work Fostered the Successful Conclusion of a Difficult Case.*

The Reorganized Debtors generally assert that much of the work done by Greenberg was unnecessary, but support this assertion with only a few examples of allegedly duplicative work and otherwise point to the high bill as inherently demonstrative of excessive work.

The Court finds Greenberg's responses to the specific line-item challenges sufficient.  For complicated pleadings, it is understandable that more than one professional may bill for reviewing the same document, as they may be reviewing for different information and for different purposes.

The $2.2 million fee in and of itself does not conclusively demonstrate unreasonableness, and the *Johnson* factors are particularly relevant here.  Greenberg was required to handle a large and complex case with a high volume of pleadings, many of which came with small windows of time in which to respond.  Debtors' counsel filed a number of motions on an emergency basis and gave Greenberg short notice, imposing more time limitations than counsel might experience in

4

other cases. Even with the added challenges, Greenberg produced commendable results and was heavily involved in negotiations that led to the successful confirmation of a workable plan.

There is some disparity—approximately $150,000—between the fees charged by Debtors' original counsel and Greenberg. The Reorganized Debtors' counsel argues that Greenberg's higher fees are evidence of unnecessary work, since it is unusual for the committee's counsel's fees to exceed those of debtors' counsel in a chapter 11 case.

The Court recognizes that the fee disparity seems counterintuitive at first glance. Yet, after considering the amount of work and time Greenberg needed to invest while facing intense opposition and short-notice motions from both Debtors' counsel and the equity holders (whose time is not reflected on fee applications), the hours billed are reasonable. Greenberg's fees are, in great part, reactionary: the Committee's counsel was forced to rework the Debtors' original insufficient proposal, continuously negotiate with multiple sets of attorneys, and respond to expedited motions at the drop of a hat. Greenberg's fees were driven up by the actions of Debtors' counsel.

Finally, the Reorganized Debtors offered at the hearing approximately thirty orders—from bankruptcy courts in Texas and Delaware—on fee applications. The Court has reviewed the orders and finds them interesting, but ultimately too limited in scope to be helpful. The documents speak only to how much compensation various parties were awarded, with no information on the hours billed, hourly rates, or complexity of the cases. The amounts on the orders cannot be considered in a vacuum. In light of the unusually expeditious and aggressive nature of these proceedings, without some showing of relevance, compensation without context is not informative.

5

## 2. *Greenberg's Fee Arrangement Benefitted the Estate by Providing a Discount.*

Competing spreadsheets were admitted into evidence showing a comparison between the blended rates versus usual hourly billing rates.  Reorganized Debtors' counsel argues that the blended rate Greenberg used proved more costly for the estate than standard billing rates would have.  This argument—and the spreadsheet that accompanies it—uses only Greenberg's 2016 hourly rates and assumes that Greenberg would not have been allowed to increase those rates during the course of the representation.  No authority is cited for this proposition, nor was there judicial action taken during the case to prohibit a rate increase at the beginning of the year.  In fact, there was a rate increase in 2017, which widened the gap between the blended rate and the standard fees.  On the other hand, Greenberg's spreadsheet compares the blended rate against the 2016 and 2017 hourly rates that would have otherwise been charged through the course of the representation.  The result is a net savings for the estate.  This Court finds no reason that Greenberg could not have adjusted its standard rates at the beginning of the year and therefore finds Greenberg's calculations compelling.[2]

As such, the blended rate that Greenberg used saved the estate $111,690.  Further, a portion of the savings was the result of voluntarily writing down hours of work performed.  Fee arrangements that provide discounts to the estate comport with the estate-benefitting goals laid out in § 330(a), and further support the reasonableness of the compensation.

---

[2] *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. No. 458 (2011) (stating that attorneys are generally permitted to modify fee agreements as long as the change is reasonable and notice is provided to the client).

### 3. *Greenberg Did Not Overstaff the Case with Lower-Billing Professionals.*

Counsel for the Reorganized Debtors alleges that Greenberg inappropriately overstaffed young associates and paraprofessionals in order to take advantage of the blended rate. Upon examination of the time billed by each professional at each stage of the case, the Court finds this argument unpersuasive.

The top biller on the case was Mr. Kyle Woods, an of-counsel commercial bankruptcy attorney with almost thirty years of experience. Mr. Woods performed more than 25% of the total work done in the case and billed more than 1,200 hours. His standard hourly billing rate of $595 was reduced to the blended hourly rate of $525. Mr. David Kurzweil, a shareholder, billed more than 500 hours. His 2016 hourly rate of $875 and 2017 hourly rate of $985 were both flattened to the blended hourly rate for the entirety of the representation. The Reorganized Debtors' assertion that Greenberg was perversely incentivized to staff the case with lower-billing professionals is meritless.

Certainly, some of the attorneys staffed to the case were associates. This is to be expected in a large case with a blended rate; it will naturally be staffed with some attorneys who bill above the flat rate and some who bill below it. Document review and difficult legal research are expected tasks during a complex case and are appropriate assignments for younger professionals. The Court finds no evidence of inappropriate staffing.

### 4. *Greenberg's Travel Expenses Are Reasonable.*

Greenberg incurred a litany of travel expenses for which it requests reimbursement. Objections to the reimbursement are twofold: first, that Greenberg sometimes flew business class or first class when local rules require coach rates; and second, that Greenberg imprudently chose expensive hotels and vehicles while traveling.

Local rules do provide that air travel is expected to be at regular coach fare for all flights. L. Rule 1020.1, App. L-1020.1, Ex. H(III)(Q).  In both the response filed and during the hearing, however, Greenberg confirmed that any premium seats on flights were at coach rates as a result of promotions offered by the airline.  Due to the large number of expedited and short-notice motions filed in the case, it is also expected that airfare—even at standard cost—would be more expensive than in a slower-paced proceeding where tickets would be more easily booked in advance.

Local rules also direct attorneys to use "reasonable discretion and prudence in connection with hotel expenditures."  L. Rule 1020.1, App. L-1020.1, Ex. H(III)(R).  While some of Greenberg's lodging decisions were costlier than those of other attorneys in this case, Greenberg has already addressed this concern by agreeing to reduce its requested compensation and expenses.

Immediately prior to the hearing, the U.S. trustee withdrew its objection and explained that it had reached an agreement with Greenberg.  Greenberg confirmed that it would reduce its overall requested compensation and expenses by $50,000 in order to resolve the U.S. trustee's concerns about potentially excessive travel expenses.  If there were any existing issue about travel costs incurred during the course of the representation, it is erased by the agreement.

## CONCLUSION

After careful consideration of the efforts undertaken by Greenberg, the actions of Debtors' counsel that necessitated a higher workload for Committee's counsel, the agreement with the U.S. trustee, and the discount provided to the estate, the Court finds Greenberg's fees to be reasonable. Greenberg requests compensation for actual, necessary services rendered and expenses incurred amidst a time-pressured, labor-intensive, complex case.  The fees are appropriate for the representation provided.

8

Accordingly, the Reorganized Debtors' Objection is overruled, the U.S. trustee's Objection has been withdrawn, and Greenberg's fee application is granted, less the agreed-upon reduction of $50,000.  A separate order will be entered.

# # #