IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| In re:<br><br>BUFFETS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 16-50557-rbk<br><br>(Jointly Administered) |
| Buffets Unsecured Creditors' Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Reed Restaurant Repair, LLC,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

The Buffets Unsecured Creditors' Trust (the "Trust" or "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Reed Restaurant Repair, LLC (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of

---

[1] The Debtors in n these cases, along with the last four digits of each Debtor's federal tax identification number, are: Buffets, LLC (2294); Hometown Buffet, Inc. (3002); OCB Restaurant Company, LLC (7607); OCB Purchasing, Co. (7610); Ryan's Restaurant Group, LLC (7895); Fire Mountain Restaurants, LLC (8003); and Tahoe Joe's, Inc. (7129).

1

Buffets, LLC and its affiliated debtors (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the reorganized Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the Western District of Texas (the "Court"), captioned *In re Buffets, LLC, et al.,* Case No. 16-50557-rbk, pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1409.

---

[2] The "Debtors" are all entities listed in footnote 1.

## PROCEDURAL BACKGROUND

7. On March 7, 2016 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8. On March 11, 2016, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 112].[3]

9. On April 27, 2017, this Court entered an order confirming the *Debtors' Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order" and "Plan," respectively). [Docket No. 2576].

10. The effective date of the Plan (the "Effective Date") occurred on May 18, 2017. [Docket No. 2630]. In accordance with the Plan and Confirmation Order, the Buffets Unsecured Creditors' Trust (the "Trust") was established effective as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Unsecured Creditors' Trust Agreement.[4]

11. Pursuant to paragraph 70 of the Confirmation Order, the Trust Causes of Action, including Avoidance Actions, were transferred to the Trust. [Docket No. 2576].

12. Pursuant to Section IV.D of the Plan and Section VII.A of the *Amended Disclosure Statement for the Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement"),[5] General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

---

[3] All docket items referenced are from Case No. 16-50557-rbk, under which the Debtors' bankruptcy cases are jointly administered.
[4] *See* Docket No. 2661-3. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and Unsecured Creditors' Trust Agreement.
[5] Docket No. 2243.

## THE PARTIES

13. Pursuant to the Plan, Confirmation Order, and the Unsecured Creditors' Trust Agreement, Plaintiff has the capacity, in its own right and name, to prosecute, collect, compromise, and/or settle causes of action, including this avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that repaired, installed and maintained hot side equipment, heating, cooling and refrigeration to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 11130 Gray Street, Westminster, Colorado 80020. Plaintiff is informed and believes, and on that basis, alleges that Defendant is a limited liability company residing in and subject to the laws of the State of Colorado.

## FACTUAL BACKGROUND

15. As more fully discussed in the Disclosure Statement, as of the Petition Date, the Debtors were some of the largest operators of buffet-style restaurants in the United States. The Debtors' concepts included five buffet restaurant chains and a full-service steakhouse.

16. Prior to the Petition Date, the Debtors, as operators of buffet-style restaurants, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17. As operators of buffet-style restaurants, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

18. The Debtors' financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included,

among other things: (i) the award of a $11.37 million judgment against Buffets, LLC in October of 2015; (ii) cash flow issues and lower than projected sales numbers than anticipated by the seller in a pre-petition acquisition by certain non-debtors of the Debtor entities; and (iii) certain unanticipated expenses, which with the reduced revenue and cash flow created severe liquidity strain.

19. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, management, and disbursement of funds in the Debtors' business.[6] As of the Petition Date, the Cash Management System consisted of several bank accounts, including: concentration, accounts payable, payroll, deposit, and letter of credit collateral accounts, the majority of which were maintained at Bank of America, N.A. ("BofA") and Wells Fargo Bank, N.A. ("Wells Fargo" and, collectively with BofA, the "Banks") [See Docket No. 5].

20. Among these bank accounts, disbursements to vendors were made from the following accounts, both held by Buffets, LLC at Wells Fargo: an account ending 5718 (the "Concentration Account") and an account ending 5763 (the "Accounts Payable Account" and, together with the Concentration Account, the "Disbursement Accounts"). The Disbursement Accounts were held and maintained by Buffets, LLC, with Buffets, LLC paying payables on behalf of each of the Debtors. The Debtors recorded in their books and records any receipts and/or disbursements made on behalf of a Debtor as intercompany balances. Upon information and belief, based upon the collection of all of the Debtors' funds from operations into the

---

[6] More information on the cash management system can be found in the *Debtors' Emergency Motion for Entry of Order (I) Authorizing Debtors to, in the Ordinary Course, (A) Use Cash Management System, Bank Accounts, and Business Forms and (B) Perform Intercompany Transactions, (II) Authorizing Banks and Financial Institutions to Honor and Process All Related Check and Electronic Payment Requests, and (III) Granting Related Relief* [Docket No. 5].

Concentration Account, subsequent payment of the Debtors' accounts from the Disbursement Accounts, and recording of intercompany receivables, the Debtor incurring each debt ultimately caused the payments on each of its debts issuing from the Operating Account.

21. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including Defendant.

22. During the ninety (90) days before the Petition Date, that is between December 8, 2015, and March 7, 2016 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

23. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant or the debt otherwise incurred by one or more of the Debtors to the Defendant as described in the "Parties" section of this Complaint. The details of each of the transfers under the Agreements made during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

24. Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements or otherwise held a debt owed by one or more of the Debtors.

25. As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant.

26. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

27. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $59,816.86 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

28. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Plan, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

29. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

30. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $59,816.86.

31. Each Transfer was made from one or more of the Disbursement Accounts described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

32. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements, or by virtue of otherwise holding a debt owed by one or more of the Debtors.

33. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

34. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

35. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

36. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

38. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

39. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

40. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

    A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

    B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.  The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

41. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

42. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

43. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

44. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

45. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

46. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

47. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

48. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

49. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

50. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: March 5, 2018

**ASK LLP**

By: /s/ *Brigette G. McGrath*
Brigette G. McGrath, Esq., NY SBN 4962379
Gary Underdahl, Esq., MN SBN 0301693
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: 651-289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*-and-*

Edward E. Neiger, Esq.
Marianna Udem, Esq.
151 West 46th Street, 4th Fl.
New York, NY 10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for the Buffets Unsecured Creditors' Trust*